# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TERRA PARTNERS; TERRA XXI, LTD.; | § | |
| ROBERT WAYNE VEIGEL; | § | |
| ELLA MARIE WILLIAMS VEIGEL; | § | |
| VEIGEL FARMS, INC.; | § | |
| VEIGEL CATTLE COMPANY; and | § | |
| VEIGEL FARM PARTNERS, | § | |
| | § | |
| Plaintiffs, | § | No. 2:15-cv-236-J |
| | § | Judge Robinson |
| v. | § | |
| | § | |
| AG ACCEPTANCE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT OF BARBARA WHITEN BALLIETTE

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) |
| COUNTY OF TRAVIS | ) |

BEFORE ME, the undersigned authority, on this day personally appeared Barbara Whiten Balliette, who, being first duly sworn by me, deposed and said:

1.     "My name is Barbara Whiten Balliette. I am over 21 years of age, am of sound mind, and am fully competent to testify in the matters stated herein. The statements made herein are within my personal knowledge and are true and correct. I am a Partner of the firm of Reid Collins & Tsai LLP and am counsel of record for Defendant Ag Acceptance Corporation in the above lawsuit.

2.     The law firm of Reid Collins & Tsai LLP has billed $55,852.50 in attorneys' fees and $1,034.90 in expenses through December 31, 2015. Fees and expenses for January and February 2016 have not yet been billed, including fees incurred in preparing the Motion for

Summary Judgment. I will supplement this affidavit when January and February bills are finalized.

3.    The law firm of Riney & Mayfield LLP has billed $2,579.80 in attorneys' fees and costs.

4.    Current bills for attorneys' fees and expenses total $59,467.20.

5.    Attached are true and correct copies of the following exhibits:"

| EXHIBIT | DOCUMENT |
| --- | --- |
| A | Injunction - *Terra Partners v. Rabo Agrifinance, Inc. and Ag Acceptance Corporation*, 504 F. App'x 288, 291 (5th Cir. 2012) *cert. denied sub nom. Veigel v. Rabo Agrifinance, Inc.*, 133 S. Ct. 2398 (2013) |
| B | Friemel Settlement – Settlement Agreement in *Friemel, et al. v. Ag Acceptance Corporation, et al.*, in the 222nd Judicial District Court of Deaf Smith County, Texas |
| C | Plaintiffs' Initial Disclosures in this action |
| D | String email between counsel from November 30, 2015 to February 2, 2016 |
| E | November 9, 1994 Promissory Note for $1,962,100 |
| F | November 9, 1994 Promissory Note for $1,037,900 |
| G | February 5, 2013 Defendants' Motion for Relief of Judgment in Cause No. D-1010-cv-200700111, *Rabo Agrifinance, Inc. v. Terra XXI, Ltd., et al.*, in the Tenth Judicial District Court, County of Quay, State of New Mexico |
| H | Opinion in *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 336 P.3d 972 (2014) |
| I | February 10, 2015 Motion for Rule I-060(B) Relief and Request for Stay of Foreclosure Sale in Cause No. D-1010-cv-200700111, *Rabo Agrifinance, Inc. v. Terra XXI, Ltd., et al.*, in the Tenth Judicial District Court, County of Quay, State of New Mexico |
| J | May 15, 2015 Order in Cause No. D-1010-cv-200700111, *Rabo Agrifinance, Inc. v. Terra XXI, Ltd., et al.*, in the Tenth Judicial District Court, County of Quay, State of New Mexico |
| K | November 18, 2015 Opinion in No. 34,757, *Rabo Agrifinance, Inc. v. Terra XXI, Ltd., et al.*, In the Court of Appeals of the State of New Mexico |
| L | January 29, 2016 Order in No. S-1-SC-35642, *Rabo Agrifinance, Inc. v. Terra XXI, Ltd., et al.*, in the Supreme Court of the State of New Mexico |

Further Affiant sayeth not.



Barbara Whiten Balliette

SWORN AND SUBSCRIBED TO BEFORE ME, personally appeared Barbara Whiten Balliette, on this the 5th day of February, 2016.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:



MINA NAPOLES MYERS
MY COMMISSION EXPIRES
June 14, 2016

# EXHIBIT A

504 Fed.Appx. 288
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.
(Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

TERRA PARTNERS, Plaintiff–Appellant

v.

RABO AGRIFINANCE, INCORPORATED; AG
Acceptance Corporation, Defendants–Appellees.

No. 11–11166.
|
Dec. 21, 2012.

## Synopsis

**Background:** Borrower filed state court action alleging that agricultural lender converted its property. After removal, the United States District Court for the Northern District of Texas, 2010 WL 3270225, 2011 WL 2413356, 2011 WL 5527292, granted lender's motions for summary judgment, and borrower appealed. Lender moved for sanctions and for injunction barring future litigation.

**Holdings:** The Court of Appeals held that:

[1] imposition of monetary sanction of $3,000 against borrower's authorized managing agent was warranted, and

[2] injunction was warranted to prevent agent from filing future litigation.

Affirmed; motions granted.

West Headnotes (2)

[1]     **Federal Civil Procedure**
⚷ Frivolousness;  particular cases

**Federal Civil Procedure**
⚷ Type and amount of sanction

Borrower's authorized managing agent acted in bad faith in borrower's conversion action against lender, thus warranting imposition of monetary sanction of $3,000, by presenting patently frivolous legal argument that Court of Appeals' prior decisions were "legal nullities that are void ab initio" and threatening continued meritless litigation.

1 Cases that cite this headnote

[2]     **Injunction**
⚷ Particular cases

Injunction was warranted to prevent borrower's authorized managing agent from filing future litigation collaterally attacking Court of Appeals' prior decisions in lender's litigation against borrower on grounds not supported in existing law or reasonable argument for extension or modification of law, where agent stated that he intended to raise same void ab initio argument in future motions, petitions for writs of mandamus in state or federal court, motions to reopen bankruptcy cases for consideration of motions for contempt, bills of review in state court, and other collateral attacks on Court's prior judgments.

2 Cases that cite this headnote

## Attorneys and Law Firms

**\*289** Steven Eugene Clark, McDole, Kennedy & Williams, P.C., Dallas, TX, for Plaintiff–Appellant.

Barbara Whiten Balliette, William Thomas Reid, Esq., Reid Collins & Tsai, L.L.P., Joni Paul Kleinschmidt, Diamond McCarthy, L.L.P., Austin, TX, for Defendants–Appellees.

Appeal from the United States District Court for the Northern District of Texas, Amarillo, USDC No. 2:08–CV–194.

Before JOLLY, JONES, and GRAVES, Circuit Judges.

## Opinion

PER CURIAM: [*]

**1** After reviewing the briefs, the relevant portions of the record, and the applicable law, we find no reversible error in the district court's three opinions granting summary judgment in favor of Defendants–Appellees Rabo Agrifinance, Inc. and Ag Acceptance Corporation. Summary judgment is AFFIRMED, essentially for the reasons given by the district court in its well-considered opinions.

In addition, Rabo Agrifinance, Inc. and Ag Acceptance Corporation's motion for monetary sanctions against would-be amicus Steve Veigel is GRANTED, and an injunction is GRANTED enjoining future litigation by Steve Veigel, Robert Veigel, Ella Marie Veigel, and their affiliates or related entities, including Terra Partners.

**\*290 I.**

On September 20, 2012, Steve Veigel sought to file a *pro se* amicus brief in support of Terra Partners. [1] Steve Veigel has an obvious interest in this case. He is an authorized managing agent for Terra Partners, is a corporate officer for all four of the corporate partners that form Terra Partners, owns all shares in one of the corporate partners, and half of the shares in another. In his amicus brief, Steve Veigel asserts that prior decisions of this court "are legal nullities that are void *ab initio.*" We have previously rejected his argument. *See Rabo Agrifinance, Inc. v. Veigel Farm Partners,* 328 Fed.Appx. 942, 943 (5th Cir.2009). The brief thus is frivolous.

**II.**

**A.**

Rabo Agrifinance and Ag Acceptance Corporation moved for sanctions against both Steve Veigel and Terra Partners. Although we do not impose monetary sanctions against Terra Partners, [2] we find that Steve Veigel acted in bad faith and impose sanctions. *See Ferguson v. MBank Houston, N.A.,* 808 F.2d 358, 360 (5th Cir.1986) ("We may impose sanctions on appeal ... if necessary.").

**[1]** Federal courts have an inherent power "to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Scaife v. Associated Air Ctr., Inc.,* 100 F.3d 406, 411 (5th Cir.1996); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). The threshold for using our inherent powers is high, and we "must make a specific finding that the sanctioned party acted in 'bad faith,' " before imposing sanctions. *Maguire Oil Co. v. City of Houston,* 143 F.3d 205, 209 (5th Cir.1998) (quoting *Matta v. May,* 118 F.3d 410, 413 (5th Cir.1997)) (emphasis omitted). Steve Veigel's void ab initio argument was affirmatively rejected by this court, and his brief threatens future litigation premised on the same argument. *See Newby v. Enron Corp.,* 302 F.3d 295, 302 (5th Cir.2002) ("[F]ederal courts also have the inherent power to impose sanctions against vexatious litigants."). Raising a patently frivolous legal argument and threatening continued meritless litigation is the definition of bad faith. Steve Veigel, therefore, is sanctioned in the amount of $3,000.

**B.**

**2** **[2]** In order to prevent Steve Veigel from continuing to raise the frivolous void ab initio argument, Rabo Agrifinance, Inc. and Ag Acceptance Corporation requested an injunction to prevent the filing of future litigation collaterally attacking this court's judgments. [3] We agree that an injunction is appropriate in this instance.

**\*291** As previously stated, we have the inherent power to impose sanctions, including an injunction, against litigants who use the legal system to harass their opponents through vexatious litigation. *See Newby,* 302 F.3d at 302; *see also Ferguson,* 808 F.2d at 359 ("That his filings are *pro se* offers ... no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."). We recognize, however, that "injunction[s] against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Ferguson,* 808 F.2d at 360.

In this case, Steve Veigel stated that he intends to raise the same void ab initio argument in future Rule 60(b) motions; petitions for writs of mandamus in state or federal court;

motions to reopen bankruptcy cases for consideration of motions for contempt; bills of review in state court; and other collateral attacks on the prior judgments of this court. His position is not supported in existing law and is not a reasonable argument to extend or modify the law, given that this court has already ruled on his argument. The future litigation he threatens would be repetitive, vexatious, previously resolved, and meritless. A narrowly-tailored injunction is an appropriate sanction to protect this court's judgments and to prevent the continued filing of vexatious litigation.

It is therefore ORDERED:

No pleading, lawsuit, or other document in any federal court shall be filed by, or on behalf of, Steve Veigel, his affiliates or related entities, including Terra Partners, without first presenting the filing to the district court below to determine whether the issues contained in the filing have been previously decided. Furthermore, it is ORDERED that said Steve Veigel shall pay into the registry of this court the sum of three thousand dollars ($3,000) by and no later than January 4, 2013.

JUDGMENT AFFIRMED.

SANCTIONS AND INJUNCTION ORDERED.

**All Citations**

504 Fed.Appx. 288, 2012 WL 6643163

Footnotes

| | |
|---|---|
| * | Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4. |
| 1 | His motion for leave to file an out of time motion to file an amicus brief, an opposed motion to file an amicus brief, and an opposed motion to file an amicus brief in excess of the page limit were all denied. The amicus brief was filed months late and was 18,515 words, far exceeding the 7,000–word limit. |
| 2 | Rabo Agrifinance, Inc. and Ag Acceptance Corporation's motion for sanctions thus is DENIED with respect to monetary sanctions against Terra Partners. |
| 3 | Steve Veigel has apparently already raised the argument again in an October 9, 2012 letter submitted to a New Mexico state court, claiming that the case of *Rabo Agrifinance v. Terra XXI,* 257 Fed.Appx. 732 (5th Cir.2007), was a legal nullity, void ab initio. |

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT B

IN THE 222ND JUDICIAL DISTRICT COURT
DEAF SMITH COUNTY, TEXAS

| | |
|---|---|
| JAMES FRIEMEL and<br>MELANIE FRIEMEL, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| VS. | )<br>) |
| AG ACCEPTANCE CORPORATION<br>and TERRA PARTNERS, | )  NO. CI-07C-024<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| RABO AGRIFINANCE, INC., | )<br>) |
| Intervenor. | ) |

Dated: November 6, 2008

## SETTLEMENT AGREEMENT

1.      This agreement binds all Rabo Entities, including but not limited to Rabo
Agrifinance, Inc. and Ag Acceptance Corporation ("Rabo Entities"). Rabo Entities shall
also include its representatives, employees, agents, and/or attorneys.

2.      In addition, this agreement binds Terra Partners and all Veigel Entities, including
but not limited to Terra XXI, Ltd., Veigel Farm Partners, Veigel Grain Company, Grain
Central Station, Steven Veigel, Robert Veigel, Ella Marie Veigel and any entity that
either Steven Veigel, Robert Veigel, and/or Ella Marie Veigel own an interest in, whether
directly or indirectly (the "Veigel Entities"). The signatures of Steven Veigel, Robert
Veigel, and/or Ella Marie Veigel below bind any and all entities in which Steven Veigel,
Robert Veigel and/or Ella Marie Veigel own an interest in, whether directly or indirectly.

3.      Terra Partners and Clark Ashworth Milby, RLLP, counsel for Terra Partners,
collectively receive $125,000 from the Court's registry related to the 2006/2007 wheat
crop ("2006/2007 Wheat Crop").

4.      The Rabo Entities receive the remainder of all funds in the Court's registry related
to the 2006/2007 Wheat Crop.

5.      From the date of this agreement forward, Terra Partners and the Veigel Entities
agree that neither Terra Partners nor any Veigel Entity will contest the Rabo Parties',



1



App. p. 160

and/or the Rabo Parties' assigns', lessees', and/or the future purchasers' of the Deaf Smith County (property defined below) right of title, ownership, possession, and/or lease of the Deaf Smith County property, known in this matter as Tracts 1, 2, and 3 including the property foreclosed upon on September 2, 2003 and the 960 Acres (being all of Section 59 and the East ½ of Section 60). Terra Partners and the Veigel Entities expressly acknowledge that any and all leases of the Deaf Smith County property in which they claim or may claim an interest are void as of the date of this agreement forward. Terra Partners and the Veigel Entities agree, represent, and warrant that they will not enter the Deaf Smith County property defined above without an order of a court or without written permission of the Rabo Entities, so long as the Rabo Entities own the Deaf Smith County property.

This agreement does not preclude Terra Partners or any Veigel Entity from pursuing any issues in the following appeals or cases; however, prevailing on any of the following cases and/or appeals shall not entitle Terra Partners or any Veigel Entity to any additional funds from the 20006/2007Wheat Crop. The Rabo Entities reserve all rights to fully defend and prosecute any and all claims asserted or that will be asserted in the following appeals or cases:

a.      All currently pending appeals in the Fifth Circuit Court of Appeals, including the appeals from the Equipment Suit (Cause No. 2:06-CV-153-J), the Partition Suit (Cause No. 2:06-CV-272-J), and the Deficiency Suit (Cause No. 2:05-CV-243-J);

b.      All currently pending appeals in either the Amarillo Court of Appeals or the Texas Supreme Court, including but not limited to, the appeal from the summary judgment motions/trial on the merits in Cause No. 04-011B litigated in the 222nd District Court for Deaf Smith County and any challenge to the decision rendered by the Amarillo Court of Appeals on October 31, 2008 in Cause No. 07-06-0419-CV;

c.      Any challenge to the denial of the USDA program payments for 2007 only. Any decision related to this challenge will not be used by any Veigel Entity to argue that it possesses any valid lease on the Deaf Smith County property identified above in any other context in the future in connection with any litigation, contest, or challenge with any Rabo Entity and/or assigns, lessees, and/or future purchasers of the Deaf Smith County property identified above;

d.      Cause No. 08-CV-00194-J pending in the United States District Court for the Northern District of Texas;

e.      Litigation, including cross claims, in New Mexico related to the foreclosure of the New Mexico property.

6.      Terra Partners and the Veigel Entities agree to open a new bank account in Terra Partners' name to deposit these funds to keep them segregated from any other Terra Partners' funds and to inform the Rabo Entities of the identity of the account. The Rabo Entities agree not to execute any judgment it currently possesses against the funds paid to

2

Terra Partners and deposited in this account as a result of this agreement. The Veigel Entities agree that no other funds will be deposited into this account and that this agreement does not preclude the Rabo Entities from executing their judgments against any other Terra Partners' assets.

7.     In exchange, Terra Partners and the Veigel Entities agree not to challenge the validity or propriety of the Rabo Entities' execution against and the subsequent sale of Terra Partners' equipment and/or garnishment efforts prior to the date of this agreement, the proceeds of which, if any, were subsequently credited to judgments currently held by the Rabo Entities against Terra Partners. To the extent that any such claim is asserted in Cause No. 08-CV-00194-J pending in the United States District Court for the Northern District of Texas, Terra Partners and the Veigel Entities agree to dismiss that claim only WITH PREJUDICE.

8.     This agreement reflects the entire agreement between the parties. There are no other side agreements, oral or written, that affect any terms of this agreement.

9.     The Rabo Entities and Terra Partners and the Veigel Entities acknowledge that no one is relying on any statement, claim, or assertion of any other person/entity. The Rabo Entities and Terra Partners and the Veigel Entities agree that this is a final resolution of the claims asserted in this lawsuit. However, the Rabo Entities and Terra Partners and the Veigel Entities agree that this resolution does not affect the claims asserted in the litigation and appeals referenced in Paragraph 5(a)-(e) above. The Rabo Entities and Terra Partners and the Veigel Entities acknowledge that they have had the opportunity to confer with their counsel and are entering into this agreement voluntarily and of their own free will. The Rabo Entities and Terra Partners and the Veigel Entities acknowledge that they cannot and will not seek to set aside this agreement on any grounds, including but not limited to, any claim that the agreement was fraudulently induced.

10.     Nothwithstanding anything else in this agreement, Terra Partners and the Veigel Entities and the Rabo Entities agree to an entry of a FINAL JUDGMENT dismissing all claims raised in this case WITH PREJUDICE effective November 6, 2008, and agree not to assert these claims in any other litigation. However, the Rabo Entities and Terra Partners and the Veigel Entities agree that this resolution does not affect the claims asserted in the litigation and appeals referenced in Paragraph 5(a)-(e) above. Terra Partners and the Veigel Entities and the Rabo Entities agree to waive all appellate rights related to this matter. Immediately after entry of the FINAL JUDGMENT, the District Clerk is authorized to release funds specified in this agreement, consistent with the District Clerk's ordinary custom.

11.     This agreement shall bind the Rabo Entities' and Terra Partners' and the Veigel Entities' heirs, successors, and assigns.

12.     The Rabo Entities and Terra Partners and the Veigel Entities each represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, except as otherwise set

3

forth herein; that each has the sole right and exclusive authority to execute this Agreement and receive the considerations specified in it; and that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action in this litigation, other than any assignment of attorneys' fees.

APPROVED AS TO FORM:

Clifford H. Walston, counsel for Rabo Agrifinance, Inc.
And Ag Acceptance Corporation

Steven E. Clark, counsel for Terra Partners

APPROVED AND AGREED TO:

Linda Kobliska on behalf of Rabo Agrifinance, Inc.

Linda Kobliska on behalf of Ag Acceptance Corporation

Steven Veigel, as Authorized Agent, on behalf of Terra Partners

Robert Veigel, as Authorized Agent, on behalf of Terra Partners

Steven Veigel, individually, and on behalf of all
entities in which he has an ownership in, either
directly or indirectly, including but not limited to
Terra XXI, Ltd., Veigel Farm Partners,
Veigel Grain Company, Grain Central Station

4

*Robert Veigel*

Robert Veigel, individually, on behalf of all entities in which
he has an ownership in, either directly or
indirectly, including but not limited to
Terra XXI, Ltd., Veigel Farm Partners,
Veigel Grain Company, Grain Central Station

*Ella Marie Veigel*

Ella Marie Veigel, individually, and on behalf of all
entities in which she has an ownership in, either
directly or indirectly, including but not limited to
Terra XXI, Ltd., Veigel Farm Partners,
Veigel Grain Company, Grain Central Station

5

EXHIBIT C

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

TERRA PARTNERS; TERRA XXI, LTD.;
ROBERT WAYNE VEIGEL;
ELLA MARIE WILLIAMS VEIGEL;
VEIGEL FARMS, INC.; VEIGEL CATTLE
COMPANY; and VEIGEL FARM PARTNERS,

       Plaintiffs,

v.                                              No.  2:15-cv-236-J

AG ACCEPTANCE CORPORATION,

       Defendant.

PLAINTIFFS' INITIAL DISLCOSURES

       Plaintiffs, by and through their attorneys, Keleher & McLeod, PA (Jeffrey A. Dahl and

Justin B. Breen), hereby provide their initial disclosures:

I.       **The name, address, and telephone number (where known) of individuals likely to**

**have discoverable information that Plaintiffs may use to support their claim:**

       A.     <u>Robert Veigel</u>, c/o Keleher & McLeod, P.A.  Mr. Veigel has information

concerning the history of the loans and mortgages at issue in Plaintiffs' Petition For Accounting,

Claim For Unjust Enrichment, Imposition Of Constructive Trust, And Request For Declaratory

Relief ("Petition").

       B.     <u>Steve Veigel</u>, c/o Keleher & McLeod, P.A.  Mr. Veigel has information

concerning the history of the loans and mortgages at issue in Plaintiffs' Petition.

       C.     As of yet unidentified representative(s) from Champion Feeders, LLC

("Champion").  Those representative(s) will have information concerning Champion's purchase

of the real property at issue herein, including its requirement that the property be conveyed free of all liens. The representative(s) will also have information about how the proceeds and other consideration of the Champion sale were paid and allocated among Rabo Agrifinance, Inc. ("Rabo") and/or Ag Acceptance Corporation ("AAC").

D.     As of yet unidentified representative(s) from Great Plains Ag Credit, P.O. Box 50060, Amarillo, Texas 79159 ("Great Plains"). Those representative(s) will have information concerning Champion's purchase of the real property at issue herein, including its requirement that the property be conveyed free of all liens. The representative(s) will also have information about how the proceeds of the Champion sale were paid and allocated among Rabo and/or AAC.

E.     As of yet unidentified representative(s) from A.O. Thompson Abstract Co. Inc., 242 East 3rd, Hereford, Texas 79045. Those representative(s) will have information concerning Champion's purchase of the real property at issue herein, including its requirement that the property be conveyed free of all liens. The representative(s) will also have information about how the escrow proceeds and other consideration of the Champion sale were paid and allocated among Rabo and/or AAC.

F.     As of yet unidentified representatives from Defendant AAC, c/o AAC's counsel. Those representative(s) will have information concerning Champion's purchase of the real property and the receipt, distribution, and allocation of sales proceeds and other consideration as well as AAC's earlier purchase of the real property at issue subject to the priority lien(s) of Rabo and the release and satisfaction of such lien(s) as well as an account of all previous debts owed to AAC and payments and credits thereon at issue herein.

G.     Shawn Smeins, representative of AAC and Rabo, c/o AAC's counsel.  Mr. Smeins will be called to testify about how AAC calculated the purchase price for the property at issue herein based on the fact that the property was subject to Rabo's superior lien(s) and the satisfaction of such lien(s).

H.     Linda Kobliska, Deputy General Counsel for AAC and Rabo, c/o AAC's counsel. Ms. Kobliska will be called to testify about AAC's representation to the United States Federal Government, and admission therein, that AAC would be using proceeds from the Champion sale to satisfy the Plaintiffs' loan obligations to Rabo and AAC.

I.     As of yet unidentified representatives from Rabo.  Those representatives will be called to testify about Rabo's previous encumbrance on the real property concerned herein, as well as the priority thereof, and the release of Rabo's lien(s) upon the sale of the property to Champion.  The representative(s) will also have information about how the proceeds of the Champion sale were received, distributed, and credited as well as an account of all previous debts owed to Rabo and payments and credits thereon.

II.     **Documents, electronically stored information, and tangible things that Plaintiffs may use to support their claim:**

A.     Mortgage on Guadalupe County property, recorded on June 12, 1998.  [Exhibit A to Petition.]

B.     Mortgage on the Quay County property, recorded on June 18, 1998.  [Exhibit B to Petition.]

C.     March 28, 2006, letter from Attorney Linda Kobliska.  [Exhibit C to Petition.]

D.     November 15, 2012 Special Warranty Deed to Champion.  [Exhibit D to Petition.]

E.      Release of Deed Of Trust number 942566 recorded November 15, 2012. [Exhibit E to Petition.]

F.      Release of Deed Of Trust number 981253 recorded November 15, 2012. [Exhibit F to Petition.]

G.      AAC's US Department of Agriculture form FSA-153, showing receipt of at least $6,154,660 from Champion for the sale of the property at issue. [Exhibit G to Petition.]

H.      Check number 2927 for $224,346.35 from the Deaf Smith County District Clerk payable jointly to Rabo and AAC and related court registry ledger.

I.      Deed Of Trust number 942566 recorded November 10, 1994.

J.      Notice Of Foreclosure on Deed Of Trust number 942566 posted on August 11, 2003.

K.      Deed Of Trust number 981253 recorded June 3, 1998.

L.      Notice of Foreclosure on Deed Of Trust number 981253 posted on August 12, 2003.

M.      Deed Of Trust number 981254 recorded June 3, 1998.

N.      Notice of Foreclosure on Deed Of Trust number 981254 posted on August 12, 2003.

O.      Substitute Trustee's Deed number 032023 recorded on September 2, 2003.

P.      Any and all pertinent documents relating to the loans concerned in this matter, including, but not limited to, the mortgages on the New Mexico property, and documents related to the Champion sale in the possession, custody and control of the Defendants that have been produced in prior litigation.

### III. Computation of Damages

A. Plaintiffs are requesting: 1) an accounting concerning the handling of the proceeds from the sale to Champion and the other retained funds as specified in the Petition; 2) that the Court enter a judgment in favor of Plaintiffs in the amount of any sums unjustly retained by AAC as a result of the sale to Champion and the retention of those funds; 3) that the Court enter a judgment imposing a constructive trust as to those funds; and 4) that the Court enter a judgment declaring that the AAC Notes have been satisfied in full. Accordingly, the Plaintiffs damages will be equal to the amount of those proceeds and that amount will be discovered as part of this proceeding.

### IV. Insurance Agreement.

There is no insurance coverage applicable to this matter.

Plaintiffs reserve the right to supplement these disclosures as additional information is acquired and in accordance with F.R.C.P. Rule 26.

Respectfully submitted,

KELEHER & MCLEOD, P.A.

By:_____

Jeffrey A. Dahl – NM SBN 0622
Justin B. Breen – NM SBN 28108
Post Office Box AA
Albuquerque, New Mexico 87103
Telephone: (505) 346-4646
Facsimile: (505) 346-1370
E-Mail: jlr@keleher-law.com
E-Mail: jbb@keleher-law.com
*Lead Counsel for Plaintiffs*

EXHIBIT D

**From:** Jeffrey A. Dahl [mailto:jad@keleher-law.com]
**Sent:** Tuesday, February 02, 2016 3:20 PM
**To:** Barbara Balliette <bballiette@rctlegal.com>; Justin B. Breen <jbb@keleher-law.com>
**Cc:** triney@rineymayfield.com; Cliff Walston <cliff@walstonlawfirm.com>; Richard Rowley <r2@rowleylawfirm.com>
**Subject:** RE: Veigel/AAC case

Barbara:
For a number of reasons, our firm has made the decision to move to withdraw from further representation of the Veigels and the Veigel entities in both the New Mexico and Texas litigation. Will you oppose our motion to withdraw? I should inform you that the Veigels will be objecting to our motion, so I suspect there will be a briefing or hearing on the matter.
Because of the position we are currently in, I cannot grant approval to a dismissal of any claims by the Veigels and it appears that you will have to go forward with your motion for summary judgment.
I will wait to hear form you regarding these issues. Thank you.


Jeffrey A. Dahl
KELEHER & MCLEOD
P.O. Drawer AA
Albuquerque NM 87103

jad@keleher-law.com.

505-346-4646 phone
505-346-1370 fax
505-346-9118 direct

NOTE: This message is intended only for the use of the individual or entity to which it is addressed. The information contained herein is protected by the Electronic Communications Privacy Act, 18 U.S.C. 2510, et. seq. , attorney-client privilege and/or attorney work product doctrines. It is intended for the use of the individual and/or entity named above and the privileges are not waived by virtue of this message having been sent electronically. If the person receiving this message or any other reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail or by telephone. **Please do not open any attached files, and please destroy all copies of the email and any attachments.** Thank you.



**From:** Barbara Balliette [mailto:bballiette@rctlegal.com]
**Sent:** Tuesday, February 02, 2016 10:33 AM
**To:** Jeffrey A. Dahl; Justin B. Breen
**Cc:** triney@rineymayfield.com; Cliff Walston; Richard Rowley
**Subject:** RE: Veigel/AAC case

Dear Jeff and Justin: The New Mexico Supreme Court has denied cert.
Do the Veigels intend to drop the duplicative claims? Our summary judgment deadline is Friday. I would appreciate it if you would let me know the decision by tomorrow (Tuesday) at 5pm so that my client does not have to incur additional fees in preparing a Motion for Summary Judgment on already-resolved claims.
We're happy to work with you on revising deadlines for pleadings and dispositive motions in order to avoid preparing unnecessary motions and incurring even more legal fees.
-Barbara

**Barbara Whiten Balliette** | *Partner*
512.647.6103 (Direct)
**REID COLLINS & TSAI LLP**
AUSTIN | NEW YORK

**From:** Jeffrey A. Dahl [mailto:jad@keleher-law.com]
**Sent:** Wednesday, December 16, 2015 12:19 PM
**To:** Barbara Balliette <bballiette@rctlegal.com>; Justin B. Breen <jbb@keleher-law.com>
**Cc:** triney@rineymayfield.com; Cliff Walston <cliff@walstonlawfirm.com>; Richard Rowley <r2@rowleylawfirm.com>
**Subject:** RE: Veigel/AAC case

Barbara:
Our clients have determined that they wish to file a petition for a writ of certiorari in the NM Supreme Court. By agreement with Mr. Rowley, we have filed a motion to extend the time in which to file the petition to December 30th, due to my trial and CLE schedule. Until the NM Supreme Court grants or denies the petition, the federal court case issues are still ripe. If you need further information, let me know.
In the meantime, I wish you and yours a Merry Christmas and Happy New Year.


Jeffrey A. Dahl
KELEHER & MCLEOD
P.O. Drawer AA
Albuquerque NM 87103

jad@keleher-law.com.

505-346-4646 phone
505-346-1370 fax
505-346-9118 direct

NOTE: This message is intended only for the use of the individual or entity to which it is addressed. The information contained herein is protected by the Electronic Communications Privacy Act, 18 U.S.C. 2510, et. seq. , attorney-client privilege and/or attorney work product doctrines. It is intended for the use of the individual and/or entity named above and the privileges are not waived by virtue of this message having been sent electronically. If the person receiving this message or any other reader of this message is

not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail or by telephone. **Please do not open any attached files, and please destroy all copies of the email and any attachments.** Thank you.



**From:** Barbara Balliette [mailto:bballiette@rctlegal.com]
**Sent:** Tuesday, December 15, 2015 1:55 PM
**To:** Jeffrey A. Dahl; Justin B. Breen
**Cc:** triney@rineymayfield.com; Cliff Walston
**Subject:** RE: Veigel/AAC case

Jeff and Justin:
What is the status on this? The New Mexico appellate court has conclusively ruled now, so the duplicative claims really should be dropped. Even the Veigels' Response to the Motion to Dismiss conceded that an adverse appellate decision would bar the declaratory judgment claim, at a minimum (a fair reading would show that it bars other claims as well). What do the Veigels intend to do with the Texas case?
-Barbara

**Barbara Whiten Balliette |** *Partner*
512.647.6103 (Direct)
**REID COLLINS & TSAI LLP**
**AUSTIN | NEW YORK**

**From:** Jeffrey A. Dahl [mailto:jad@keleher-law.com]
**Sent:** Monday, November 30, 2015 2:13 PM
**To:** Barbara Balliette <bballiette@rctlegal.com>; Justin B. Breen <jbb@keleher-law.com>
**Cc:** triney@rineymayfield.com; Cliff Walston <cliff@walstonlawfirm.com>
**Subject:** RE: Veigel/AAC case

Barbara:
We are reviewing the matter with our client. We will let you know how we intend to proceed as soon as we are able. Thank you.


Jeffrey A. Dahl
KELEHER & MCLEOD
P.O. Drawer AA
Albuquerque NM 87103

jad@keleher-law.com.

505-346-4646 phone
505-346-1370 fax
505-346-9118 direct

NOTE: This message is intended only for the use of the individual or entity to which it is addressed. The information contained herein is protected by the Electronic Communications Privacy Act, 18 U.S.C. 2510, et. seq. , attorney-client privilege and/or attorney work product doctrines. It is intended for the use of the individual and/or entity named above and the privileges are not waived by virtue of this message having been sent electronically. If the person receiving this message or any other reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you

are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail or by telephone. **Please do not open any attached files, and please destroy all copies of the email and any attachments.** Thank you.



**From:** Barbara Balliette [mailto:bballiette@rctlegal.com]
**Sent:** Monday, November 30, 2015 1:12 PM
**To:** Justin B. Breen; Jeffrey A. Dahl
**Cc:** triney@rineymayfield.com; Cliff Walston
**Subject:** Veigel/AAC case

Jeff and Justin:
Do you intend to amend your complaint in Amarillo in light of the recent court of appeals ruling?
-Barbara

**Barbara Whiten Balliette | *Partner***
**REID COLLINS & TSAI LLP**
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 (Main)
512.647.6103 (Direct)
512.647.6129 (Fax)
**bballiette@rctlegal.com**
**web** | **bio** | **vCard**
_____

**AUSTIN** | **NEW YORK**

EXHIBIT E

PROMISSORY NOTE

$ __1,962,100.00__

| | |
|---|---|
| LOAN NO. | J452124 |
| DATE | 11/9/94 |
| ASSN. | Westex |
| BRANCH: | Hereford |

For value received, I, We, or any of Us, the undersigned, jointly and severally, promise to pay to the order of the FARM CREDIT BANK OF TEXAS, at its office in the city of Austin, Travis County, Texas, the principal sum of __ONE MILLION NINE HUNDRED SIXTY TWO THOUSAND ONE HUNDRED__ DOLLARS __1,962,100.00__ ), lawful money of the United States of America, according to the tenor, effect and reading hereof, with interest from the date the principal is advanced until paid at the rate or rates hereinafter provided. Interest will be calculated on the basis of a 30-day month and a 360-day year and will be accrued for the number of days that principal is outstanding.
Interest shall be payable from time to time on the remaining unpaid principal balance prior to default or maturity, as follows:

☐ The regular or conventional rate of interest payable on this note shall be fixed at the rate of _____ percent per annum from the date of funding until paid.

☒ The initial rate of interest payable on this note shall be __7.50__ percent per annum. At the option of the payee or other Farm Credit System Institution that becomes the holder of this note, the rate of interest may be either increased or decreased at any time and from time to time as authorized, but in no event to exceed the rate permitted by the Farm Credit Act of 1971, Public Law 92-181, as amended, and the regulations promulgated thereunder. If this note is transferred to the Federal Agricultural Mortgage Corporation, or to a holder that is not a Farm Credit System Institution, then this note shall bear interest at the lesser of (a) a fixed rate equal to the rate of interest applicable to this note on the date of transfer, or (b) a fixed rate that will result in an effective yield equal to the maximum lawful rate.

☐ The initial rate of interest payable on this note shall be _____ percent per annum and shall be applicable until _____. On that date and thereafter, unless the undersigned elect to convert this interest rate by choosing among option (a), (b), or (c) below, the interest rate and term thereof shall, at the option of the payee or other Farm Credit System Institution that becomes the holder of this note, be either increased or decreased at any time and from time to time as authorized, but in no event to exceed the rate permitted by the Farm Credit Act of 1971, Public Law 92-181, as amended, and the regulations promulgated thereunder. The interest rate and the period thereof may be redetermined by the holder when any fixed interest rate period expires, unless at the end of such fixed rate period the undersigned elect to convert to another interest rate by:

(a) converting to another fixed interest rate period, if such program is then available; or

(b) converting to a variable interest rate program, if applicable and if such program is then available; or

(c) converting to an adjustable interest rate loan program with interest determinable by application of a specified margin to a known interest rate index, if applicable and if such program is then available.

If the Bank must so redetermine the interest rate and term thereof because of my/our failure to select from the available interest rate options above, and if the previous interest rate plan contained a prepayment fee, and if permitted by state law, the Bank may select an interest rate plan and term which includes a prepayment fee.

However, in the event that upon expiration of a fixed interest rate period the time remaining until the final maturity date is less than any of the established interest rate period programs identified above and then available, the interest rate and term thereof will be determined by the holder.

Prior to the end of any fixed rate term established above, the undersigned will be notified of the date of expiration of the fixed rate term and advised that on said expiration date the loan shall be eligible for redetermination of the interest rate. In order to further accomplish a new pricing in accordance with the provisions herein, the undersigned must sign and provide any and all documents necessary to accomplish such repricing and return them to the holder prior to any deadline established in such notices. If this note is transferred to the Federal Agricultural Mortgage Corporation or to a holder that is not a Farm Credit System Institution, then this note shall bear interest at the lesser of (a) a fixed rate equal to the rate of interest applicable to this note on the date of transfer, or (b) a fixed rate that will result in an effective yield equal to the maximum lawful rate.

☐ The initial rate of interest payable on this note shall be _____ percent per annum. The interest rate will be adjusted on _____, and on that day every twelfth (12th) month thereafter (the "Change Date"). The adjustable interest rate of this note will be based on an "Index" which is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one (1) year, as made available by the Federal Reserve Board. If information on the Index is no longer available from the Federal Reserve Board, the holder may select another source for data. The Index figure available on the fifteenth (15th) day of the month preceding each Change Date is called the "Current Index." Effective on each Change Date and continuing for the next twelve (12) months thereafter, the applicable interest rate will be equal to the Current Index rate plus _____ percentage points, rounded up to the nearest multiple of five-one/hundredths of one percentage point (0.050%). If this note is transferred to a holder that is not a Farm Credit System Institution, then the adjustable interest rate shall never exceed a rate that will result in an effective yield greater than the maximum lawful rate. If this note is transferred to the Federal Agricultural Mortgage Corporation, then this note shall bear interest at a fixed rate equal to the rate of interest applicable to this note on the date of transfer.

☐ If this note includes a variable rate or an adjustable rate, the holder will notify the maker in writing of any changes in the rate of interest and the amount of any installment payment affected by the change in the rate of interest before the due date of such installment. The notice will include all information required by law to be given and will also include the name, title and telephone number of a person who will be able to answer any questions regarding the notice. The interest rate will never be greater than 21% per annum.

The indebtedness shall be payable in __TWENTY ONE__ ( __21__ ) __Annual__ installments beginning on __January 1, 1995__, and thereafter on the first day of __JANUARY__ of each calendar year until the indebtedness, both principal and interest, is fully paid.

☒ Interest only payment(s) shall be payable on the __first__ installment due date(s).

After the initial payment of interest only (if applicable), this note shall be payable:

☒ in successive equal installments of principal and interest in an amount sufficient to amortize the indebtedness over the term of the loan, the amount being subject to adjustment to reflect any increase or decrease in the interest rate, if applicable.

☐ in successive installments of principal in the amount of $ _____ plus accrued interest on the unpaid principal balance.

The undersigned hereby authorize the holder to apply any payment(s) made on this note or owed under the loan agreement or any instrument securing or related to this note (collectively, the "Loan Documents"), to such part of the indebtedness as the holder may elect.

After default in the payment of any amount due under this note or in the performance of any obligation under this note or the Loan Documents, or upon the death of any of the undersigned, the holder of this note may, at its option, accelerate the maturity hereof and declare the entire unpaid principal balance and accrued interest to be due and payable. The holder's forbearance to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

**EXHIBIT**

**A**

App. p. 27

If the unpaid balance of this note is not paid in full at maturity of this note, whether maturity occurs by lapse of time or by acceleration, the unpaid principal and past due interest shall bear interest at a default rate equal to the rate of interest applicable to this note on the date of maturity plus an additional four percent (4%) per annum. Prior to maturity of this note, any amount owing under this note which is not paid when due, and any advance made by the holder of this note pursuant to any of the Loan Documents, shall bear interest at a default rate equal to the rate in effect at the time repayment of such amount or advance is received by the holder of this note plus an additional four percent (4%) per annum. Any such amount or advance which is not paid prior to maturity shall bear interest at a default rate equal to the rate of interest applicable to the note on the date of maturity plus an additional four percent (4%) per annum from the date such amount is due or such advance is made, and such amount or advance plus accrued default interest thereon shall be added to the unpaid principal at maturity. Notwithstanding the foregoing, if the holder of this note is not a Farm Credit System Institution, then the default rate shall be limited so that it shall not exceed a rate that will result in an effective yield in excess of the maximum lawful rate.

any amount owed under this note or the loan documents is not paid when due, the holder shall be entitled to collect default interest from the date(s) of default in an amount produced by applying the applicable default interest rate as set out above to the amount in default. If said default(s) is not cured within fifteen (15) days of the occurrence of such default(s), the holder shall be entitled to collect an additional default interest charge of $25.00.

If any amount due under this note shall be collected by legal proceedings or through a probate or bankruptcy court, whether or not the note is in default, or if this note is placed in the hands of an attorney (salaried, corporate or any other attorney) for collection after default or maturity or for enforcement of any of the holder's rights under this note or the Loan Documents, the undersigned agree to pay all costs incurred by the holder, including reasonable costs of attorneys (salaried, corporate or any other attorney) and other costs provided for in the Loan Documents.

The undersigned and each assumptor, surety, guarantor and endorser of this note or any part of this note, severally waive demand, presentment, notice of dishonor, notice of intent to accelerate maturity, notice of acceleration, diligence in collecting, grace, notice and notice of protest, and agree to one or more renewals, extensions and rearrangements of this note, for any period or periods of time and upon any terms and conditions, whether before or after default or maturity, without notice from or prejudice to the holder of this note. The holder of this note may, at its option, at any time and from time to time, release anyone liable to pay the indebtedness, or release all or any part of the collateral securing this note, and any such actions shall not release or impair the obligations of the undersigned under this note except as expressly agreed to in writing by the holder.

Unless provided otherwise by separate agreement between the undersigned and the payee, the principal balance of this note may be prepaid, in whole or in part, without penalty. Any amount so prepaid may be applied, at the holder's election, first to accrued interest on the amount of the tendered prepayment and the balance to the reduction of principal. Prepayment shall not defer the due date of any installment as provided above but may reduce or discharge one or more of the installments last maturing.

The holder of this note may, at the holder's discretion and as an accommodation to the undersigned, accept late or partial payment of any amount due under this note or any of the Loan Documents; however, acceptance of one or more late or partial payments shall not constitute a waiver of any default nor of the holder's right to receive timely payment. Acceptance of any partial payment after default and acceleration shall not constitute a reinstatement of the preacceleration payment schedule, nor shall it impair any of the holder's rights or remedies under this note or any of the Loan Documents.

Forbearance of the holder of this note to exercise any right or option granted in this note or in any of the Loan Documents, or to collect any money advanced under any of the Loan Documents, shall not constitute a waiver of the right to do so, nor render the holder of this note liable for damages or to account for money not collected, nor shall the exercise of such right or option constitute an election of remedies or prejudice any of the holder's other rights.

The holder of this note shall have the right to endorse, transfer or assign this note or any interest in this note to any person or entity, at any time and under any terms and conditions, in the holder's discretion.

Additional terms applicable to this note are contained in each addendum checked below and attached hereto, and all of such additional terms are incorporated herein by reference as if fully set forth in this note. In the event of any conflict between the terms of this note and the terms of any applicable addendum, the terms of such addendum shall control.

☒   "Addendum to the Promissory Note"

☐   "Prepayment Addendum"

☐

This note is further secured by a security interest on grain facilities set out in Security Agreement secured by Financing Statement filed for record in the Secretary of State's Office, and it is understood that where this note refers to deed of trust, the same in each instance shall refer to deed of trust and Security Agreement.

This is one in a series of two notes evidencing a total debt in the original principal sum of $3,000,000.00 for the above captioned loan Number 452124.

ATTEST:                                                        VEIGEL CATTLE COMPANY, AS GENERAL PARTNER OF TERRA
                                                                     XXI, LTD., A TEXAS LIMITED PARTNERSHIP
By: _Ella Marie Williams Veigel_          By: _Robert Wayne Veigel_

Ella Marie Williams Veigel, Secretary          Robert Wayne Veigel, President

Signed in _Deaf Smith_ County, _Texas_          Signed in _Deaf Smith_ County, _Texas_

on the _10_ day of _November_, 19 94          on the _10_ day of _November_, 19 94

_Ella Marie Williams Veigel_                         _Robert Wayne Veigel_

Ella Marie Williams Veigel                              Robert Wayne Veigel

Signed in _Deaf Smith_ County. _____          Signed in _Deaf Smith_ County, _Texas_

on the _10_ day of _November_, 19 94          on the _10_ day of _November_, 19 94
ATTEST:                                                        VEIGEL FARMS, INC.

By: _Steve Veigel_                                          By: _Robert Wayne Veigel_

Steve Veigel, Secretary                                  Robert Wayne Veigel, President

Signed in _Deaf Smith_ County, _Texas_          Signed in _Deaf Smith_ County, _Texas_

on the _10_ day of _November_, 19 94          on the _10_ day of _November_, 19 94
ATTEST:                                                        VEIGEL CATTLE COMPANY

By: _Ella Marie Williams Veigel_              By: _Robert Wayne Veigel_

Ella Marie Williams Veigel, Secretary          Robert Wayne Veigel, President

Signed in _Deaf Smith_ County, _Texas_          Signed in _Deaf Smith_ County, _Texas_

on the _10_ day of _November_, 19 94          on the _10_ day of _November_, 19 94

ADS Form 90 (5/94) WW/LT

Loan No.   J452124

## ADDENDUM TO THE PROMISSORY NOTE

This Addendum is incorporated into and is part of the Promissory Note dated _11/9_ ,
19 _94_ , in the original principal amount of $ _1,962,100.00_ , executed by the undersigned
and payable to the order of the Farm Credit Bank of Texas.

ATTEST:

By: _Ella Marie Williams Veigel_
Ella Marie Williams Veigel, Secretary
Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

ATTEST:

By: _N/A_
_____ Secretary
Signed in _____ County, _____
on the _____ day of _____, 19 _____.

ATTEST:

By: _N/A_
_____ Secretary
Signed in _____ County, _____
on the _____ day of _____, 19 _____.

ATTEST:

By: _N/A_
_____ Secretary
Signed in _____ County, _____
on the _____ day of _____, 19 _____.

ATTEST:

By: _N/A_
_____ Secretary
Signed in _____ County, _____
on the _____ day of _____, 19 _____.

VEIGEL CATTLE COMPANY, AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP
By: _Robert Wayne Veigel_
Robert Wayne Veigel, President
Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

BOB VEIGEL, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP
By: _Robert Wayne Veigel_
Robert Wayne Veigel, President
Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

STEVE VEIGEL, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP
By: _Steve Veigel_
Steve Veigel, President
Signed in _Deaf Smith_ County, _TEXAS_
on the _10_ day of _Novembr_, 19 _94_.

VEIGEL-KIRK, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP
By: _Steve Veigel_
Steve Veigel, Vice-President
Signed in _Deaf Smith_ County, _TEXAS_
on the _10_ day of _November_, 19 _94_.

VICKI VEIGEL, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP
By: _Steve Veigel_
Steve Veigel, Vice-President
Signed in _Deaf Smith_ County, _TEXAS_
on the _10_ day of _Novembr_, 19 _94_.

Form 61 (Rev. 3/94) WW/LT

## ALLONGE TO PROMISSORY NOTE

All right, title and interest of First Ag Credit, FLCA (a wholly owned subsidiary of First Ag Credit, FCS) in the note in the original principal sum of $1,962,100.00 executed on November 9, 1994 is hereby assigned to the order of Rabo AgServices, Inc. without recourse and without any warranties of any kind, whether expressed or implied, except for warranty of title.

First Ag Credit, FLCA

BY: _Stacy Bradley_

Stacy Bradley, V.P. – General Counsel

All right, title and interest of the undersigned is hereby
assigned to the order of First Ag Credit, FCS without
course and without any warranties of any kind, whether
expressed or implied, except for warranty of title.

FARM CREDIT BANK OF TEXAS

By: _____

Kyle Pankonien, Vice President

EXHIBIT F

PROMISSORY NOTE

$ 1,037,900.00

LOAN NO. 090400

DATE 11/9/94

ASSN. Westex

BRANCH: Hereford

For value received, I, We, or any of Us, the undersigned, jointly and severally, promise to pay to the order of the FARM CREDIT BANK OF TEXAS, at its office in the city of Austin, Travis County, Texas, the principal sum of ONE MILLION THIRTY SEVEN THOUSAND NINE HUNDRED DOLLARS ($ 1,037,900.00 ), lawful money of the United States of America, according to the tenor, effect and reading hereof, with interest from the date the principal is advanced until paid at the rate or rates hereinafter provided. Interest will be calculated on the basis of a 30-day month and a 360-day year and will be accrued for the number of days that principal is outstanding.

Interest payable from time to time on the remaining unpaid principal balance prior to default or maturity, as follows:

☐ The regular or conventional rate of interest payable on this note shall be fixed at the rate of _____ percent per annum from the date of funding until paid.

☒ The initial rate of interest payable on this note shall be 7.50 percent per annum. At the option of the payee or other Farm Credit System Institution that becomes the holder of this note, the rate of interest may be either increased or decreased at any time and from time to time as authorized, but in no event to exceed the rate permitted by the Farm Credit Act of 1971, Public Law 92-181, as amended, and the regulations promulgated thereunder. If this note is transferred to the Federal Agricultural Mortgage Corporation, or to a holder that is not a Farm Credit System Institution, then this note shall bear interest at the lesser of (a) a fixed rate equal to the rate of interest applicable to this note on the date of transfer, or (b) a fixed rate that will result in an effective yield equal to the maximum lawful rate.

☐ The initial rate of interest payable on this note shall be _____ percent per annum and shall be applicable until _____. On that date and thereafter, unless the undersigned elect to convert the interest rate by choosing among option (a), (b), or (c) below, the interest rate and term thereof shall, at the option of the payee or other Farm Credit System Institution that becomes the holder of this note, be either increased or decreased at any time and from time to time as authorized, but in no event to exceed the rate permitted by the Farm Credit Act of 1971, Public Law 92-181, as amended, and the regulations promulgated thereunder. The interest rate and the period thereof may be redetermined by the holder when any fixed interest rate period expires, unless at the end of such fixed rate period the undersigned elect to convert to another interest rate by:

(a) converting to another fixed interest rate period, if such program is then available; or

(b) converting to a variable interest rate program, if applicable and if such program is then available; or

(c) converting to an adjustable interest rate loan program with interest determinable by application of a specified margin to a known interest rate index, if applicable and if such program is then available.

If the Bank must so redetermine the interest rate and term thereof because of my/our failure to select from the available interest rate options above, and if the previous interest rate plan contained a prepayment fee, and if permitted by state law, the Bank may select an interest rate plan and term which includes a prepayment fee.

However, in the event that upon expiration of a fixed interest rate period the time remaining until the final maturity date is less than any of the established interest rate period programs identified above and then available, the interest rate and term thereof will be determined by the holder.

Prior to the end of any fixed rate term established above, the undersigned will be notified of the date of expiration of the fixed rate term and advised that on said expiration date the loan shall be eligible for redetermination of the interest rate. In order to further accomplish a new pricing in accordance with the provisions herein, the undersigned must sign and provide any and all documents necessary to accomplish such repricing and return them to the holder prior to any deadline established in such notices. If this note is transferred to the Federal Agricultural Mortgage Corporation or to a holder that is not a Farm Credit System Institution, then this note shall bear interest at the lesser of (a) a fixed rate equal to the rate of interest applicable to this note on the date of transfer, or (b) a fixed rate that will result in an effective yield equal to the maximum lawful rate.

☐ The initial rate of interest payable on this note shall be _____ percent per annum. The interest rate will be adjusted on _____, and on that day every twelfth (12th) month thereafter (the "Change Date"). The adjustable interest rate of this note will be based on an "Index" which is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one (1) year, as made available by the Federal Reserve Board. If information on the Index is no longer available from the Federal Reserve Board, the holder may select another source for data. The Index figure available on the fifteenth (15th) day of the month preceding each Change Date is called the "Current Index." Effective on each Change Date and continuing for the next twelve (12) months thereafter, the applicable interest rate will be equal to the Current Index rate plus _____ percentage points, rounded up to the nearest multiple of five-one/hundredths of one percentage point (0.05%). If this note is transferred to a holder that is not a Farm Credit System Institution, then the adjustable interest rate shall never exceed a rate that will result in an effective yield greater than the maximum lawful rate. If this note is transferred to the Federal Agricultural Mortgage Corporation, then this note shall bear interest at a fixed rate equal to the rate of interest applicable to this note on the date of transfer.

☐ If this note includes a variable rate or an adjustable rate, the holder will notify the maker in writing of any changes in the rate of interest and the amount of any installment payment affected by the change in the rate of interest before the due date of such installment. The notice will include all information required by law to be given and will also include the name, title and telephone number of a person who will be able to answer any questions regarding the notice. The interest rate will never be greater than 21% per annum.

The indebtedness shall be payable in ELEVEN ( 11 ) Annual installments beginning on January 1, 1995 , and thereafter on the first day of JANUARY of each calendar year until the indebtedness, both principal and interest, is fully paid.

☒ Interest only payment(s) shall be payable on the first installment due date(s).

After the initial payment of interest only (if applicable), this note shall be payable:

☐ In successive equal installments of principal and interest in an amount sufficient to amortize the indebtedness over the term of the loan, the amount being subject to adjustment to reflect any increase or decrease in the interest rate, if applicable.

☒ In successive installments of principal in the amount of $103,790.00 plus accrued interest on the unpaid principal balance.

The undersigned hereby authorize the holder to apply any payment(s) made on this note or owed under the loan agreement or any instrument securing or related to this note (collectively, the "Loan Documents") to such part of the indebtedness as the holder may elect.

After default in the payment of any amount due under this note or in the performance of any obligation under this note or the Loan Documents, or upon the death of any of the undersigned, the holder of this note may, at its option, accelerate the maturity hereof and declare the entire unpaid principal balance and accrued interest to be due and payable. The holder's forbearance to exercise this option shall not constitute a waiver of the ... ... in the event of any subsequent default.

EXHIBIT

B

App. p. 33

of the unpaid balance of this note is not paid in full at maturity of this note, whether maturity occurs by lapse of time or by acceleration, the unpaid principal and past due interest shall bear interest at a default rate equal to the rate of interest applicable to this note on the date of maturity plus an additional four percent (4%) per annum. Prior to maturity of this note, any amount owing under this note which is not paid when due, and any advance made by the holder of this note pursuant to any of the Loan Documents, shall bear interest at a default rate equal to the rate in effect at the time repayment of such amount or advance is received by the holder of this note plus an additional four percent (4%) per annum. Any such interest or advance which is not paid prior to maturity shall bear interest at a default rate equal to the rate of interest applicable to the note on the date of maturity plus an additional four percent (4%) per annum from the date such amount is due or such advance is made, and such amount or advance plus accrued default interest thereon shall be added to the unpaid principal at maturity. Notwithstanding the foregoing, if the holder of this note is not a Farm Credit System Institution, then the default rate shall be limited so that it shall not exceed a rate that will result in an effective yield in excess of the maximum lawful rate.

If any amount owed under this note or the loan documents is not paid when due, the holder shall be entitled to collect default interest from the date(s) of default in an amount produced by applying the applicable default interest rate as set out above to the amount in default. If said default(s) is not cured within fifteen (15) days of the occurrence of such default(s), the holder shall be entitled to collect an additional default interest charge of $25.00.

If any amount due under this note shall be collected by legal proceedings or through a probate or bankruptcy court, whether or not the note is in default, or if this note is placed in the hands of an attorney (salaried, corporate or any other attorney) for collection after default or maturity or for enforcement of any of the holder's rights under this note or the Loan Documents, the undersigned agree to pay all costs incurred by the holder, including reasonable costs of attorneys (salaried, corporate or any other attorney) and other costs provided for in the Loan Documents.

The undersigned and each assumptor, surety, guarantor and endorser of this note or any part of this note, severally waive demand, presentment, notice of dishonor, notice of intent to accelerate maturity, notice of acceleration, diligence in collecting, grace, notice and notice of protest, and agree to one or more renewals, extensions and rearrangements of this note, for any period or periods of time and upon any terms and conditions, whether before or after default or maturity, without notice from or prejudice to the holder of this note. The holder of this note may, at its option, at any time and from time to time, release anyone liable to pay the indebtedness, or release all or any part of the collateral securing this note, and any such actions shall not release or impair the obligations of the undersigned under this note except as expressly agreed to in writing by the holder.

Unless provided otherwise by separate agreement between the undersigned and the payee, the principal balance of this note may be prepaid, in whole or in part, without penalty. Any amount so prepaid may be applied, at the holder's election, first to accrued interest on the amount of the tendered prepayment and the balance to the reduction of principal. Prepayment shall not defer the due date of any installment as provided above but may reduce or discharge one or more of the installments last maturing.

The holder of this note may, at the holder's discretion and as an accommodation to the undersigned, accept late or partial payment of any amount due under this note or any of the Loan Documents; however, acceptance of one or more late or partial payments shall not constitute a waiver of any default nor of the holder's right to receive timely payment. Acceptance of any partial payment after default and acceleration shall not constitute a reinstatement of the preacceleration payment schedule, nor shall it impair any of the holder's rights or remedies under this note or any of the Loan Documents.

Forbearance of the holder of this note to exercise any right or option granted in this note or in any of the Loan Documents, or to collect any money advanced under any of the Loan Documents, shall not constitute a waiver of the right to do so, nor render the holder of this note liable for damages or to account for money not collected, nor shall the exercise of such right or option constitute an election of remedies or prejudice any of the holder's other rights.

The holder of this note shall have the right to endorse, transfer or assign this note or any interest in this note to any person or entity, at any time and under any terms and conditions, in the holder's discretion.

Additional terms applicable to this note are contained in each addendum checked below and attached hereto, and all of such additional terms are incorporated herein by reference as if fully set forth in this note. In the event of any conflict between the terms of this note and the terms of any applicable addendum, the terms of such addendum shall control.

☒ "Addendum to the Promissory Note"

☐ "Prepayment Addendum"

☐

This note is further secured by a security interest on grain facilities set out in Security Agreement secured by Financing Statement filed for record in the Secretary of State's Office, and it is understood that where this note refers to deed of trust, the same in each instance shall refer to deed of trust and Security Agreement.

This is one in a series of two notes comprising a total debt in the original principal sum of $3,000,000.00 for the above captioned loan Number 452124.

ATTEST:

VEIGEL CATTLE COMPANY, AS GENERAL PARTNER OF TERRA XXI, LTD., A TEXAS LIMITED PARTNERSHIP

By: *Ella Marie Williams Veigel*                    By: *Robert Wayne Veigel*

Ella Marie Williams Veigel, Secretary

Robert Wayne Veigel

Signed in *Deaf Smith* County, *Texas*          Signed in *Deaf Smith* County, *Texas*

on the *10* day of *November*, 19 *94*          on the *10* day of *November*, 19 *94*.

*Ella Marie Williams Veigel*                    *Robert Wayne Veigel*

Ella Marie Williams Veigel                    Robert Wayne Veigel

Signed in *Deaf Smith* County, *TX*          Signed in *Deaf Smith* County, *Texas*

on the *10* day of *November*, 19 *94*          on the *10* day of *November*, 19 *94*

ATTEST:                                      VEIGEL FARMS, INC.

By: *Steve Veigel*                          By: *Robert Wayne Veigel*

Steve Veigel, Secretary                      Robert Wayne Veigel, President

Signed in *Deaf Smith* County, *TEXAS*          Signed in *Deaf Smith* County, *Texas*

on the *10* day of *November*, 19 *94*          on the *10* day of *November*, 19 *94*.

ATTEST:                                      VEIGEL CATTLE COMPANY

By: *Ella Marie Williams Veigel*                    By: *Robert Wayne Veigel*

Ella Marie Williams Veigel, Secretary          Robert Wayne Veigel, President

Signed in *Deaf Smith* County, *Texas*          Signed in *Deaf Smith* County, *Texas*

on the *10* day of *November*, 19 *94*          on the *10* day of *November*, 19 *94*

ADE Form 50 (5/94) WW/LT

App. p. 34

Loan No. 090400

# ADDENDUM TO THE PROMISSORY NOTE

This Addendum is incorporated into and is part of the Promissory Note dated _11/9_
19 _94_, in the original principal amount of $ _1,037,900.00_ , executed by the undersigned
and payable to the order of the Farm Credit Bank of Texas.

ATTEST:

By: _Ella Marie Williams Veigel_

Ella Marie Williams Veigel, Secretary

Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

ATTEST:

By: _N/A_

_____ Secretary

Signed in _____ County, _____
on the _____ day of _____, 19 ____.

ATTEST:

By: _N/A_

_____ Secretary

Signed in _____ County, _____
on the _____ day of _____, 19 ____.

ATTEST:

By: _N/A_

_____ Secretary

Signed in _____ County, _____
on the _____ day of _____, 19 ____.

ATTEST:

By: _N/A_

_____ Secretary

Signed in _____ County, _____
on the _____ day of _____, 19 ____.

VEIGEL CATTLE COMPANY, AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP

By: _Robert Wayne Veigel_

Robert Wayne Veigel, President

Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

BOB VEIGEL, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP

By: _Robert Wayne Veigel_

Robert Wayne Veigel, President

Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

STEVE VEIGEL, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP

By: _Steve Veigel_

Steve Veigel, President

Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

VEIGEL-KIRK, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP

By: _Steve Veigel_

Steve Veigel, Vice-President

Signed in _Deaf Smith_ County, _Texas_
on the _10_ day of _November_, 19 _94_.

VICKI VEIGEL, INC., AS PARTNER OF VEIGEL
FARM PARTNERS, A PARTNERSHIP

By: _Steve Veigel_

Steve Veigel, Vice-President

Signed in _Deaf Smith_ County, _TEXAS_
on the _10_ day of _November_, 19 _94_.

Form 61 (Rev. 3/94) WW/LT

All right, title and interest of the undersigned is hereby
assigned to the order of First Ag Credit, FCS without
course and without any warranties of any kind, whether
expressed or implied, except for warranty of title.

FARM CREDIT BANK OF TEXAS

By: _____

Kyle Pankonien, Vice President

## ALLONGE TO PROMISSORY NOTE

All right, title and interest of First Ag Credit, FLCA (a wholly owned subsidiary of First Ag Credit, FCS) in the note in the original principal sum of $1,037,900.00 executed on November 9, 1994 is hereby assigned to the order of Rabo AgServices, Inc. without recourse and without any warranties of any kind, whether expressed or implied, except for warranty of title.

First Ag Credit, FLCA

BY: *Stacy Bradley*

Stacy Bradley, V.P. – General Counsel

EXHIBIT G

STATE OF NEW MEXICO
COUNTY OF QUAY
IN THE TENTH JUDICIAL DISTRICT COURT

RABO AGRINFINANCE, INC.,
Successor in Interest to Farm Credit Bank of Texas,

     Plaintiff,

vs.                                   No. D-1010-CV-200700111
                                       Judge Hon. Drew D. Tatum

TERRA XXI, LTD., a Texas limited partnership,
Composed of Veigel Cattle Company,
as General Partner; et al.,

     Defendants.

## DEFENDANTS' MOTION FOR RELIEF OF JUDGMENT

COME NOW Defendants, by and through their attorney Garrett Law Firm, P.A.,

Michael T. Garrett, Esq., and pursuant to RULE 1-060(b)(5) NMRA request an order for

relief from prior orders of this Court granting Plaintiff's motion for summary judgment to

foreclose on the basis that Plaintiff's judgment debt has recently been satisfied and/or it is

no longer equitable the judgment debt should have prospective application, and as

grounds  therefore, state:

     1.      In November 1994, Terra XXI Ltd. obtained mortgage financing from the

Farm Credit Bank of Texas secured by a first lien deed of trust on 5,662.88 acres in Deaf

Smith County, Texas [1] and a first lien mortgages on Terra XXI Ltd.'s undivided interest

in Quay [2] and Guadalupe [3] Counties, New Mexico referencing each other and securing

---

[1]   See the Deaf Smith County Deed of Trust attached hereto as Exhibit 1.
[2]   See the Quay Mortgage attached hereto as Exhibit 2.
[3]   See the Guadalupe Mortgage attached hereto as Exhibit 3.

1

two promissory notes.[4] These instruments were subsequently modified in March 1999[5] and then assigned to First Ag Credit, FCS on February 1, 2000[6] which held the instruments when Terra XXI Ltd. filed Chapter 11 bankruptcy on September 1, 2000.

2.      Terra XXI Ltd.'s confirmed Chapter 11 plan of reorganization[7] ("XXI's Plan") was confirmed on January 11, 2002.  In a failed attempt to comply with §§ 3.04 and 8.07 of XXI's Plan, First Ag Credit, FCS's subsidiary First Ag Credit, FLBA submitted new loan and security documents for execution by letter dated January 8, 2002.[8]  The documents did not comply with the terms or specified form of XXI's Plan (and attempted to reaffirmed Veigel Farm Partners' liability on the debts which had been discharged by its confirmed Chapter 11 plan of reorganization) and as a result were never executed.  First Ag Credit, FLBA took no action to request further relief from the bankruptcy court.

3.      Subsequently upon default of XXI's Plan, First Ag Credit, FCS's subsidiary First Ag Credit, FLBA initially posted the 5,662.88 acres in Deaf Smith County for non-judicial foreclosure to be held on August 5, 2003, but subsequently entered into a forbearance agreement with Ag Services of America, Inc. (which held the second lien deed of trust to the property) to pull down the sale.[9]  First Ag Credit, FLBA then reposted the 5,662.88 acres in Deaf Smith County for non-judicial foreclosure to be

---

[4]   See the Promissory Note for $1,962,100 attached hereto as Exhibit 4 and the Promissory Note for $1,037,900 attached hereto as Exhibit 5.

[5]   See for example the modification agreements filed in Quay County for each note attached hereto as Exhibit 6 and 7 respectively.

[6]   See Exhibit B to Plaintiff's First Amended Complaint in this Case.

[7]   See XXI's Plan attached hereto as Exhibit 8 and order confirming XXI's Plan attached hereto as Exhibit 9.

[8]   See letter with documents attached hereto as Exhibit 10.

[9]   See Forbearance Agreement attaché hereto as Exhibit 11

2

held on September 2, 2003, [10] but again pulled down its sale when Ag Acceptance Corporation was the successfully bidder at its foreclosure sale on its third lien deed of trust also on September 2, 2003.

4.     Subsequently, First Ag Credit, FLBA assigned its notes and security instruments, but not expressly including First Ag Credits' rights and allowed secured claim under Terra XXI Ltd.'s confirmed Chapter 11 plan of organization, to Plaintiff's predecessor by merger Rabo AgServices, Inc. on February 13, 2004. [11]

5.     In May, 1998, Terra XXI Ltd. granted a second lien on all of its properties including a deed of trust on the same 5,662.88 acres in Deaf Smith County, Texas to Plaintiff's predecessor by merger Ag Services of America, Inc. (recorded as instrument 98-1253) expressly made subject to the prior deed of trust given to the Farm Credit Bank of Texas. [12] Ag Services of America, Inc. also posted its second lien deed of trust for non-judicial foreclosure set for September 2, 2003, [13] but similarly pulled its sale down when Ag Acceptance Corporation was the successfully bidder at its foreclosure sale on its third lien deed of trust also on September 2, 2003.

6.     In May, 1998, Terra XXI Ltd. also granted a third lien on all of its properties including a deed of trust on the same 5,662.88 acres in Deaf Smith County, Texas to Ag Acceptance Corporation (recorded as instrument 98-1254) expressly made subject to the prior deed of trust given to the Farm Credit Bank of Texas. [14] Ag Acceptance Corporation also posted its third lien deed of trust for non-judicial

---

[10]   See First Ag Credit, FLBA's second foreclosure notice attached hereto as Exhibit 12.
[11]   See Exhibit C-1 to Plaintiff's First Amended Complaint in this Case.
[12]   See Ag Services of America's second lien Deed of Trust No. 98-1253 attached hereto as Exhibit 13.
[13]   See Ag Services of America's foreclosure notice attached hereto as Exhibit 14.
[14]   See Ag Acceptance Corporation third lien Deed of Trust No. 98-1254 attached hereto as Exhibit 15.

3

foreclosure set for September 2, 2003 [15] Ag Acceptance Corporation acquired title to the 5,662.88 acres in Deaf Smith County with a credit bid of only $20,000 subject to the superior debts and encumbrances.[16]

7.    Subsequently, Plaintiff recovered deficiency judgments on the notes originally given to Ag Services of America, Inc. resulting from Ag Acceptance Corporation's foreclosure on the 5,662.88 acres which was abstracted in Deaf Smith County and was until recently secured by the second lien deed of trust No. 98-1253 originally given to Ag Services of America, Inc..[17] Plaintiff also recovered a judgment on the two promissory notes originally given to the Farm Credit Bank of Texas, which it seeks to collect in this Case, which was also abstracted in Deaf Smith County and was until recently secured by the first lien deed of trust originally given to the Farm Credit Bank of Texas.[18]

8.    Ag Acceptance Corporation, not Plaintiff or any of if predecessor by merger, continued as holder of record title to the 5,662.88 acres until is recent sale of the property subject to the debts secured by the first lien deed of trust originally given to the Farm Credit Bank of Texas and secured by the second lien deed of trust No. 98-1253 originally given Ag Services of America, Inc. now held by Plaintiff shown by title insurance policy and tax records.[19]

9.    Ag Acceptance Corporation has recently sold the 5,662.88 acres along with adjoining Section 59 and E/2 of Section 60 in which Plaintiff owns an undivided 25% interest and Ag Acceptance Corporation owns an undivided 75% interest (which

---

[15]  See Ag Acceptance Corporations foreclosure notice attached hereto as Exhibit 16..

[16]  See Substitute Trustees Deed to Ag Acceptance Corporation attached hereto as Exhibit 17.

[17]  See Exhibits 18 - 21 attached hereto.

[18]  See Exhibits 22 – 23 attached hereto.

[19]  See Exhibits 24 – 25 attached hereto.

4

was never encumbered by any deed of trust) in Deaf Smith County to Champion Feeders, LLC free and clear of Plaintiff's first and second lien deeds of trust and abstracted judgments for at least $5,960,000 borrowed from Great Plains Ag Credit and paid to Plaintiff as partial payment.[20]

10.     On information and belief, Defendants believe the total consideration paid by Champion Feeders is approximately $2,000 per acre or $11,325,760 for just the 5,662.88 acres. Such amount is almost 2.5 times more that the amount of the estimated judgment debt of $4.7 million Plaintiff is seeking to collect by foreclosing on the Property at issue in this Case. However, not only as Plaintiff not shown what the current amount of the judgment debt it is seeking to collect in this Case, but Plaintiff continues to refuse to disclose the total consideration it received from Champion Feeders LLC, has not given any credit on the judgments, and has asserted to this Court that no credit from the proceeds should be given because in was Plaintiff instead of Ag Acceptance Corporation who owned the 5,662.88 acres free and clear of Plaintiff's lien.

11.     However, Plaintiff is judicially estopped and barred by *res judicata* from denying that Ag Acceptance Corporation consideration paid for the 5,662.88 acres includes Ag Acceptance Corporations implied or "virtual assumption" of the debts secured by the superior liens on the 5,662.88 including the judgment debt at issue in this Case. For example, Plaintiff and Ag Acceptance Corporation filed a motion for summary judgment in Cause No. CI-04B-011 in the 222nd District Court in Texas citing *Graham & Locke Investments, Inc. v. Madison,* 295 S.W.2d 234 (Tex.Civ.App.-Dallas 1956) for support,[21] which together with trial testimony of Plaintiff's representative,[22] resulted in

---

[20]   See Exhibits 26 – 28 attached hereto.
[21]   See Exhibit 29 at page 13attached hereto.

summary judgment that Ag Acceptance Corporation's foreclosure consideration included the implicit or "virtual" assumption of the superior debts including judgment debt at issue in this Case.[23]

12.     When Ag Acceptance Corporation foreclosed on the 5,662.88 acres for $20,000 plus the implicit or "virtual" assumption of the superior secured debts including the judgment debt at issue in this Case, not only did the 5,662.88 acres remain principally liable for the debts with Terra XXI Ltd. becoming a surety to the land, [24] but under *Graham & Locke* it also became personally liable.  See Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* (5th ed. 2007) *"... it may be implied from the transaction of the parties, or it may be shown by circumstances under which the purchase was made, as well as by the language used in the agreement.  If it is not written, however, it must be established by clear and unequivocal proof." id.* 277; and *"Alternatively, it may contain a statement that the conveyance is "subject to" the mortgage. In such cases an assumption of the mortgage can be established only by reference to evidence extrinsic to the deed. That evidence may consist of either a separate written or oral express agreement, or it may consist of the circumstances accompanying the transaction, the most important of which is the amount paid by the grantee for the property." id.* 279-280.

13.     In any event, as if there had been surplus funds from Plaintiff's foreclosure of its first lien deed of trust on the 5,662.88 acres, the first proceeds are paid

---

[22]  See Exhibit 30 attached hereto.

[23]  See Exhibit 31 at pages 6 – 7 attached hereto.

[24]  See 55 Am. Jur. 2d Mortgages § 1021 "When a conveyance subject to an existing mortgage is made, a principal-and-surety relationship is deemed to arise between the land and the seller/mortgagor, with the mortgagor being surety and the land itself taking on the characteristic of principal debtor.  When a seller/mortgagor of land is deemed surety due to a sale subject to an existing mortgage, the seller is entitled to all protection which law gives to sureties"; and 5 Tiffany Real Prop. § 1435 (1939).

6

to satisfy the first lien debts, proceeds are next used to satisfy inferior liens in order of priority with any remaining balance paid to the holder of the equity of redemption.

14. In this Case, it is now apparent that Plaintiff has received at least $5,960,000 from the sale of the 5,662.88 acres to Champion Feeders LLC which far exceeds the amount currently owing on the judgment debt that Plaintiff seeks to foreclose. As such, under Rule 1-060(b)(5) NMRA, Defendants are entitle to an order that Plaintiff's judgment debt has been satisfied and thus Plaintiff is not entitled to foreclosure as has been previously award by this Court prior to the sale of the 5,662.88 acres to Champion.

WHEREFORE, Defendants request the Court enter an order granting Defendants relief from the Court's prior summary judgments pursuant to Rule 1-060(b)(5) and deny Plaintiff's request for a Special Master to be appoint to sale the Property at issue in this Case. Alternatively, Defendants request the Court stay any order appointing such Special Master until such time Plaintiff can show there is an amount still owing on its judgment debt secured by its mortgage on the Property after the sale of the 5,662.88 acres free and clear of Plaintiff's first lien and payment of proceeds to Plaintiff and for such other and further relief as the Court deems just and proper.

GARRETT LAW FIRM, P.A.

CERTI___ ___RVICE.
I hereby c___ ___ have
(Mailed)(Delivered)(Faxed) a copy
of the foregoing pleading to
opposing counsel of record

this 5th day of Feb 20 13

Michael P. Garrett, Esq.
NMBA 922 CAID 66/047
Attorney for Defendants
920 North Main Street
Clovis, New Mexico 88101-5931
(575) 762-4545 FAX (575) 762-7663

7

EXHIBIT H

336 P.3d 972
Court of Appeals of New Mexico.

RABO AGRIFINANCE, INC., Successor in Interest
to Farm Credit Bank of Texas, Plaintiff–Appellee,
v.
TERRA XXI, LTD., a Texas Limited Partnership,
composed of Veigel Cattle Company, as General
Partner; Robert Wayne Veigel, a/k/a Bob W.
Veigel; Ella Marie Williams Vogel, a/k/a Ella
Marie Veigel; Veigel Cattle Company, a Texas
corporation; Veigel Farm Partners, a Texas general
partnership d/b/a Veigel Partners; Bob Veigel, Inc.,
a Texas corporation; Steve Veigel, Inc., a Texas
corporation; Veigel–Kirk, Inc., a Texas corporation;
Vicki Veigel, Inc., a Texas corporation; Veigel
Farms, Inc., a Texas corporation; Terra Partners, a
Texas general partnership; Burnett & Veigel, Inc.,
a Texas corporation, as general partner of Terra
Partnership, a Texas general partnership; and, All
Unknown Claimants of Interest in the Premises
Adverse to the Plaintiff, Defendants–Appellants.

No. 32,697.   |   June 25, 2014.   |
Certiorari Denied, Oct. 8, 2014, No. 34,891.

**Synopsis**

**Background:** Mortgagee brought foreclosure action seeking
to confirm Texas judgment in the amount of $3,958.577.97,
less a $200,000 credit, and foreclosure of the mortgage
covering the property, and mortgagor counterclaimed for
failure to act in good faith, prima facie tort, mortgages
extinguished, civil conspiracy, and quiet title and foreclosure.
The District Court, Quay County, Drew D. Tatum, D.J.,
granted summary judgment confirming the judgment amount,
and in favor of mortgagee on its first mortgage lien interest
as to an undivided 50% interest in the subject property,
and dismissed mortgagor's counterclaims. Mortgagee and
mortgagor cross-appealed, and the Court of Appeals, 274
P.3d 127, affirmed in part, reversed in part, and remanded.
On remand, the District Court, Quay County, Drew D.
Tatum, D.J., granted mortgagee summary judgment and
subsequently denied mortgagor's motion for relief from
judgment. Mortgagor appealed.

**[Holding:]** The Court of Appeals, Fry, J., held that pursuant
to the after-acquired title doctrine mortgagor's subsequently
acquired 100 percent interest in the property inured to the
benefit of mortgagee.

Affirmed.

West Headnotes (7)

**[1]** **Estoppel**
        👉 Estoppel as to title subsequently acquired in
        general

The common law doctrine of "after-acquired
title" is one under which title to land
subsequently acquired by a grantor who
previously attempted to convey title to the same
land, which he then did not own, completely and
automatically inures to the benefit of his prior
grantee.

Cases that cite this headnote

**[2]** **Estoppel**
        👉 Estoppel as to title subsequently acquired in
        general

Application of the after-acquired title doctrine is
limited by the extent of the grantor's conveyance.

Cases that cite this headnote

**[3]** **Estoppel**
        👉 Estoppel as to title subsequently acquired in
        general

A grantor who executes a deed purporting to
convey land to which he has no title or to
which he has a defective title at the time of
the conveyance will not be permitted, when he
afterward acquires good title to the land, to claim
in opposition to his deed as against the grantee.

Cases that cite this headnote

**[4]** **Mortgages**
        👉 After-acquired property or title

Mortgagor's grant of the mortgage "with mortgage covenants" purported to convey a 100 percent interest in the property to mortgagee, even though mortgagor only held a 50 percent interest in the property at the time of the mortgage, and thus, pursuant to the after-acquired title doctrine mortgagor's subsequently acquired 100 percent interest in the property inured to the benefit of mortgagee.

Cases that cite this headnote

**[5]    Deeds**
       👉 **Quitclaim**

An essential characteristic of a quitclaim deed is that it contains no warranties or covenants by the grantor.

Cases that cite this headnote

**[6]    Appeal and Error**
       👉 **Vacating Judgment or Order**

Appellate court generally reviews the trial court's ruling on a motion for relief from judgment based on satisfaction of the judgment for an abuse of discretion except where the issue is one of pure law. NMRA, Rule 1–060(B)(5).

Cases that cite this headnote

**[7]    Mortgages**
       👉 **Presentation and reservation in lower court of grounds of review**

Mortgagor did not preserve on appeal its claim that primary fund doctrine required that foreclosure judgment be satisfied first from Texas property, where mortgagor did not raise the argument in its motion for relief from judgment. NMRA, Rule 1–060(B)(5).

1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*973**  Rowley Law Firm, L.L.C., Richard F. Rowley, II, Richard F. Rowley, III, Clovis, NM, for Appellee.

Keleher & McLeod, P.A., Thomas C. Bird, James L. Rasmussen, Justin B. Breen, Albuquerque, NM, for Appellants.

**OPINION**

FRY, Judge.

{1} Defendants, collectively referred to as Terra throughout this Opinion, appeal the district court's orders granting summary judgment in favor of Plaintiff [1] in a mortgage foreclosure proceeding and denying their motion under Rule 1–060(B)(5) NMRA for relief from the judgment. Terra argues that the district court erred in applying the after-acquired title doctrine and in denying their post-judgment motion under Rule 1–060(B)(5), arguing that the judgment has been satisfied. Because we disagree with Terra, we affirm.

**BACKGROUND**

**[1]    {2}** This is the second time this case has been before this Court, and we reiterate the basic facts underlying this suit from the first opinion. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 2012–NMCA–038, 274 P.3d 127. Plaintiff is the holder of two promissory notes secured by a mortgage covering property located in Quay and Guadalupe Counties, New Mexico (the New Mexico property) and a deed of trust covering land in Deaf Smith County, Texas. *Id.* ¶ 2. At the time Terra granted the mortgage, it owned an undivided fifty percent interest in the New Mexico property. *Id.* Five years later, Terra received a warranty deed to the New Mexico property that effectively gave it a 100 percent ownership interest in the property. *Id.* In 2005, Plaintiff successfully sued in federal court to collect on the amounts due on the promissory notes. *Id.* ¶ 3. Plaintiff subsequently brought suit in New Mexico to confirm the judgment entered against Terra and sought to foreclose the mortgage on the New Mexico property to the full extent of Terra's 100 percent interest on the basis of the after-acquired title doctrine. *Id.* ¶ 4. "The common law doctrine of after-acquired title is one under which title to land subsequently acquired by a grantor who previously attempted to convey title to the same land, which he then did not own, completely and automatically inures to the benefit of his prior grantee." *Hays v. King,* 1989–NMSC–078, ¶ 8, 109 N.M. 202, 784 P.2d 21.

{3} In the first appeal, we reversed the district court's ruling in favor of Terra that the doctrine of after-acquired title

did not apply in this case. We held that "as a general matter, the after-acquired title doctrine can be applied in New Mexico in favor of a mortgagee of property based on mortgage covenants unless particular circumstances warrant non-application." *Rabo Agrifinance, Inc.,* 2012–NMCA–038, ¶ 18, 274 P.3d 127. Because the mortgage purported to convey Terra's interest in the New Mexico property "with mortgage covenants," *id.* ¶ 7 (internal quotation marks omitted), we remanded to the district court for further proceedings regarding the application of the after-acquired title doctrine to the facts of this case. *Id.* ¶ 18.

**\*974** {4} On remand, the district court applied the after-acquired title doctrine and concluded that because Terra granted the mortgage at issue "with mortgage covenants," it is estopped from claiming that the mortgage did not attach to the entire property when Terra subsequently obtained a 100 percent interest. Because Terra was estopped to claim that the mortgage did not attach to the entire New Mexico property, the district court granted summary judgment in favor of Plaintiff.

{5} Following the entry of summary judgment, Terra sought to conduct further discovery on the issue of whether land in Texas that was also used to secure the mortgage had been sold, and, if so, whether the proceeds of the alleged sale satisfied the judgment. Terra ultimately filed a motion for relief from the judgment under Rule 1–060(B)(5), arguing that the judgment had indeed been satisfied because Plaintiff allegedly received sufficient funds in the sale of the Texas property to satisfy its judgment against Terra. The district court denied Terra's motion, and Terra now appeals.

## DISCUSSION

### I. After–Acquired Title Doctrine

{6} In arguing that the district court erred in applying the after-acquired title doctrine, Terra makes three main contentions. Terra argues that (1) the after-acquired title doctrine is limited by the extent of the grantor's conveyance, (2) the mortgage covenants did not expand the interest Terra purported to convey, and (3) the district court mistakenly focused on Plaintiff's intent in its application of the after-acquired title doctrine. We address these contentions in two parts. First, we group Terra's first two arguments into the basic determination of what Terra purported to convey in the mortgage. Second, we determine whether the district court improperly considered the Plaintiff's intent in applying the doctrine.

### A. Terra Purported to Convey a 100 Percent Interest in the Property

**[2]** **[3]** {7} As a general matter, we take no issue with Terra's argument that application of the after-acquired title doctrine is limited by the extent of the grantor's conveyance. As noted above, the doctrine "estops a grantor who obtains title to land after already granting the land from claiming the land as against the grantee." *Rendleman v. Heinley,* 2007–NMCA–009, ¶ 3, 140 N.M. 912, 149 P.3d 1009. "A grantor who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of the conveyance will not be permitted, when he afterward acquires good title to the land, to claim in opposition to his deed as against the grantee [.]" *Hays,* 1989–NMSC–078, ¶ 9, 109 N.M. 202, 784 P.2d 21 (internal quotation marks and citation omitted). Terra's argument is therefore correct to the extent that if it did not purport to convey a 100 percent interest in the property, the after-acquired title doctrine could not benefit Plaintiff. *See Rendleman,* 2007–NMCA–009, ¶ 18, 140 N.M. 912, 149 P.3d 1009 (explaining that the after-acquired title doctrine did not apply in another case "because there had been no attempt by the grantor to convey the property in question to one of the parties"). Thus, the threshold issue before us is what Terra purported to convey in the mortgage documents. We review this issue de novo. *Id.* ¶ 14 ("Whether the doctrine of after-acquired title applies is a question of law, which we review de novo.").

**[4]** {8} Terra argues that it did not purport to convey a 100 percent interest in the property because it only purported to convey its "interest in and to" the New Mexico property in the mortgage. Terra likens this language to a quitclaim deed, to which the after-acquired title doctrine is likely inapplicable. *See Hays,* 1989–NMSC–078, ¶ 5, 109 N.M. 202, 784 P.2d 21 ("[The plaintiff cites] as authority ... cases supporting the propositions that a quitclaim deed vests only the title held by the grantor at the time of the conveyance, and that the after-acquired title doctrine does not apply to one claiming title under a quitclaim deed.... [W]e have no quarrel with the substance of these cited authorities[.]"). Terra further argues that language in the mortgage stating that Terra granted, mortgaged, and conveyed its interest in and to the New Mexico property "with mortgage covenants" does not operate to enlarge **\*975** the interest purportedly conveyed by the mortgage. For the reasons stated below, we conclude that the grant of the mortgage "with mortgage covenants" purported to convey a 100 percent interest in the property and that

the district court therefore properly applied the after-acquired title doctrine.

**[5]** {9} As an initial matter, we reject Defendants' invitation to view language in the mortgage as analogous to a quitclaim deed so as to preclude application of the after-acquired title doctrine. "[A]n essential characteristic of a quitclaim deed is that it contains no warranties or covenants by the grantor." *R & R Land Dev., L.L.C. v. Am. Freightways, Inc.,* 389 S.W.3d 234, 242 (Mo.Ct.App.2012); *see* 23 Am.Jur.2d *Deeds* § 10 (2014). The mortgage in this case was explicitly granted "with mortgage covenants" as well as with a litany of further "representations, warranties, and covenants." We thus conclude that any similarity between the "my interest in and to" language in this mortgage and language often found in quitclaim deeds ends at a purely semantic level.

{10} Furthermore, the phrase "mortgage covenants" has a specific, statutorily defined meaning in New Mexico. NMSA 1978, Section 47–1–40 (1947) states that the use of "mortgage covenants" in a mortgage is construed to mean that "the mortgagor ... covenants with the mortgagee ... that he is lawfully seized in fee simple *of the granted premises;* that they are free from all encumbrances; that the mortgagor has good right to sell and convey the same; and that he will ... warrant and defend the same to the mortgagee ... forever against the lawful claims and demands of all persons." (emphasis added) (internal quotation marks omitted). We therefore construe "with mortgage covenants" as covenanting the entirety of the premises listed in the mortgage. We do not deny that this presumption can be overcome by an express statement to the contrary; however, we find no such language in the mortgage at issue. In particular, the mortgage makes no mention that the granted premises are limited to a fifty percent interest, and we would be required to read such language into the mortgage to determine that the statement "my interest in and to" referred to only a fifty percent interest. *Cf. Sharpe v. Smith,* 1961–NMSC–038, ¶ 18, 68 N.M. 253, 360 P.2d 917 ("It is the intent which is expressed in the deed and not a secret intention of the party ... existing at the time of execution that is controlling." (internal quotation marks omitted)).

{11} Thus, when we construe the language "with mortgage covenants" in accordance with Section 47–1–40, the mortgage purports to convey the entirety of the granted premises—the property listed in the mortgage—and not only the fifty percent interest Terra possessed at the time it executed the mortgage. This is not an "expansion"

of the interest Terra conveyed, as Terra argues. Instead, when construed in accordance with Section 47–1–40, "with mortgage covenants" clarifies what "interest in and to" the property Terra purported to convey: fee simple absolute. This Court's opinion in the first appeal concluded as much in the general sense, and we see no reason to fully reiterate this Court's analysis on this point. *Rabo Agrifinance, Inc., 2012–NMCA–038, ¶ 12, 274 P.3d 127* (stating that it is well settled that when one purports to convey land in fee simple through a mortgage, any title to the property acquired afterwards will inure to the benefit of the mortgagee). In sum, because Terra purported to convey the entire property listed in the mortgage, the district court properly applied the after-acquired doctrine to conclude that the subsequently acquired fifty percent interest inured to the benefit of Plaintiff. [2]

## B. The District Court Did Not Rely on the Grantee's Intent

{12} Terra also argues that the district court inappropriately focused on the intent of the grantee—Plaintiff—in applying the after-acquired title doctrine. While we are uncertain **\*976** which portion of the district court's decision evinces a reliance on Plaintiff's intent since Terra does not provide citation to the record to support this assertion, we assume that the basis of Terra's contention is the district court's statement in its decision letter that Plaintiff "believed the mortgage to cover 100 [percent] of the real property at issue herein, but [Terra] only owned an undivided 50 [percent] interest in the real property." Our reading of the district court's decision on the after-acquired title doctrine issue, however, does not show any reliance by the district court on Plaintiff's intent. Similar to what we concluded above, the district court determined that Terra "granted the mortgage 'with mortgage covenants' [and is] now estopped by the after-acquired title doctrine from claiming the mortgage did not attach to the entire real property at the time [Terra] obtained [a 100 percent interest] in the real property."

## II. Rule 1–060(B)(5)

**[6]** {13} Terra argues that the district court erred in denying its motion under Rule 1–060(B)(5) that the judgment in this case has been satisfied. Rule 1–060(B)(5) provides that "the court may relieve a party or his legal representative from a final judgment ... [when] the judgment has been satisfied, released, or discharged[.]" "We generally review the trial court's ruling under Rule 1–060(B) [ (5) ] for an abuse of discretion except ... where the issue is one of pure law." *Edens*

*v. Edens,* 2005–NMCA–033, ¶ 13, 137 N.M. 207, 109 P.3d 295 (internal quotation marks and citation omitted).

{14} We briefly set out a simplified version of the alleged facts pertinent to Terra's argument. In addition to securing the underlying notes in this case with the mortgage covering the New Mexico property, Terra also secured the notes with a deed of trust covering a large portion of land in Texas. Terra subsequently granted second and third lien interests on the properties. Following default and non-judicial foreclosure of the Texas property, Ag Acceptance Corporation (AAC), the third lienholder and entity seeking foreclosure, was the successful bidder and took the Texas property subject to Plaintiff's first and second liens. Terra alleges that AAC then sold the Texas property to Champion Feeders, LLC some ten years later, free and clear of Plaintiff's first and second liens and the related judgment lien. Terra argues that any payment Plaintiff received from AAC to release its liens on the property should have been credited against the judgment.

{15} Terra raises two points. Terra first argues that the debt and judgment in the present case has been satisfied by "necessary implication" as a result of the conveyance of the Texas property free and clear of Plaintiff's liens. Second, Terra argues that if Plaintiff denies receiving compensation for the release of its liens on the Texas property, the primary fund doctrine requires that the judgment be satisfied first from the Texas property, not the New Mexico property.

{16} Terra cites no authority to support its first argument —that monies paid by a successful bidder in a foreclosure sale to a senior lienholder in order to extinguish the senior lienholder's liens should be credited toward the judgment debtor's debt. Instead, Terra cites NMSA 1978, § 48–7–4(A) (1991), which states that "[w]hen any debt ... secured by a mortgage or deed of trust upon any real estate in the state has been fully satisfied, it is the duty of the mortgagee ... to cause the full satisfaction of it to be entered of record in the office of the county clerk." We fail to see how this statute supports Terra's assertion. If Terra had satisfied its debt to Plaintiff then Plaintiff would have a duty to record it in the office of the county clerk. *See* § 48–7–4(A). That is not what happened here. Terra defaulted on its obligations,

and the property securing such obligations was foreclosed on. Therefore, because Terra cites no authority to support its proposition, we conclude that the district court did not abuse its discretion in denying the Rule 1–60(B)(5) motion on this point. *In re Adoption of Doe,* 1984–NMSC–024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument, we may assume no such authority exists).

[7] {17} As for Terra's argument regarding the primary fund doctrine, we decline to review this contention because Terra did not **\*977** preserve the error below. Terra acknowledges that it did not refer to the primary fund doctrine in its Rule 1– 060(B)(5) motion, nor did it cite to the case it primarily relies on to support its argument. However, Terra contends that its argument below embodies the principles of the primary fund doctrine and that therefore the issue was preserved. We disagree. We will not conclude that the district court abused its discretion in failing to apply a doctrine of law when that doctrine was not presented to the district court. *See Woolwow v. Furr's, Inc.,* 1987–NMCA–133, ¶ 20, 106 N.M. 492, 745 P.2d 717 (stating that to preserve an issue for review on appeal, it must appear that the plaintiff fairly invoked a ruling on the same grounds argued in the appellate court). Accordingly, we conclude that the district court did not abuse its discretion in denying Terra's motion under Rule 1–060(B) (5).

**CONCLUSION**

{18} For the foregoing reasons, we affirm the district court's grant of summary judgment and its denial of Terra's Rule 1– 060(B)(5) motion.

{19} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.

**All Citations**

336 P.3d 972, 2014 -NMCA- 106

---

Footnotes

1   In this Opinion, the term "Plaintiff" includes Rabo Agrifinance, Inc. and its predecessor in interest, Farm Credit Bank of Texas.

2   Terra requested that if this Court affirms the judgment, the judgment be modified to exclude the "Snipes Property," which was excluded from the judgment in the first appeal but was not excluded from the judgment we are reviewing in the

present appeal. We believe such a determination—whether the property was inadvertently included in the judgment—is best handled by the district court on remand.

---

**End of Document**                                            © 2015 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT I

STATE OF NEW MEXICO
COUNTY OF QUAY
TENTH JUDICIAL DISTRICT

RABO AGRIFINANCE, INC.,
SUCCESSOR IN INTEREST TO THE
FARM CREDIT BANK OF TEXAS,
      Plaintiffs,

v.
                                 No. D-1010-CV-2007-00111
                                 Judge Drew Douglas Tatum

TERRA XXI, LTD., a Texas Limited Partnership, composed of
Veigel Cattle Company, as General Partner;
ROBERT WAYNE VEIGEL a/k/a BOB W. VEIGEL;
ELLA MARIE WILLIAMS VOGEL a/k/a ELLA MARIE VEIGEL;
VEIGEL CATTLE COMPANY, a Texas Corporation;
VEIGEL FARM PARTNERS, a Texas General Partnership d/b/a Veigel Partners;
BOB VEIGEL, INC., a Texas Corporation;
STEVE VEIGEL, INC., a Texas Corporation;
VEIGEL - KIRK, INC., a Texas Corporation;
VICKI VEIGEL, INC., a Texas Corporation;
VEIGEL FARMS, INC., a Texas Corporation;
TERRA PARTNERS, a Texas General Partnership;
BURNETT & VEIGEL, INC., a Texas Corporation, as General Partner of Terra
Partnership, a Texas General Partnership;
and ALL UNKNOWN CLAIMANTS OF INTEREST IN THE
PREMISES ADVERSE TO THE PLAINTIFF
      Defendants.

## MOTION FOR RULE 1-060(B) RELIEF AND REQUEST
## FOR STAY OF FORECLOSURE SALE

Defendants, by and through their attorneys Keleher & McLeod, P.A. (Jeffrey Dahl and Justin

Breen) hereby provide their Motion For Rule 1-060(B) Relief And Request For Stay Of

Foreclosure Sale, and in support thereof state:

<u>Introduction</u>

1.     In this proceeding, Plaintiff Rabo Agrifinance, Inc. ("Rabo") seeks to confirm a Judgment (as defined below) and, after confirmation, to foreclose mortgages on New Mexico properties to enforce the Judgment. This Court entered an Order Granting In Part And Denying In Part Plaintiff's Motion For Summary Judgment, to that effect, on February 1, 2010. That order was appealed and, after remand, the Court entered a second Order Granting Plaintiff's Motion For Summary Judgment on January 7, 2013.

2.     The Defendants unsuccessfully appealed the January 7, 2013 order and the case was remanded to this Court for further proceedings on February 4, 2015.

3.     Pursuant to Rule 1-060(B)(5) and (6) NMRA, the purpose of this Motion is to set aside the Judgment and the two orders referenced above because the Judgment has been satisfied, or should be deemed to have been satisfied, and because it is no longer equitable that the Judgment should have prospective application.

4.     Defendants are also requesting that any foreclosure sale in this matter be stayed, pursuant to Rule 1-062(B), pending resolution of this Motion and the Petition (as defined below).

<u>Facts Underlying Request For Rule 1-060(B) Relief</u>

I.     *The obligations underlying the Judgment*

5.     On November 10, 1994, Defendants Terra XXI, Ltd., Robert Wayne Veigel, Ella Marie Williams Veigel, Veigel Farms, Inc., Veigel Cattle Company, and Veigel Farm Partners

executed and delivered to Farm Credit Bank of Texas ("FCBT") the promissory notes at issue in this proceeding ("1994 Notes")[1].

6.  The 1994 Notes and the First Position (as defined below) ultimately came to be held by Rabo, by assignment and merger.

7.  The 1994 Notes were secured by a first position lien ("First Position") on 5,662.88 acres located in Deaf Smith County, Texas ("Texas Property") in addition to certain New Mexico properties.

8.  Rabo obtained an *in personam* judgment on the 1994 Notes in Texas federal court on December 12, 2006 and domesticated the federal judgment in New Mexico on January 18, 2006 ("Judgment").

9.  In this case, Rabo successfully sought to have the Judgment confirmed (less only a $200,000 credit for the execution sale on certain of Robert Wayne Veigel's real property) and seeks to foreclose Rabo's mortgages on the New Mexico properties at issue to satisfy the Judgment.

II.  *Ag Acceptance Corporation's purchase of Texas Property subject to Rabo's superior secured debts*

10.  For sums advanced by AgServices of America, Inc. ("AgServices"), certain of the Defendants executed and delivered a series of promissory notes to AgServices between 1997 and 1999 which AgServices assigned to Ag Acceptance Corporation ("AAC"). The notes referred to in this paragraph are hereafter referred to as the "AAC Notes."

---

[1] The 1994 Notes were signed on November 10, 1994, but dated November 9, 1994.

11.    To secure the AAC Notes and future debts, on May 22, 1998, Defendant Terra XXI executed a third lien deed of trust in favor of AAC on the Texas Property ("Third Position").

12.    AAC's Third Position on the Texas Property was junior to at least two other liens. Two of the liens senior to AAC's position, in their order of priority, were held at the time by:

        a.    Farm Credit Bank of Texas (the First Position, as detailed above); and

        b.    AgServices[2] (referred to as "Second Position" herein).

13.    The AAC Notes went into default in 2003.

14.    On September 2, 2003, as a result of that default, AAC foreclosed on its Third Position deed of trust and purchased the Texas Property at a non-judicial foreclosure sale.

15.    AAC purchased the Texas Property subject to the senior First Position and Second Position held, at the time, by FCBT and AgServices, respectively.

16.    AAC bid only $20,000 at the non-judicial foreclosure sale on the Texas Property.

17.    AAC purchased the Texas Property for $20,000 because of the then approximately $3.5 million debt secured by senior liens to which the Texas Property was subject.

18.    AAC is a wholly owned subsidiary of Rabo.

---

[2] The Defendants' obligation to AgServices ultimately came to be held by Rabo based on the following events:  AgServices merged with Utrecht-America Acquisition Corp II, effective December 31, 2003; AgServices' name was changed to Rabo Ag Services, Inc. on January 1, 2004; and Rabo Ag Services, Inc. merged into Rabo effective December 31, 2005.

*III.*     *Sale of Texas Property to Champion Feeders, LLC and Rabo's stated intent to use said funds to satisfy the Judgment*

19.     On March 28, 2006, Attorney Linda Kobliska (at the time Deputy General Counsel for AAC and Rabo) represented in a letter to the United States Department of Agriculture that it was AAC's and Rabo's intent ". . . to sell the [Texas Property] and use the proceeds to satisfy [Defendants'] obligations to our company." **[Exhibit A** attached hereto.]

20.     AAC still owned the Texas Property, subject to Rabo's First Position and the Second Position, until November 15, 2012 – shortly after this Court's November 13, 2012 Decision Letter granting Rabo summary judgment.

21.     Effective November 15, 2012, AAC and Rabo executed and delivered a Special Warranty Deed to Champion Feeders, LLC ("Champion") conveying all of the Texas Property among other property.[3] Said Special Warranty Deed was recorded on November 15, 2012 in the records of Deaf Smith County. **[Exhibit B** attached hereto.]

22.     For Champion to purchase the Texas Property free and clear of the First Position and Second Position, Rabo released the First Position and Second Position by Releases Of Deed Of Trust recorded November 15, 2012. **[Exhibit C** attached hereto.]

23.     Upon information and belief, AAC received at least $6,154,660 from Champion for the sale of the Texas Property. **[Exhibit D** attached hereto.] It is unknown at this time how much, if any, Rabo received from those proceeds.

24.     The amount paid by Champion to AAC was sufficient to satisfy in full the Judgment also secured by the First Position.

---

[3] In that deed, Rabo and AAC also conveyed other property they had obtained.

25.     Although Rabo and AAC represented that they would apply the proceeds of any sale of the Texas Property to satisfy Defendants' obligations, upon information and belief, AAC and/or Rabo have failed to apply any of the at least $6,154,660 consideration paid by Champion for the Texas Property to the Judgment.

26.     Instead, and upon information and belief, Rabo has either elected to permit its subsidiary (AAC) to retain the entirety of the sale proceeds or has received proceeds in consideration for releasing the First Position and Second Position without crediting the Judgment while Rabo yet pursues the equitable remedy of foreclosure to enforce the Judgment in this proceeding.

*IV.     Petition against AAC*

27.     On November 14, 2014, Defendants Terra Partners, Terra XXI, Ltd., Robert Wayne Veigel, Ella Marie Williams Veigel, Veigel Farms, Inc., Veigel Cattle Company, and Veigel Farm Partners (referred to herein as "Petitioners"), filed a Petition For Accounting, Claim For Unjust Enrichment, Imposition Of Constructive Trust, And Request For Declaratory Relief against AAC ("Petition"). The Petitioners filed the Petition in this district, Case No. D-1010-CV-2014-00079. Rabo is not a party to the proceeding on the Petition.

28.     AAC removed the Petition to New Mexico Federal Court on December 8, 2014[4].

29.     In the Petition, Petitioners requested, in part, that the court order AAC to provide an accounting concerning the handling of the consideration received from the sale to Champion as well as additional funds paid from the Texas court's registry to Rabo and AAC on

---

[4] AAC has now moved to transfer the Petition to the Federal District Court, in the Northern District of Texas.

November 16, 2012; that the Court enter a judgment in favor of Petitioners in the amount of any sums unjustly retained by AAC – which should have been applied to satisfy the Judgment – as a result of the sale to Champion; and that the Court enter a judgment imposing a constructive trust as to those funds so that they could be properly applied to satisfy the Judgment.

<u>Argument</u>

Rule 1-060(B)(5) and (6) NMRA permit a court to relieve a party from a judgment or order if the judgment is void, and/or the judgment "has been satisfied, released, or discharged . . . or it is no longer equitable that the judgment should have prospective application; or any other reason justifying relief from the operation of the judgment." Id. "A trial court has discretion to determine whether a judgment should be set aside under Rule 1-060(B) . . . ." *Sun Country Sav. Bank, F.S.B. v. McDowell*, 1989-NMSC-043, 16 (N.M. 1989). The Judgment and two orders referenced in paragraph 1 of this Motion should be set aside because they have been satisfied by the sale to Champion (based on the primary fund doctrine) and because it is inequitable that the Judgment have prospective application in light of the foregoing facts.

In the appeal of the January 7, 2013 order, Defendants argued in part that the Judgment had been satisfied and should be set aside based on the application of the primary fund doctrine – which generally requires that when land is purchased subject to a mortgage, the land becomes the primary fund for the payment of the mortgage debt. *Wright v. Anderson*, 62 S.D. 444, 449-450 (S.D. 1934). The Defendants did not refer to the primary fund doctrine by name during the proceedings in this Court leading up to the appeal of the January 7, 2013 order. The New Mexico Court of Appeals therefore held that Defendants had not previously argued for application of the primary fund doctrine as grounds for setting aside the Judgment. *Rabo*

*Agrifinance, Inc. v. Terra XXI, LTD.,* 2014-NMCA-106, ¶ 17, 336 P.3d 972, 976-977 ("As for Terra's argument regarding the primary fund doctrine, we decline to review this contention because Terra did not preserve the error below . . . . We will not conclude that the district court abused its discretion in failing to apply a doctrine of law when that doctrine was not presented to the district court."). Given that the Court has not considered the application of the primary fund doctrine to the facts stated above, Defendants respectfully request that the Court consider the merits of the equitable doctrine and that it be applied to this case for the reasons that follow.

"Foreclosure actions originated in equity and have always been characterized as equitable actions." *Heimann v. Adee,* 122 N.M. 340, 344, 924 P.2d 1352, 1356 (N.M. 1996) (citing *Armstrong v. Csurilla,* 112 N.M. 579, 590, 817 P.2d 1221, 1232 (N.M. 1991)). Courts from other jurisdictions have held that when a purchaser ". . . buys land subject to a mortgage . . . an equitable relation arises between himself and the original mortgagor. By virtue of having purchased subject to the mortgage, the land becomes the *primary fund* for the payment of the mortgage debt." *Wright v. Anderson,* 62 S.D. 444, 449-450 (S.D. 1934) (emphasis added); *see also Chrysler First Bus. Credit Corp. v. Kawa,* 914 P.2d 540, 542 (Colo. Ct. App. 1996) ("When property is pledged or mortgaged as security for a debt, the land becomes the primary source for payment of the debt if the debtor does not pay."); *Mid Kan. Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.,* 804 P.2d 1310, 1318 (Ariz. 1991) ("Therefore, the land becomes the primary fund for the senior debt, and the purchaser is presumed to have deducted the amount of the senior liens from the amount he bids for the land.").

Furthermore, someone who purchases at a mortgage-foreclosure sale, subject to a prior mortgage, ". . . stands in the same position as if he or she had taken a deed to the land from the

owner, subject to the prior mortgage . . . [H]e or she takes it charged with primary liability for the payment of the prior mortgage." 55 Am Jur 2d *Mortgages* § 728. Nelson & Whitman's Real Estate Finance Law, Fifth Edition, 2007, ("Nelson & Whitman") notes that courts have generally characterized the relationship between a mortgagor and his grantee, where the grantee does not assume the mortgage but takes a property "subject to" the mortgage, as a suretyship. *Id.* Section 5.19. In such case, "[t]he mortgagor is looked upon as a surety while *the land* and (if an assumption agreement is entered into) the assuming grantee are regarded as principals." *Id,* (emphasis added); *see also Chrysler First Bus. Credit Corp. v. Kawa,* 914 P.2d 540, 543 (Colo. Ct. App. 1996) (noting that "Courts in other states have found sellers in 'subject to' transactions to be sureties of the mortgage.")

The obligations secured by the First Position were not assumed by AAC, but the Texas Property was purchased "subject to" that encumbrance and the land remained the primary source from which the obligations secured by the First Position (and Second Position) should have been satisfied. AAC purchased the Texas Property for only $20,000 *because* of Rabo's superior liens. It follows that the conveyance of the land free and clear of Rabo's First Position and Second Position, and Rabo's election to release those liens (rather than proceed against the Texas Property), should be deemed to have satisfied the Judgment. The actual amount received and retained by Rabo for release of its prior liens is unknown at this point. However, the Kobliska Letter at least states Rabo's position in this regard: the proceeds from the Champion sale (which far exceed the amount of the Judgment) were to have been used to satisfy the Defendants' obligations to Rabo.

Rule 1-062(B) NMRA permits the Court, ". . . in its discretion and on such conditions for the security of the adverse party as are proper, [to] stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion . . . for relief from a judgment or order made pursuant to Rule 1-060 NMRA . . . ." *Id.* For the foregoing reasons, Defendants respectfully request that any foreclosure sale in this matter be stayed pending the outcome of this Motion and the Petition. Permitting foreclosure under these circumstances would be inequitable to the point of shocking the conscience of the court. Equity requires avoiding the unjust enrichment of Rabo that would result from permitting Rabo/AAC to retain the Champion sale proceeds and to proceed with foreclosing the mortgages on the New Mexico real estate to collect debts which should have been satisfied from the sale of the Texas Property to Champion.

WHEREFORE, Defendants respectfully request that this Court: 1) stay any further proceedings related to the foreclosure concerned herein; and 2) enter an order declaring that the Defendants, and the real property concerned, are relieved from application of the Judgment because the Judgment has been satisfied and, upon such order, enter an order requiring that Plaintiff file a satisfaction in full and release of the Judgment and all liens and mortgages securing the Judgment.

Respectfully submitted,

KELEHER & MCLEOD, P.A.

By: /s/ Justin B. Breen
    Filed Electronically on February 10, 2015
    Jeffrey A. Dahl
    Justin B. Breen
    Post Office Box AA
    Albuquerque, New Mexico 87103
    Telephone: (505) 346-4646
    Facsimile: (505) 346-1370
    E-Mail: jad@keleher-law.com
    E-Mail: jbb@keleher-law.com
    *Attorneys for Defendants*

THIS HEREBY CERTIFIES that a copy of the foregoing was submitted on February 10, 2015 to Odyssey File & Serve for filing and service on the following counsel of record:

**Counsel for Rabo Agrifinance Inc.:**
Richard F. Rowley II
Rowley Law Firm, L.L.C.
P.O. Box 790
Clovis, New Mexico 88102-0790
Telephone: (575) 763-4457
Facsimile: (575) 763-4450
E-Mail: R2@RowleyLawFirm.com

/s/ Justin B. Breen
Justin B. Breen



**Rabo AgriFinance**

Linda E. Kobliska
Deputy General Counsel
Office Address    1309 Technology Parkway
Cedar Falls, IA 50613
Postal Address    P.O. Box 668
Cedar Falls, IA 50613
Tel    319-277-4444
Fax    319-277-0144
Linda.Kobliska@raboag.com

March 28, 2006

Patricia Blevins
USDA-FSA-EPAS-NRAG-STOP 0531
Room 2741-S
1400 Independence Ave SW
Washington, DC 20250

RE: Agricultural Foreign Investment Disclosure Act Filings

Dear Ms. Blevins:

Thank you for our call this morning in which you discussed with John Manning, General Counsel for Rabo Agrifinance, Inc. and myself whether the Agricultural Foreign Investment Disclosure Act applies to properties held by Rabo Agrifinance, Inc. Your guidance has been most helpful and is greatly appreciated.

Our call to you was the result of your contact with Norman Fiddelke of our Cedar Falls, Iowa office last week. After Norm spoke with you, he promptly contacted his supervisor and me about potential AFIDA compliance issues related to property in Deaf Smith County, Texas. While ignorance of the law is no excuse, the portion of our company that dealt with that property was simply unaware of the existence of AFIDA. Now that this oversight has been brought to our attention, Rabo Agrifinance, Inc. is undertaking to get into compliance as soon as reasonably possible.

COMPANY HISTORY: As we discussed this morning, reviewing the history of our company aids in understanding the issues we currently face.

Prior to December 31, 2003, Ag Services of America, Inc. ("Ag Services") was a publicly traded Iowa corporation with its headquarters in Cedar Falls, Iowa. Ag Services, among other lines of business, made agricultural loans for its own account and occasionally would acquire real property collateral in full or partial satisfaction of debt. AFIDA did not apply to Ag Services of America, Inc. because it had no known foreign investment.

As of December 31, 2003, Ag Services was purchased by Utrecht America Holding Company and its name changed to Rabo AgServices, Inc. ("RAS") Utrecht America Holdings, Inc. is in turn indirectly wholly owned by COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK, B.A., "Rabobank Nederland", acting through its New York Branch, a foreign banking organization organized as a cooperative bank under the laws of The Netherlands. Therefore, as of the purchase date of December 31, 2003, the



Part of the Rabobank Group



EXHIBIT

A

App. p. 65

company was owned by an entity that would meet the definition of foreign person. Unfortunately, RAS was still unaware of the existence of AFIDA.

An additional entity change took place when, as of December 31, 2005, Rabo AgServices, Inc. merged with Rabo Agrifinance, Inc., a sister company owned by the same parent and headquartered in St. Louis, Missouri. The surviving entity is called "Rabo Agrifinance, Inc.," which a Delaware corporation and which is also owned by Utrecht America Holdings, Inc. The company's headquarters is now in St. Louis, Missouri with a regional office in Cedar Falls, Iowa.

Rabo Agrifinance, Inc. (formerly known as "Equitable Agri-Business, Inc." and also formerly known as Lend Lease Agri-Business, Inc.) is and was a servicer of agricultural mortgage loans, including foreign persons under AFIDA. In such capacity our third party business services had been filing AFIDA filings since 1992 on behalf of and in the name of the company's foreign third party clients. Unfortunately, this is still a segregated line of business that did not work on or with real property acquired by the company for its own account.

RECENT HISTORY:

My understanding is that you received a call through the agency's hotline regarding property in Deaf Smith County, Texas in which Rabo Agrifinance, Inc. ("RAF") and/or its wholly owned subsidiary, Ag Acceptance Corporation ("AAC") held a deed of trust on the property as collateral for a loan to Terra XXI and Veigel Farm Partners (jointly the "Vegiels"). When the Veigels' loans were not paid in accordance with their terms, we sought to obtain title and possession of the property through non-judicial foreclosure. A non-judicial foreclosure sale was held and a deed was issued to RAS. After the sheriff's sale, the Veigels refused to leave the property. We then filed a forcible detainer action in an attempt to obtain possession. Veigels then alleged that the foreclosure action was invalid. Protracted litigation ensued. We sought a summary judgment ruling from the court which would uphold the foreclosure and sixteen months after filing the motion, the court granted our request for summary judgment in February of 2006. The court's order held, in part, that the foreclosure was proper. The time for Veigels to appeal the summary judgment has not yet expired and we fully expect them to appeal. The court's order is not yet final.

To date, we do not have possession of the Deaf Smith County property nor are we receiving any income from the property. Should the foreclosure continue to be upheld, it is our intent to sell the property and use the proceeds to satisfy the Veigels' obligations to our company. This is in keeping with our intent to be a holder of agricultural real estate only when prudent to do so in the process of collecting loans. We are undertaking to promptly make an AFIDA filing with this factual history on it.

The Deaf Smith County property is not the only property we need to address, however. The company does hold title to other properties, both through business conducted through its Cedar Falls office as well as through its headquarters in St. Louis. As represented by John Manning during our call, the "pre-merger" Rabo Agrifinance, Inc. has been complying with AFIDA. The office in Cedar Falls, Iowa (the former Rabo AgServices, Inc.) was not aware of the need to complete such filings and hence, needs to research what properties it held on and subsequent to December 31, 2003 and promptly complete filings for any identified properties.

We intend to identify and complete filings for such properties by the date of the extension you have extended to us, April 28, 2006. You have indicated that you will date any filings filed by that date as if they were filed today. Additionally, if we find we cannot complete the filings by April 28, 2006, we are to contact you prior to that date and request an additional extension. Because of the complexity of this situation, you have asked that we provide you with the filings and you will in turn notify the local state offices of such filings. Pursuant to your instructions, we will provide you with an original and two copies of each filing.

We appreciate your willingness to discuss these issues today and in providing direction in how to best rectify the situation. As outlined above, we will conduct research to identify those properties for which reports need to be filed and work to complete the filings with all deliberate speed. Again, thank you for your cooperation as we work to rectify this situation.

There was no intention to violate AFIDA or the USDA regulations and we very much want to work to get into compliance. Thank you.

Sincerely,

Linda Kobliska
Deputy General Counsel



A CERTIFIED COPY ATTEST THIS 2/6/13 RHEA DELAREDA COUNTY CLERK RECORDED BY Ruby Flores DEPUTY 1 of 2

SPECIAL WARRANTY DEED
WITH VENDOR'S LIEN
(Deaf Smith County, TX)

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER:

Effective Date:    November 15, 2012

Grantor:    RABO AGRIFINANCE, INC., a Delaware corporation and AG ACCEPTANCE CORPORATION, a Delaware corporation

Grantor's Mailing Address:    8919 Chancellor Drive
Cedar Falls, Iowa 50613

Grantee:    CHAMPION FEEDERS, LLC, a Texas limited liability company

Grantee's Mailing Address:    3750 S FM 2943
Hereford, Texas 79045

Consideration:    TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, and a note of even date executed by the Grantee and payable to the order of Great Plains Ag Credit, PCA, in the principal amount of $8,966,000.00. The note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of Great Plains Ag Credit, PCA, and by a first-lien deed of trust of even date from the Grantee to Tim McDonald, Trustee.

Property:    All the Grantor's right, title, and interest in those tracts of real property located in Deaf Smith County, Texas, and more particularly described in Exhibit "A" attached to this Special Warranty Deed and made a part hereof for all purposes, together with all buildings and improvements on the Property, and all rights and appurtenances pertaining to the Property, including, but not limited to, all rights on and to roads, streets, rights-of-way, easements, rights of ingress and egress, water rights, and all of the Grantor's mineral interests of any kind of character.

DOC#/1938881:2

Page 1 of 3

EXHIBIT
B

1819

Exceptions to Conveyance and Warranty: Liens described as part of the Consideration; all presently recorded easements, rights-of-way, restrictions, covenants, conditions, ordinances, oil and gas leases, mineral interests, and other instruments, other than conveyances of the surface fee estate, that affect the Property; validly existing rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements; and the Permitted Title Exceptions listed on Exhibit "B" attached to this Special Warranty Deed and made a part hereof for all purposes.

## CONVEYANCE

The Grantor, for the Consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the Exceptions to Conveyance and Warranty, grants, sells and conveys to the Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold the Property unto the Grantee and the Grantee's heirs, successors and assigns, forever, and the Grantor and the Grantor's successors warrant and shall defend the Property to the Grantee and the Grantee's heirs, successors and assigns against every person lawfully claiming or that may claim all or any part of the Property, if the claim is by, through, or under the Grantor but not otherwise; but not as to the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property is retained until the note described is fully paid according to its terms, at which time this deed will become absolute.

Great Plains Ag Credit, FCA, at the Grantee's request, has paid in cash to the Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of Great Plains Ag Credit and are transferred to Great Plains Ag Credit without recourse against the Grantor.

The Grantor warrants and represents that all ad valorem taxes and any other general real estate taxes and installments of special assessments for the year 2011 and all years before 2011 have been fully paid.

When the context requires, singular nouns and pronouns include the plural.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS# 13564.1.2

1820

App. p. 69



[SIGNATURE PAGE TO DEED]

This deed is executed on the date set forth in the acknowledgement below, but effective for all purposes as of the Effective Date.

RABO AGRIFINANCE, INC., a Delaware corporation

_____
Mark A. Fischels, Vice-President

AG ACCEPTANCE CORPORATION, a Delaware corporation

_____
Mark A. Fischels, President

STATE OF IOWA

COUNTY OF BLACK HAWK

This instrument was acknowledged before me on the 9th day of November 2012, by Mark A. Fischels, Vice President of RABO AGRIFINANCE, INC., a Delaware corporation, on behalf of said corporation.

LEIA A. SHIRK
COMMISSION NO. 762228
MY COMMISSION EXPIRES


Notary Public, State of Iowa

STATE OF IOWA

COUNTY OF BLACK HAWK

This instrument was acknowledged before me on the 9th day of November 2012, by Mark A. Fischels, President of AG ACCEPTANCE CORPORATION, a Delaware corporation, on behalf of said corporation.


Notary Public, State of Iowa

After recording return to:

Sprouse Shrader Smith P.C.
Attn: Brandon Wing
PO Box 15008
Amarillo, TX 79105-5008

{00086130.DOC 2}                    Page 3 of 3



RECORDED COMPLETED AS IT WAS: BY ___ CLERK IB SHELDA OKLAHOMA, COUNTY CLERK INSTRUMENT BY

EXHIBIT A

PROPERTY DESCRIPTION

Tract One: All of Section 21, Block K-4, SAVE AND EXCEPT the Northeast 1/4 of said Section 21, Block K-4, Deaf Smith County, Texas.

Tract Two: All of Section 22, Block K-4, Deaf Smith County, Texas.

Tract Three: All of Section 20, Block K-4, Deaf Smith County, Texas.

Tract Four: All of Section 19, Block K-4, Deaf Smith County, Texas.

Tract Five: All of Section 18, Block K-4, Certificate No. 1299, Patent No. 336, Volume 23, Deaf Smith County, Texas, SAVE AND EXCEPT 8 acres, more or less, out of the Northwest quarter thereof, as described in notes and bounds in Warranty Deed to Dexter Co-Op, a corporation, dated January 6, 1961, and entered in Volume 207, at Page 74, of the Deed Records of Deaf Smith County, Texas and SAVE AND EXCEPT the balance of said Northwest quarter of said Section 18 and the North 17.59 acres, more or less, of the Southwest quarter of said Section 18, as described by metes and bounds in Warranty deed dated June 10, 1964, recorded in Volume 241, at Page 591, of the Deed Records of Deaf Smith County, Texas.

Tract Six: The West half of Section 60, BS&F Block K-1, L.H. Hallan, Original Grantee, Certificate No. 1304, Abstract No. 803, Patent No. 509, Volume 23 dated March 23, 1903, Deaf Smith County, Texas.

Tract Seven: All of Section 46, Block K-4, BS&F Survey, Certificate No. 1305, Abstract No. 172, Patent No. 95, Volume 38, dated December 11, 1877, Deaf Smith County, Texas.

Tract Eight: All of Section 60, BS&F Block K-1, R.K. Hallan, Original Grantee, Certificate No. 1305, Abstract No. 803, Patent No. 400, Volume 23, dated March 23, 1903, Deaf Smith County, Texas.

Tract Nine: All of Section 90, BS Block K-4, BS&F Surveys, Certificate No. 1308, Abstract No. 125, Patent No. 56, Volume 39, dated December 11, 1878, in Deaf Smith County, Texas, SAVE AND EXCEPT the South 40 acres, more or less, of Section 75, Block K-4, Deaf Smith County, Texas, and SAVE AND EXCEPT a triangular tract containing 1.64 acres, thirty or less, of Section 75, Block K-4, said 1.64 acre tract being more fully described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod set for the Southwest corner of Section 90, 75, Block K-4;
THENCE North 0 degrees 37 minutes East at 14.19 feet pass a 1/2 inch iron rod in the North line of Farm Road 1412 and at 1430.07 feet a 1/2 inch iron rod on North Westerly and said beginning corner of this tract;
THENCE South 80 degrees 40 minutes at an angle 80 degrees East at 2284.49 feet pass the West line of U.S. Highway 385 and at 2334.35 feet a point in the East line of said Section;
THENCE North 0 degrees 40 minutes 40 seconds East along the East line of said Section, 200.0 feet to a point;
THENCE North 84 degrees 10 minutes West at 60 feet pass a 1/2 inch iron rod in the West line of U.S. Highway 385 and at 2317.33 feet the place of beginning.

Tract Ten: The South half of Section 24, Township 3 North, Range 1 East, Capitol Syndicate Subdivision, out of League No. 219, Abner Taylor, Original Grantee, Certificate No. 20, Abstract No. 453, Patent No. 383, Volume 1, dated August 22, 1882 of League No. 131, Abner Taylor, Original Grantee, Certificate No. 20, Abstract No. 496, Patent No. 383, Volume 1, dated August 22, 1887, Deaf Smith County, Texas.

Tract Eleven: The North half of Section 26, Township 3 North, Range 1 East, Capitol Syndicate Subdivision, out of League No. 131, Abner Taylor, Original Grantee, Certificate No. 20, Abstract No. 496, Patent No. 383, Volume 1, dated August 24, 1887, Deaf Smith County, Texas.

Tract Twelve: NW1/4 of Section 42, Block K-4 and the North 17.48 acres, more or less, of the SW1/4 of Section 42, BS&F Block K-4, L.H. Church Original Grantee, Certificate No. 1309, Abstract No. 922, Patent No. 33, Volume 33, dated March 9, 1917 as described by metes and bounds in Warranty deed dated June 10, 1964, recorded in Volume 341, Page 591, of the Deed Records of Deaf Smith County, Texas.

SAVE AND EXCEPT 5 acres, more or less, out of the NW1/4 of said Section 42, as described by metes and bounds in Warranty Deed dated January 6, 1961, recorded in Volume 207, Page 74, of the Deed Records of Deaf Smith County, Texas.

Page 1 of 2



Tract Thirteen: All of Section 59, Block K-4, Deaf Smith County, Texas.

Tract Fourteen: All of the East one-half (E/2) of Section 60, Block K-4, Deaf Smith County, Texas.

"Return
AOT
20128878

Page 2 of 2

DOCS/1335813 2

FILED and certified as RECORDED in the Official Public Records of Deaf Smith County on the date and time stamped: Imelda DeLaCerda, County Clerk, Deaf Smith County, Texas.

By: _____ Deputy. November 15, 2012 /11:15 a.m. 12 ~ 2136



**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## RELEASE OF DEED OF TRUST
### (9b)

**Date:** November 13, 2012

**Holder of Deed of Trust:**
Rabo Agrifinance, Inc., a Delaware Corporation, as successor in interest to Rabo AgServices, Inc., as successor in interest to the Farm Credit Bank of Texas.

**Holder's Mailing Address (including county):**
6919 Chancellor Drive
Cedar Falls, IA 50613
Black Hawk County

**Deed of Trust:**
Deed of Trust dated November 10, 1994, recorded in volume 409, Page 561, under Clerk's file no. 942566, Official Public Records, Deaf Smith County, Texas.



EXHIBIT
C

Property (including any improvements) to be Released from Deed of Trust:

Tract One: All of Section 21, Block K-4, SAVE AND EXCEPT the Northeast 1/4 of said Section 21, Block K-4, Deaf Smith County, Texas.

Tract Two: All of Section 22, Block K-4, Deaf Smith County, Texas.

Tract Three: All of Section 39, Block K-4, Deaf Smith County, Texas.

Tract Four: All of Section 40, Block K-4, Deaf Smith County, Texas.

Tract Five: All of Section 42, Block K-4, Certificate No. 1269, Patent No. 326, Volume 52, Deaf Smith County, Texas, SAVE AND EXCEPT 5 acres, more or less, out of the Northwest quarter thereof, as described by metes and bounds in Warranty Deed to Deon Cooper, a corporation, dated January 6, 1962, and record in Volume 291, at Page 71, of the Deed Records of Deaf Smith County, Texas; and SAVE AND EXCEPT the balance of said Northwest quarter of said Section 42 and the North 42.18 acres, more or less, of the Southwest quarter of said Section 42, as described by metes and bounds in Warranty deed dated June 10, 1966, recorded in Volume 341, at Page 591, of the Deed Records of Deaf Smith County, Texas.

Tract Six: The West half of Section 60, BS&F Block K-4, L.H. Bellah, Original Grantee, Certificate No. 1301, Abstract No. 503, Patent No. 596, Volume 33, dated March 23, 1907, Deaf Smith County, Texas.

Tract Seven: All of Section 61, Block K-4, BS&F Survey, Certificate No. 1305, Abstract No. 172, Patent No. 93, Volume 30, dated December 11, 1877, Deaf Smith County, Texas.

Tract Eight: All of Section 62, BS&F Block K-4, S.K. Hallan, Original Grantee, Certificate No. 1303, Abstract No. 502, Patent No. 499, Volume 33, dated March 23, 1907, Deaf Smith County, Texas.

Tract Nine: All of Section No. 75, Block K-4, BS&F Survey, Certificate No. 1308, Abstract No. 173, Patent No. 96, Volume 34, dated December 11, 1877, in Deaf Smith County, Texas; SAVE AND EXCEPT the South 200 acres, more or less, of Section 75, Block K-4, Deaf Smith County, Texas, and SAVE AND EXCEPT a triangular tract containing 1.64 acres, more or less, of Section 75, Block K-4, said 1.64 acre tract being more fully described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod set the Southwest corner of Section No. 75, Block K-4;
THENCE North 0 degrees 27 minutes East at 0.410 feet pass a 1/2 inch iron rod in the North line of Farm Road 1412 and at 1639.60 feet a 1/2 inch iron rod for the Westerly most actual beginning corner of this tract;
THENCE South 89 degrees 01 minutes 24 seconds East at 2252.39 feet pass the West line of U.S. Highway 385 and at 854.39 feet a point in the East line of said Survey;
THENCE North 0 degrees 29 minutes 28 seconds East along the East line of said Section, 26.9 feet to a point;
THENCE North 89 degrees 19 minutes West at 80 feet pass a 1/2 inch iron rod in the West line of U.S. Highway 385 and at 884.23 feet the place of beginning.

Tract Ten: The South half of Section 36, Township 3 North Range 1 East, Capitol Syndicate Subdivision, out of League No. 419, Abner Taylor, Original Grantee, Certificate No. 28, Abstract No. 453, Patent No. 387, Volume 1, dated August 22, 1887 and out of League No. 454, Abner Taylor, Original Grantee, Certificate No. 30, Abstract No. 496, Patent No. 430, Volume 1, dated August 24, 1889, Deaf Smith County, Texas.

Tract Eleven: The North half of Section 35, Township 3 North, Range 1 East, Capitol Syndicate Subdivision, out of League No. 454, Abner Taylor, Original Grantee, Certificate No. 30, Abstract No. 496, Patent No. 430, Volume 1, dated August 24, 1889, Deaf Smith County, Texas.

Tract Twelve: NW1/4 of Section 42, Block K-4 and the South 42.18 acres, more or less of the SW1/4 of Section 42, BS&F Block K-4, C.H. Cooper, Original Grantee, Certificate No. 1269, Abstract No. 972, Patent No. 326, Volume 52, dated March 9, 1917, as described by metes and bounds in Warranty deed dated June 10, 1966, recorded in Volume 341, Page 591, of the Deed Records of Deaf Smith County, Texas.
SAVE AND EXCEPT 5 acres, more or less, out of the NW1/4 of said Section 42, as described by metes and bounds in Warranty Deed dated January 6, 1962, recorded in Volume 297, Page 71 of the Deed Records of Deaf Smith County, Texas.

BCCB/224170642

2.

Holder releases any and all liens only on the real estate described above (the "Property Released From Deed of Trust") existing by reason of the Deed of Trust described above. Holder preserves all other rights with respect to any and all judgments in favor of Holder, including without limitation the right to enforce any and all judgments against any real or personal property of Terra XXI, Ltd., Robert Wayne Veigel a/k/a Robert W. Veigel, Ella Marie Williams Veigel, Veigel Farms, Inc., Veigel Cattle Company, Veigel Farm Partners, Grain Central Station, Inc. d/b/a Veigel Grain Company, Steve Veigel, Terra Partners, Burnett & Veigel, Inc., Williams & Veigel, Inc., Kirk & Veigel, Inc., and Massey, Kirk & Veigel, Inc. other than the Property Released From Deed of Trust including, but not limited to, any and all real property located in New Mexico currently being judicially foreclosed upon.

[SIGNATURES ON FOLLOWING PAGE]



[SIGNATURE PAGE TO RELEASE OF DEED OF TRUST]

Rabo Agrifinance, Inc., a Delaware Corporation,
as successor in interest to Rabo AgServices, Inc.

Name: _Dale Anderson_
Title: _VP Regional Credit Officer_

STATE OF IOWA

COUNTY OF BLACK HAWK

This instrument was acknowledged before me on the _13_ day of November, 2012, by
_Dale Anderson_ _VP Regional credit off_ of Rabo Agrifinance, Inc., a Delaware
Corporation, as successor in interest to Rabo AgServices, Inc., on behalf of said corporation.



Notary Public, State of Iowa

LETA A. SHERK
COMMISSION NO. 766693
MY COMMISSION EXPIRES

After recording, return to:
A.G. Thompson Abstract Co., Inc.
P.O. Box 75
Hereford, Texas 79045

Prepared by:
Lawrence E. Kritenbrink
Baird Holm LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, NE 68102

DOCS/1141708.2

GF 20128878

4.



STATE OF TEXAS, COUNTY OF DEAF SMITH. FOR RECORDING PURPOSES ONLY

BY: Kelly Floats

COUNTY CLERK, DEAF SMITH COUNTY, TEXAS

DEPUTY 5 of 5

FILED and certified as RECORDED in the Official Public Record of Deaf Smith County on the date and time stamped. Imelda D. LaCerda, County Clerk, Deaf Smith County, Texas.

By: _____ Deputy November 19, 2012 (1st Stamp)

12-2139

1868



NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### RELEASE OF DEED OF TRUST
(9c)

Date: November 19 2012

Holders:
Rabo AgriFinance, Inc., a Delaware Corporation, as successor in interest to Rabo AgServices, Inc., formerly known as Ag Services of America, Inc.

Holder's Mailing Address (including county):
6919 Chancellor Drive
Cedar Falls, IA 50613
Black Hawk County

Deed of Trust: Deed of Trust dated May 22, 1998, recorded under Clerk's file no. 98-1253, Official Public Records, Deaf Smith County, Texas.

Property (including any improvements) to be Released from Deed of Trust:

Tract One: All of Section 31, Block K-4, SAVE AND EXCEPT the Northeast 1/4 of said Section 31, Block K-4 Deaf Smith County, Texas.

Tract Two: All of Section 32, Block K-4, Deaf Smith County, Texas.

Tract Three: All of Section 39, Block K-4, Deaf Smith County, Texas.

Tract Four: All of Section 40, Block K-4, Deaf Smith County, Texas.

Tract Five: All of Section 42, Block K-4, Certificate No. 1395, Patent No. 330, Volume 52, Deaf Smith County, Texas, SAVE AND EXCEPT 9 acres more or less, out of the Northwest quarter thereof, as described by metes and bounds in Warranty Deed to Delwin Co-Op, a corporation, dated January 6, 1961, and record in Volume 203, at Page 317, of the Deed Records of Deaf Smith County, Texas; and SAVE AND EXCEPT the balance of said Northwest quarter of said Section 42 and the North 42.86 acres, more or less, of the Southwest quarter of said Section 42, as described by metes and bounds in Warranty deed dated June 10,1965, recorded in Volume 241, at Page 491, of the Deed Records of Deaf Smith County, Texas.

DOCS/11488362

ORIGINAL COPY ATTESTED AND CERTIFICATION BY _____ ON THIS ____, MELBA OLEGARIO, DEPUTY CLERK/CERTIFICATION BY _____ DEPUTY 8 of 13

Tract Six: The West half of Section 60, BS&F Block K-4, L.H. Hallan, Original Grantee, Certificate No. 1304, Abstract No. 803, Patent No. 500, Volume 23, dated March 23, 1903, Deaf Smith County, Texas.

Tract Seven: All of Section 61, Block K-4, BS&F Survey, Certificate No. 1305, Abstract No. 172, Patent No. 83, Volume 30, dated December 11, 1877, Deaf Smith County, Texas.

Tract Eight: All of Section 62, BS&F Block K-4, S.K. Hallan, Original Grantee, Certificate No. 1305, Abstract No. 802, Patent No. 490, Volume 53, dated March 23, 1907, Deaf Smith County, Texas.

Tract Nine: All of Section No. 75, Block K-4, BS&F Survey, Certificate No. 1388, Abstract No. 173, Patent No. 95, Volume 30, dated December 11, 1877, in Deaf Smith County, Texas.
SAVE AND EXCEPT the South 200 acres, more or less, of Section 75, Block K-4, Deaf Smith County, Texas, and
SAVE AND EXCEPT a triangular tract containing 1.64 acres, more or less, of Section 75, Block K-4, said 1.64 acre tract being more fully described by metes and bounds as follows:
BEGINNING at a 1/2 inch iron rod set for the Southwest corner of Section No. 75, Block K-4;
THENCE North 0 degrees 27 minutes East at 66.10 feet pass a 1/2 inch iron rod in the North line of Farm Road 1412 and at 1039.60 feet a 1/2 inch iron rod for the Westerly and actual Beginning corner of this tract;
THENCE South 39 degrees 01 minutes 26 seconds East at 5254.39 feet pass the West line of U.S. Highway 385 and at 5314.39 feet a point in the East line of said Section;
THENCE North 0 degrees 27 minutes 30 seconds East along the East line of said Section, 28.0 feet to a point;
THENCE North 69 degrees 19 minutes West at 60 feet pass a 1/2 inch iron rod in the West line of U.S. Highway 385 and at 5344.23 feet the place of Beginning.

Tract Ten: The South half of Section 26, Township 3 North, Range 1 East, Capitol Syndicate Subdivision, out of League No. 419 Abner Taylor, Original Grantee, Certificate No. 28, Abstract No. 453, Patent No. 387, Volume 1, dated August 27, 1887 out of League No. 414, Abner Taylor, Original Grantee, Certificate No. 30, Abstract No. 206, Patent No. 439, Volume 1, dated August 24, 1887, Deaf Smith County, Texas.

Tract Eleven: The North half of Section 35, Township 3 North, Range 1 East, Capitol Syndicate Subdivision, out of League No. 434, Abner Taylor, Original Grantee, Certificate No. 39, Abstract No. 476, Patent No. 150, Volume 1, dated August 19, 1887, Deaf Smith County, Texas.

Tract Twelve: NW/4 of Section 42, Block K-4 and the North 42.93 acres, more or less of the SW/4 of Section 42, BS&F Block K-4, C.H. Cooper, Original Grantee, Certificate No. 1296, Abstract No. 932, Patent No. 326, Volume 57, dated March 6, 1917, as described by metes and bounds in Warranty deed dated June 10, 1966, recorded in Volume 244, Page 581, of the Deed Records of Deaf Smith County, Texas.
SAVE AND EXCEPT 5 acres, more or less, out of the NW/4 of said Section 42, as described by metes and bounds in Warranty Deed dated January 8, 1962, recorded in Volume 197, Page 71, of the Deed Records of Deaf Smith County, Texas.

Holder releases any and all liens only on the real estate described above (the "Property Released From Deed of Trust") existing by reason of the Deed of Trust described above. Holder preserves all other rights with respect to any and all judgments in favor of Holder, including without limitation the right to enforce any and all judgments against any real or personal property of Terra XXI, Ltd., Robert Wayne Veigel a/k/a Robert W. Veigel, Ella Marie Williams Veigel, Veigel Farms, Inc., Veigel Cattle Company, Veigel Farm Partners, Grain Central Station, Inc. d/b/a Veigel Grain Company, Steve Veigel, Terra Partners, Burnett & Veigel, Inc., Williams & Veigel, Inc., Kirk & Veigel, Inc., and Massey, Kirk & Veigel, Inc. other than the Property Released From Deed of Trust including, but not limited to, any and all real property located in New Mexico currently being judicially foreclosed upon.

[SIGNATURES ON FOLLOWING PAGE]

Original Document Not Suitable for
Reproducing a Readable Record by
Photocopy or Electronic Image

DOCS/1171893.2

2

[SIGNATURE PAGE TO RELEASE OF DEED OF TRUST]



Rabo Agrifinance, Inc., a Delaware Corporation,
as successor in interest to Rabo AgServices, Inc.
formerly known as Ag Services of America, Inc.

Name: _Dixie Anderson_
Title: _VP Regional Credit Office_

STATE OF IOWA

COUNTY OF BLACK HAWK

This instrument was acknowledged before me on the _13_ day of November, 2012, by
_Dixie Anderson_ _VP Regional Credit Office_ of Rabo Agrifinance, Inc., a Delaware
Corporation, as successor in interest to Rabo AgServices, Inc. formerly known as Ag Services of
America, Inc., on behalf of said corporation.



LEIA A. SHIRK
COMMISSION NO. 762623
MY COMMISSION EXPIRES

Notary Public, State of Iowa

After recording, return to:                    Prepared by:
A.O. Thompson Abstract Co., Inc.               Lawrence E. Kritenbrink
P.O. Box 73                                    Baird Holm LLP
Hereford, Texas 79045                          1500 Woodmen Tower
GF 20128878                                    1700 Farnam Street
                                               Omaha, NE 68102

DOCS/1141883-2                          3

FILED and entered of RECORDED in the Official Public Records of Deaf Smith County on the date and time stamped. Imelda DeLaCerda, County Clerk, Deaf Smith County, Texas.
By: _____ Deputy   November 13, 2012 (11:52am)   12-2140

App. p. 80

This form is available electronically.

RECEIVED
DEC 1 ? 2012 REC'D
By _____ drg

AMENDED ☐

Form Approved – OMB No. 0560-0097

FSA-153
(10-13-10)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

**1. TYPE ACTIVITY** *(See Instructions on Page 2) (check one)*

A. Land ☐   B. Land ☐   C. Land ☒
Holding       Acquisition    Disposition

D. Land Use Change ☐   E. Land Use Change ☐
to Agriculture            to Non-Agriculture

## AGRICULTURAL FOREIGN INVESTMENT DISCLOSURE ACT REPORT

*Note: Read Instructions on Page 2 Before Filing In Any Data Below. (If Additional Space is Needed, Add Information in Item 6, Page 2, or attach an additional sheet.)*

| ITEM | | ITEM | | Check |
|---|---|---|---|---|
| **2. Tract Location and Description** | | **5. Type of Interest Held in the Agricultural Land** *(Check one)* | | |
| A. Legal Description or FSA Tract Number | | A. Fee Interest (Ownership) Whole | | X |
| See attached Legal Description. | | B. Fee Interest (Ownership) Partial   What Percent | | |
| | | C. Life Estate | | |
| | | D. Trust Beneficiary | | |
| B. County or Parish | C. Number of Acres | E. Purchase Contract | | |
| Deaf Smith County | 5,663 | F. Other *(Check Box and Explain Below.)* | | |

D. State
Texas

**3. Owner or Lessee of Tract (In Item 2A) (See Page 2)**

A. Name: Ag Acceptance Corporation

| | | | |
|---|---|---|---|
| B. Tax ID No. (Nine Digits) 391873636 | **6. How was this Tract Acquired or Transferred?** | | **Check** |
| C. Legal Address (Street, City, State/Province, Country) | A. Cash Transaction | | X |
| 6919 Chancellor Drive | B. Credit or Installment Transaction | | |
| Cedar Falls, IA 50613 | C. Trade | | |
| | D. Gift or Inheritance | | |
| | E. Foreclosure | | |
| | F. Other *(Check Box and Explain Below.)* | | |

RECEIVED
DEC 2 6 2012
_____ TX St?
CORPS DIV

D. Type of Owner (If Item D1 is checked, skip items D2 and D3.)

| | Check |
|---|---|
| 1. Individual, *(Indicate citizenship of husband and/or wife if applicable.)* | |
| a. Citizenship of Individual(s) | |
| 2. Government *(Country)* | |

**7. Value of Agricultural Land:**

| | | |
|---|---|---|
| A. Purchase Price of Land or if a land disposition, the original price paid by seller. | $ | |
| B. Non-Purchase, Estimated Value at the Time of Acquisition | $ | |
| C. What is the estimated current value or if a land disposition, the selling price of the tract of land? | $ 6,154,660.00 | |
| D. How much of purchase price in Item 7A remains to be paid? | $ | |

| 3. Organization | | Check |
|---|---|---|
| a. Type | | |
| 1) Corporation | | X |
| 2) Partnership | | |
| 3) Estate | | |
| 4) Trust | | |
| 5) Institution | | |
| 6) Association | | |
| 7) Other *(Check box and Explain)* | | |

**8. Date of Acquisition or Transfer** *(See Instructions, Item 8, Page 2.)*

| Month | Day | Year |
|---|---|---|
| November | 15 | 2012 |

b. Government or country under whose law the organization is created
United States

c. Principal place of business *(For organizations only)*
Cedar Falls, IA

**9. Current Land Use** *(Usual use of land. for idle land, report as Other Agriculture.)*

| | Acres |
|---|---|
| A. Crop | 5,663 |
| B. Pasture | |
| C. Forest or Timber | |
| D. Other Agriculture | |
| E. Non-Agriculture | |
| F. Total Acres *(Should equal item 2C)* | 5,663 |

d. List on separate sheet, the Name, Address and Country of all foreign persons who individually or in the aggregate hold significant interest or substantial control 1/ in the person owning the land.

E. Complete only if Item 1C, Land Disposition, is checked.

1. Name of Person Receiving Tract
Champion Feeders, LLC

2. Address *(Street, City, State/Province, Country)*
3750 S FM 2943
Hereford, TX 79045

**10. Intended Use as of This Date:** *Check one or more or enter "NA" if Item 1C or 1E above is checked.*

| | Check for "NA" |
|---|---|
| A. No change. | X |
| B. Other Agriculture | |
| C. Non-Agriculture | |

3. Citizenship: USA ☐   Foreign ☐   Unknown ☒

4. Representative of Foreign Person *(Completing form, if applicable)*

A. Name
Linda Kobliska

B. Address *(Street, City, State/Province, Country)*
6919 Chancellor Drive
Cedar Falls, IA 50613

C. Telephone No. *(Area Code)*: (319) 575-5443

D. Relationship of Representative to Foreign Person

| | Check |
|---|---|
| 1. Attorney | |
| 2. Manager | |
| 3. Agent | X |
| 4. Other *(Explain on Item 6, Page 2)* | |

**11. Relationship of Owner to Producer.** Check one or more items if applicable. Enter "NA" if Item 1C or 1E is checked.

| | Check for "NA"? |
|---|---|
| A. Producer is: | |
| 1. Owner | NA |
| 2. Manager | NA |
| 3. Tenant or sharecropper *(Item 11B must be completed.)* | NA |
| B. Rental agreement is: *(Not applicable if Item 1C or 1E above is checked.)* | |
| 1. A crop share | NA |
| 2. Cash or fixed rent | NA |

**12. The Producer on This Tract is:** Check one or more. If not applicable for Item 11A, then enter "NA". *(Not applicable if Item 1C or 1E above is checked.)*

| | |
|---|---|
| A. The same person as when the tract was acquired. | NA |
| B. A new person. | NA |

**13. CERTIFICATION:** *I certify that the information entered in this report is complete and correct. I understand that falsification of reporting is subject to a civil penalty not to exceed 25% of the fair market value of the interest held in the tract of land.*

| 14A. SIGNATURE *(Owner or Legally Authorized Representative)* | 14B. TITLE Deputy General Counsel | 14C. DATE *(MM-DD-YYYY)* 12-04-2012 |
|---|---|---|

*1/ Significant interest or substantial control as defined in 7 CFR Part 781.2(k)*

EXHIBIT
D

NOTE: *The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a - as amended). The authority for requesting the information identified on this item is 7 CFR Part 781 and the Agricultural Foreign Investment Disclosure Act of 1978 (Pub. L. 95-460). The information will be used to ensure that a foreign person who acquires, disposes of, or holds an interest in United States agricultural land discloses such transactions and holdings to the Secretary of Agriculture and to determine the effects of such transactions and holdings on family farms and rural communities. The information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in applicable Routine Uses identified in the System of Records Notice for USDA/FSA-2, Farm Records File (Automated). Providing the requested information is mandatory. Failure to furnish the requested information or falsification of reporting will result in a determination of non-compliance with the program which is subject to a civil penalty not to exceed 25 percent of the fair market value, as determined by the Farm Service Agency on the date of the assessment of such penalty, of the foreign person's interest in the agricultural land with respect to which such violation occurred.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0097. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The provisions of appropriate criminal and civil fraud, privacy, and other statutes may be applicable to the information provided. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

### DETERMINATION OF FOREIGN PERSON STATUS

DEFINITION: "Person" means any individual, corporation, company, association, firm, partnership, society, joint stock company, trust, estate, or any other legal entity.

| You are an "individual/foreign person" under the provisions of Pub. L. 95-460 and must complete the front side of this form (FSA-153). If your answer is "NO" to all the statements in items 1, 2 and 3 below: | YES | NO |
|---|---|---|
| 1. I AM a citizen of the United States. | | X |
| 2. I AM a citizen of the Northern Mariana Islands or the Trust Territories of the Pacific Islands. | | X |
| 3. I AM lawfully admitted to the United States for permanent residence, or paroled into the United States, under the Immigration and Nationality Act. | | X |

| You are a "foreign person, organization or government," under the provisions of Pub. L. 95-460 and must complete the front side of this form (FSA-153) if your answer is "YES" to any of the statements in items 4a, 4b and 5 below: | YES | NO |
|---|---|---|
| 4. I AM a "person" other than an individual or government, which is created or organized under the laws of: | | |
| a. A foreign government of which has its principal place of business located outside the United States. | | X |
| b. Any State of the United States, and in which significant interest or substantial control 1/ is held directly or indirectly by any foreign individual, government, or person. | X | |
| 5. I AM a foreign government. | | X |

### GENERAL INSTRUCTIONS

Complete this form for each tract of land. Report as a tract all acreages under the same ownership in each county or parish acquired or transferred on the same date. Land in different counties or parishes and land acquired or transferred on different dates must be reported as separate tracts.

Return the original and two (2) copies to the County Farm Service Agency (FSA) Office where the tract of land is located. Retain a copy for your records.

After the original disclosure on FSA-153 on the tract(s) of land owned by the same person within a county or parish, each subsequent change of ownership or use must be reported by filing another FSA-153.

### ITEMS 1 AND 8 BELOW ARE TO BE USED AS INSTRUCTIONS ONLY. THESE INSTRUCTIONS ARE TO BE USED FOR INFORMATION AS YOU COMPLETE ITEMS 1 AND 8 ON PAGE 1.

ITEM 1. ONLY ONE BOX MAY BE CHECKED.

If the tract of land to be listed under Item 2 on the front side of this document was:

- Owned on February 1, 1979, check  A.  Land Holding  ☒  *Reporting Date: This document is required to be completed and returned by August 1, 1979.*

If the tract of land to be listed under Item 2 on the front page of this document was, on or after February 2, 1979:

- Acquired, check  B.  Land Acquisition  ☒

- Disposed of, check  C.  Land Disposition  ☒

- Changed from non-agricultural to agricultural use, check  D.  Land Use Change to Agriculture  ☒

- Changed from agricultural to non-agricultural use check  E.  Land Use Change to Non-Agriculture  ☒

NOTE: REPORT DATE. If activity B, C, D or E is checked in Item 1 above, then return the completed FSA-153 within ninety (90) days from the date of the transaction.

ITEM 8. The date entered would be as follows for the activity checked in Item 1 above:

Box A or B – Date acquired.
Box C – Date disposed of.
Box D or E – Date land use changed.

8. Additional Information (Use additional sheets if more space is needed).
3. D3d.  See attached.

1/ Significant interest or substantial control as defined in 7 CFR Part 781.2(k)

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal relay) or (800) 845-6136 (Spanish Federal relay). USDA is an equal opportunity provider and employer.

# Supplement to FSA-153 for Ag Acceptance Corporation

3.D.3.d.        Rabobank International Holding B.V. is a "Besloten Vennottschap" (which is a close equivalent to a U.S. corporation) and  was formed under the laws of the Netherlands.  It owns 100% of the stock of Utrecht –America Holdings, Inc.

Utrecht-America Holdings, Inc. is a Delaware corporation which owns 100% of the stock of Rabo Agrifinance, Inc.

Rabo Agrifinance, Inc. is a Delaware corporation which owns 100% of Ag Acceptance Corporation.

Ag Acceptance Corporation is a Delaware corporation.

Property:  5,662 °8 acres of land in Deaf Smith County, T 'as, and being more fully descr�. .d in five (5) tracts as follows:

TRACT ONE:  ·640 acres of land being all of Section 21, Block K-4, AB & M Survey, Certificate No. 36, Abstract No. 1, Patent No. 58, Volume 29, dated September 19, 1877.

SAVE AND EXCEPT the Northeast quarter of said Section 21.

LEAVING 480 acres.

648.1 acres of land being all of Section 22, AB&M Block K-4, J.D. Burkett, Original Grantee, Certificate No. 36, Abstract No. 893, Patent No. 25, Volume 56A, dated July 26, 1934.

640 acres of land being all of Section 39, Block K-4, BS&F Survey, Certificate No. 1298, ·Abstract No. 165, Patent No. 77, Volume 30, dated December 10, 1877.

648.6 acres of land being all of Section 40, BS&F Block K-4, Certificate No. 1298; Original Grantee, C.H. Cooper, Abstract No. 923, Patent No. 347, Volume 78, dated June 4, 1920; Abstract No. 1280, Original Grantee, Albert H. Dohrn, Patent No. 348, Volume 7A, dated June 4, 1920; Abstract No. 1288, Original Grantee, Henry Jones, Patent No. 185, Volume 42A, dated February 28, 1929; and Abstract No. 1420, Original Grantee, Ann O. Cottingham, Patent No. 186, Volume 42A, dated February 28, 1929.

640 acres of land being all of Section 42, BS&F Block K-4, C.H. Cooper, Original Grantee, Certificate No. 1299, Abstract No. 922, Patent No. 326, Volume 52, dated March 9, 1917.

SAVE AND EXCEPT 5 acres of land, more or less, out of the Northwest ¼ thereof, as described by metes and bounds in Warranty Deed to Dawn Co-op, a corporation, dated

035959

January 6, 1962, and recorded in Volume 207, page 71, and said 5 acres of land being described by metes and bounds as follows:

BEGINNING at a ¼ inch iron pipe at the Southwest corner of Section No. 42, Block K-4, whence a 1 inch iron pipe at the Northwest corner of said Section bears South 0 deg. 37 min. 30 sec. West, 1923 varas and a 1 inch iron pipe set at the Southwest corner of Section 41, Block K-4 bears South 0 deg. 37 min. 30 sec. West, 3851 varas. The Northwest corner of Section 43, Block K-4 bears North 0 deg. 37 min. 30 sec. East, 1923 varas;

THENCE South 0 deg. 37 min. 30 sec. West with the West line of Section 42, at 37.3 feet pass a ¼ inch iron pipe and at 466.69 feet a ¼ inch iron pipe. A North-South fence on the East side of a public road bears West 34 feet;

THENCE South 89 deg. 06 min. East, 466.69 feet to a ¼ inch iron pipe;

THENCE North 0 deg. 37 min. 30 sec. East at 429.69 feet pass a ¼ inch iron pipe in an East-West fence, and at 466.69 feet a ¼ inch iron pipe in the North line of Section 42. The South edge of the 20 foot paving of a Farm Road bears North 3 feet;

THENCE North 89 deg. 06 min. West along the North line of said Section, 466.69 feet to the place of beginning.

ALSO, SAVE AND EXCEPT the balance of said northwest quarter of said Section 42 and the North 42.48 acres of the Southwest quarter of said Section 42, in warranty deed dated June 10, 1966, recorded in Volume 241, at Page 591, of the Deed Records of Deaf Smith County, Texas, as described in metes and bounds as follows:

All of the Northwest ¼, except 5 acres in the NW corner thereof, and the North 42.48 acres of the Southwest quarter of Section 42, Block K-4, Cert. 1299, Original Grantee C.H. Cooper, BS&F Surveys in Deaf Smith County, Texas, said land being described by metes and bounds as follows:

BEGINNING at a ¼" iron pipe at the NW corner of Section 42, Block K-4, whence a 1" iron pipe at the SW corner of Sec. 41, Block K-4 bears S. 0 deg. 37' 30" West 3851 varas and the NW corner of Section 43, Block K-4 bears N 0 deg. 37' 30" East 1923 varas;

THENCE South 0 deg. 37' 30" West along the west line of said Section 168.0 varas to a ¼ in. iron pipe for the BEGINNING corner of this tract;

THENCE South 0 deg. 37' 30" West along the West line of said section 1044.8 varas to a ¼ in. iron pipe, whence the East fence of a North-South road bears West 15.2 varas;

THENCE South 89 deg. 07' 30" East 954.15 varas to a 1-1/4 in. iron pipe in the East line of the Southwest ¼ of said section;

035960

App. p. 85

THENCE North 0 deg. 39' East at 1199.6 varas cross an East-West fence on the South side of Farm Road 1062 and at 1212.4 varas a ¾ in. iron pipe in the North line of said section;

THENCE North 89 deg. 06' West along the North line of said section, 786.65 varas to a ¾ in. iron pipe at the Northeast corner of a 5 acre tract;

THENCE South 0 deg. 37' 30" West 168.0 varas to a ¾ in. iron pipe, the Southeast corner of a 5 acre tract;

THENCE North 89 deg. 06' West 168.0 varas to the place of beginning.

LEAVING 432.52 acres.

TRACT TWO:     320 acres of land being the West half of Section 60, BS&F Block K-4, L.H. Hallan, Original Grantee, Certificate No. 1304, Abstract No. 803, Patent No. 500, Volume 33, dated March 23, 1907.

640 acres being all of Section 61, Block K-4, BS&F Survey, Certificate No. 1305, Abstract No. 172, Patent No. 93, Volume 30, dated December 11, 1877.

640 acres being all of Section 62, BS&F Block K-4, S.K. Hallan, Original Grantee, Certificate No. 1305, Abstract No. 802, Patent No. 499, Volume 33, dated March 23, 1907.

TRACT THREE:     All of Section No. 75, Block K-4, BS&F Surveys, Certificate No. 1308, Abstract No. 175, Patent No. 96, Volume 30, dated December 11, 1877, in Deaf Smith County, Texas.

SAVE AND EXCEPT the South 200 acres, more or less, of Section 75, Block K-4, Deaf Smith County, Texas; and

SAVE AND EXCEPT a triangular tract containing 1.64 acres, more or less, of Section 75, Block K-4. Said 1.64 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a ½ in. iron rod set for the Southwest corner of Section No. 75, Block K-4;

THENCE North 0 deg. 27 min. East at 64.10 feet pass a ½ in. iron rod in the North line of Farm Road 1412 and at 1639.60 feet a ½ inch iron rod for the WESTERLY and actual BEGINNING corner of this tract;

THENCE South 89 deg. 01 min. 36 sec. East at 5254.39 feet pass the West line of U.S. Highway 385 and at 5314.39 feet a point in the East line of said section;

035961

THENCE North 0 deg. 29 min. 50 sec. East along the East line of said section, 26.9 feet to a point;

THENCE North 89 deg. 19 min. West at 60 feet pass a ½ inch iron rod in the West line of U.S. Highway 385 and at 5314.23 feet the place of beginning.

LEAVING 438.36 acres.

TRACT FOUR:    320 acres of land, more or less, being all the South half of Section 26, T3N, R1E, Capitol Syndicate Subdivision; out of League No. 419, Abner Taylor, Original Grantee, Certificate No. 28, Abstract No. 453, Patent No. 387, Volume 1, dated August 22, 1887 and out of League No. 434, Abner Taylor, Original Grantee, Certificate No. 30, Abstract No. 496, Patent No. 430, Volume 1, dated August 24, 1887.

320 acres of land, more or less, being all of the North half of Section 35, T3N, R1E, Capitol Syndicate Subdivision, out of League No. 434, Abner Taylor, Original Grantee, Certificate No. 30, Abstract No. 496, Patent No. 430, Volume 1, dated August 24, 1887.

TRACT FIVE:    NW/4 of Section 42, Block K-4 and the North 42.48 acres of the SW/4 of Section 42, BS&F Block K-4, C.H. Cooper, Original Grantee, Certificate No. 1299, Abstract No. 922, Patent No. 326, Volume 52, dated March 9, 1917, as described by metes and bounds in warranty deed dated June 10, 1966, recorded in Volume 241, Page 591, of the Deed Records of Deaf Smith County, Texas;

SAVE AND EXCEPT 5 acres out of the NW/4 of said Section 42, as described by metes and bounds in Warranty Deed dated January 6, 1962, recorded in Volume 207, Page 71, of the Deed Records of Deaf Smith County, Texas.

EXHIBIT J

CURRY COUNTY COURTHOUSE
700 NORTH MAIN, SUITE 13
CLOVIS, NEW MEXICO 88101
Ph: (575) 742-7608
Fax: (575) 763-5121

CHAMBERS OF
DREW D. TATUM
DISTRICT JUDGE
Division II

STATE OF NEW MEXICO

# Ninth Judicial District Court

May 15, 2015

Mr. Richard F. Rowley II
Rowley Law Firm, L.L.C.
Post Office 790
Clovis, NM 88102-0790

Mr. Jeffrey A. Dahl
Mr. Justin B. Breen
Keleher & McLeod, P.A.
Post Office Box AA
Albuquerque, NM 87103

## DECISION LETTER

Re: *Rabo Agrifinance Inc. v. Terra XXI, LTD. et. al.*
*Cause No. D-1010-CV-200700111*
*10ᵗʰ Judicial District Court, Quay County, New Mexico*

This matter having come before the Court on the filing of Defendants' Motion For Rule 1-060(B) Relief and Request For Stay of Foreclosure Sale on February 10, 2015.

Having performed a thorough and meaningful review of the aforementioned the pleadings, reviewed statutory citations and caselaw, and having heard the argument of counsel of record, this Court finds the Defendants' Motion to not be well-taken, and the motion is **DENIED.**

This Court further directs the release of the Supersedeas Bond posted by the Defendants in the amount of $100,000.00 to the Plaintiffs for application against the total judgment owed by the Defendants.

Pursuant to the foregoing, Counsel for the Plaintiff shall prepare and circulate an Order reflecting the decision herein.

Sincerely,

Drew D. Tatum
District Judge
Division II

EXHIBIT
A

EXHIBIT K

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

RABO AGRIFINANCE, INC.,
Successor in Interest to Farm
Credit Bank of Texas,

COURT OF APPEALS OF NEW MEXICO
ALBUQUERQUE
FILED

NOV 18 2015

      Plaintiff-Appellee,

v.                   NO. 34,757

TERRA XXI, LTD., a Texas Limited
Partnership, Composed of VEIGEL CATTLE
COMPANY, as General Partner;
ROBERT WAYNE VEIGEL a/k/a BOB W. VEIGEL;
ELLA MARIE WILLIAMS VOGEL, a/k/a
ELLA MARIE VEIGEL;
VEIGEL CATTLE COMPANY, a Texas corporation;
VEIGEL FARM PARTNERS, a Texas general partnership
d/b/a Veigel Partners;
BOB VEIGEL, INC., a Texas corporation;
STEVE VEIGEL, INC., a Texas corporation;
VEIGEL-KIRK, INC., a Texas corporation;
VICKI VEIGEL, INC., a Texas corporation;
VEIGEL FARMS, INC., a Texas corporation;
TERRA PARTNERS, a Texas general partnership;
BURNETT & VEIGEL, INC., a Texas corporation,
as general partner of Terra Partnership, a Texas
general partnership; and ALL UNKNOWN
CLAIMANTS OF INTEREST IN THE PREMISES
ADVERSE TO THE PLAINTIFF,

      Defendants-Appellants,

APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY
Drew D. Tatum, District Judge

1 | Rowley Law Firm, P.C.
2 | Richard F. Rowley II
3 | Clovis, NM

4 | for Appellant

5 | Keleher & McLeod, P.A.
6 | Jeffrey A. Dahl
7 | Julia L. Maccini
8 | Albuquerque, NM

9 | for Appellants

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}   Appellants Terra XXI, Ltd., et al. (Defendants) appeal from the district court's ruling that denies Defendants relief based on their Rule 1-060(B) NMRA argument for application of the primary fund doctrine. [RP Vol.14/3328, 3347] Our notice proposed to affirm, and Defendants filed a memorandum in opposition, as well as a motion to stay the proceedings in this Court. Defendants' motion to stay is denied. We further remain unpersuaded by Defendants' arguments, and thus affirm.

{2}   As set forth in our notice, in a previous appeal in this Court, Defendants also raised a primary fund doctrine argument, but in that appeal this Court declined to review the primary fund argument on the basis that Defendants had not preserved such argument in their underlying Rule 1-060(B) motion filed in district court. *See Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 2014-NMCA-106, ¶¶ 5, 13, 15, 17, 336

2

1  P.3d 972 (declining to review the primary fund doctrine argument for lack of

2  preservation in the underlying Rule 1-060(B) motion). [RP Vol.14/3198, 3199]

3  Subsequent to that appeal and now the subject of the present appeal, Defendants filed

4  a second Rule 1-060(B) motion in the district court, this time raising an argument

5  pursuant to the primary fund doctrine, which the district court again denied. [RP

6  Vol.14/3201, 3235, 3305, 3328, 3347]

7  {3}    In our notice, we did not address the merits of Defendants' primary fund

8  argument. Instead, we considered that Defendants did not raise a primary fund

9  doctrine argument in their first Rule 1-060(B) motion, as addressed in the previous

10  appeal, and declined to review the merits on the basis that we could perceive no

11  justifiable reason for Defendants' failure to do so. *See Rios v. Danuser Mach. Co.*,

12  1990-NMCA-031, ¶ 25, 110 N.M. 87, 792 P.2d 419 (recognizing our disfavor of

13  multiple Rule 1-060(B) motions, and providing that a subsequent Rule 1-060(B)

14  motion for relief based on different grounds than the first motion may be considered

15  "if there was a justifiable reason for not raising those grounds in the first motion");

16  *see also Gedeon v. Gedeon*, 1981-NMSC-065, ¶ 17, 96 N.M. 315, 630 P.2d 267

17  (stating "[i]t is well established that a motion for relief from a judgment or order

18  under Rule [1-60(B)] is not intended to extend the time for taking an appeal and

19  cannot be used as a substitute for appeal").

3

1 {4}    In response to our notice, Defendants point out that unlike in the previous

2 appeal, this time they raised their primary fund argument in their second Rule 1-

3 060(B) motion filed in district court. [MIO 3] We acknowledge this, but again

4 emphasize that Defendants have nonetheless not provided a justifiable reason for not

5 raising the primary fund argument in their first Rule 1-060(B) motion. While

6 Defendants advocate that "application of the primary fund doctrine is necessary and

7 appropriate" [MIO 3] and required by equity on the asserted basis that the proceeds

8 from the sale of the Texas property satisfied the judgment against them, this argument

9 relates to the merits of application of the primary fund doctrine [MIO 4], but does not

10 provide a justifiable reason for failing to raise the argument in their first Rule 1-

11 060(B) motion.

12 {5}    For the reasons set forth herein and in our notice, we affirm the district court's

13 order denying Defendants' motion for relief.

14 {6}    **IT IS SO ORDERED.**

15

16                                                         **M. MONICA ZAMORA, Judge**

4

1  WE CONCUR:

2

3  MICHAEL D. BUSTAMANTE, Judge

4

5  J. MILES HANISEE, Judge

5

EXHIBIT L

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
_Barbara J. Vigil_
Clerk of the Supreme Court
of the State of New Mexico

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## January 29, 2016

NO. S-1-SC-35642

**RABO AGRIFINANCE, INC.,**
**Successor in Interest to**
**Farm Credit Bank of Texas,**

     Plaintiff-Respondent,

v.

**TERRA XXI, LTD., a Texas Limited Partnership,**
**composed of Veigel Cattle Company, as General**
**Partner; ROBERT WAYNE VEIGEL a/k/a BOB W. VEIGEL;**
**ELLA MARIE WILLIAMS VOGEL a/k/a ELLA MARIE VEIGEL;**
**VEIGEL CATTLE COMPANY, a Texas Corporation; VEIGEL**
**FARM PARTNERS, a Texas General Partnership d/b/a VEIGEL**
**PARTNERS; BOB VEIGEL, INC., a Texas Corporation; STEVE VEIGEL,**
**INC., a Texas Corporation; VEIGEL KIRK, INC., a Texas Corporation;**
**VICKI VEIGEL, INC., a Texas Corporation; VEIGEL FARMS, INC., a**
**Texas Corporation, TERRA PARTNERS, a Texas General Partnership;**
**BURNETT & VEIGEL, INC., a Texas Corporation,**
**as General Partner of Terra Partnership, a Texas General**
**Partnership,**

     Defendants-Petitioners.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-502 NMRA, and the Court having considered said pleadings and being sufficiently advised, Chief Justice Barbara J. Vigil, Justice Petra Jimenez Maes, Justice Edward L. Chávez, Justice Charles W.

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.

*Madeline M. Garcia*

Clerk of the Supreme Court
of the State of New Mexico

Daniels, and Justice Judith K. Nakamura concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED; and

IT IS FURTHER ORDERED that the Court of Appeals may proceed in *Rabo Agrifinance Inc. v. Terra XXI*, Ct. App. No. 34757, in accordance with the Rules of Appellate Procedure.

IT IS SO ORDERED.



WITNESS, the Honorable Barbara J. Vigil, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 29th day of January, 2016.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By ___*Madeline Garcia*___
        Clerk of the Supreme Court