EXHIBIT B

## IN THE 222nd DISTRICT COURT
## IN AND FOR DEAF SMITH COUNTY, TEXAS

| | | |
|---|---|---|
| **JAMES FRIEMEL and MELANIE** | § | |
| **FRIEMEL,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AG ACCEPTANCE CORPORATION and** | § | **Cause No. CI-07C-024** |
| **TERRA PARTNERS** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **RABO AGRIFINANCE, INC.,** | § | |
| | § | |
| Intervenor. | § | |

## TERRA PARTNERS' SECOND AMENDED CROSS-CLAIM AGAINST
## AG ACCEPTANCE CORPORATION AND RABO AGRIFINANCE, INC.

### TO THE HONORABLE COURT:

Terra Partners ("Terra Partners"), a Texas General Partnership, files its Second Amended

Cross-Claim against Ag Acceptance Corporation ("AAC") and Rabo Agrifinance, Inc. ("RAF"),

and in support of this lawsuit, shows the Court the following:

### I.    PARTIES

1.    The Plaintiffs in this lawsuit were James and Melanie Friemel. All of the claims brought

by the Friemels in this action and all of the claims brought against the Friemels in this action by

all parties have been fully compromised and settled. Pursuant to this settlement agreement, the

Friemels have been dismissed from this lawsuit.

2.     AAC is a Delaware corporation that is a Defendant in this case. AAC has appeared in this lawsuit. AAC has asserted cross-claims against Terra Partners.

3.     RAF is an intervenor in this case. RAF has asserted cross-claims against Terra Partners.

4.     Terra Partners is a general partnership consisting of four corporations that conducts farming operations in and around Deaf Smith County, Texas.

## II.     OVERVIEW

5.     Since, May 1, 2000, Terra Partners has conducted farming and ranching operations in Deaf Smith County Texas. Such operations have been conducted on land that includes two separately owned adjacent tracts of land at issue in this case which have been referred to previously by various references.

6.     One farm at issue in this case is located on Sections 59 and the East one-half (E/2) of Section 60, Block K-4 in Deaf Smith County, Texas. This farm has been referred to at various times in this and related litigation as the "Heirs Farm", the "960 Acres", and collectively defined as "Tracts 1 and 2". This farm has also been assigned the Farm Serial Number ("FSN") 2311 by the Farm Service Agency ("FAS") of the United States Department of Agriculture ("USDA"). For convenience and consistency, Terra Partners will refer to such farm herein as FSN 2311. As explained herein, there are two separate ownership interests in FSN 2311, a 25% undivided interest and a 75% undivided interest.

7.     The other farm at issue in this case is located on Section 21 save and except the Northeast one-quarter (NE/4); Section 22, Section 39, Section 40, Section 42 save and except the Northwest 5 acres; the West one-half (W/2) of Section 60, Section 61, and Section 62 all in Block K-4, Deaf Smith County, Texas. This farm has been referred to at various times in this and related litigation as the "Big Farm", the "Non-960 Acres", and "Tract 3". Sections 39, 40,

and 42 save and except the Northwest 5 acres has been assigned by the FSA to be FSN 1872. Sections 21 save and except the NE/4, 22, W/2 of 60, 61, and 62 has been assigned by the FSA to be FSN 2477. For convenience and consistency, Terra Partners will refer to these farms herein individually as FSN 1872 and FSN 2477.

8. There are three other tracts which are also at issue in this case related to the leases, but on which none of the 2007 wheat crop at issue in this case was grown. Section 75, save and except the South 201 acres of Block K-4, Deaf Smith County, Texas, is native grassland will be referred to as part of FSN 1872. The South one-half (S/2) of Section 26, Township 3 North, Range 1 East Capitol Syndicate Subdivision, Deaf Smith County, Texas is native grassland which will be referred to by Terra Partners herein as FSN 300. The North one-half (N/2) of Section 35 Township 3 North, Range 1 East Capitol Syndicate Subdivision, Deaf Smith County, Texas is a dryland farm which will be referred to as FSN 470. For convenience and consistency, Terra Partners will refer to FSN 300, FSN 470, FSN 1872, and FSN 2477 collectively as "Tract 3"

9. The issues in this case generally involve competing claims to the 2007 wheat crop grown on FSN 2311 and Tract 3 and related issues involving separate title and leasehold interests in Tract 3.

## II. FACTUAL BACKGROUND RELATED FSN 2311

10. Upon the death of Robert H. Veigel on April 10, 1993, Robert "Bob" W. Veigel, Dorothy Veigel Oswald, JoAnn Eudy, and Larry Walters (collectively the "Heirs"), each inherited an undivided 25% interest in FSN 2311. Such interest was distributed to the Heirs on February 25, 1994.

11. From approximately 1968 until March 1, 1985, Robert H. Veigel had leased FSN 2311 to Bob Veigel. From March 1, 1985 until the harvest of the crops in the fall of 1994, Bob and

Steve Veigel, farming as Veigel & Veigel Partnership, leased and operated FSN 2311 from Robert H. Veigel and his Estate.

12.     In November 1994, Veigel & Veigel was restructured as Veigel Farm Partners d/b/a Veigel Partners ("VFP"). VFP assumed the leasehold interest previously held by Veigel & Veigel.

13.     Effective January 1, 1995, the Heirs entered into a five year cash lease of FSN 2311 to VFP though December 31, 1999.

14.     In March 1997, VFP disclosed its leasehold interest in FSN 2311 to Ag Services of America, Inc. ("ASA"), the predecessor to RAF, when VFP granted ASA a security interest in the crops grown on FSN 2311.

15.     At the end of the original term of VFP's lease from the Heirs on December 31, 1999, it was agreed by the Heirs and VFP that the lease would be extended. Effective May, 1, 2000, with the planting of the spring crops, Terra Partners was formed and Bob Veigel leased his 25% interest in FSN 2311 to Terra Partners for an original term of five years through December 31, 2004. The remaining heirs orally leased their 75% interest to Terra Partners on an annual basis.

16.     In order to gain leverage in litigation against the principals of VFP and Terra XXI Ltd. ("XXI"), AAC outbid Bob Veigel and Terra Partners and acquired the 75% undivided interest held by the remaining Heirs on November 9, 2001.

17.     In July 2002, AAC and Terra Partners executed a lease of the 75% interest in FSN 2311 from January 1, 2002 until December 31, 2002.

18.     Pursuant to a settlement agreement executed on October 20, 2002, AAC agreed to sell the 75% interest in FSN 2311 to XXI. Pursuant to the settlement agreement, the parties agreed that Terra Partners' lease of the 75% undivided in FSN 2311 would be extended so as to allow Terra

Partners to grant Ag Services of America, Inc. and AAC a security interest in the 2003 wheat crop grown on FSN 2331 past the original December 31, 2002 primary term of AAC's original lease of the 75% undivided interest to Terra Partners.

19. Shortly after July 15, 2003, Judge Felsenthal ordered AAC to convey its 75% interest to XXI. XXI and Terra Partners memorialized and recorded the October 20, 2002 agreement, which extended AAC's original lease of the 75% interest in FSN 2311 to Terra Partners for a period of 10 years through December 31, 2012. Contemporaneously, Bob Veigel extended and recorded the lease of his 25% undivided interest in FSN 2311 to Terra Partners through December 31, 2012.

20. On October 7, 2003, AAC conducted a non-judicial foreclosure on the 75% undivided interest in FSN 2311 pursuant to a deed of trust executed August 14, 2003 and delivered to AAC on August 25, 2003. AAC's foreclosure relied solely on prior notices of default and acceleration given in June and July 2003, prior to the execution of the real estate lien note and deed of trust covering the 75% undivided interest in FSN 2311.

21. AAC was the higheset bidder at the October 7, 2003 foreclosure of the 75% interest in FSN 2311.

22. In October 2006, Bob Veigel and Terra Partners modified and extended the lease of the 25% interest reserving Bob's right to expand the homestead rights declared at an April 28 - 30, 2004 hearing in Cause No. CI-04B-011 and to extend the term of the lease to December 31, 2021. However, this modification, as well as a prior modification made on July 18, 2003, were declared to be fraudulent transfers upon a final judgment entered on January 16, 2007 in Cause 2:06-CV-00272-J in the U.S. District Court for the Northern District of Texas, Amarillo Division. Nevertheless, RAF did not seek, and the final judgment in 2:06-CV-00272-J did not

declare, such lease of the 25% undivided interest in FSN 2311 null and void; did not subordinate the lease to the title of the 25% undivided interest in FSN 2311 that RAF purportedly acquired on February 6, 2007; and did not grant RAF the right of possession of FSN 2311.

23.     Terra Partners continued its exclusive leasehold interest, possession, and operation of FSN 2311 until the last week of October 2006, when AAC, RAF, and their attorneys with the Diamond McCarthy law firm erroneously convinced the Deaf Smith County Sheriff that the writ of possession covered 2311 in addition to Tract 3. AAC, RAF, and their attorneys and the Deaf Smith County Sheriff deputies thereafter physically prevented Terra Partners from moving personal property and livestock, including cattle owned by Freimels and/or Friemel's family entities, onto FSN 2311.

24.     Subsequent to AAC's October 7, 2003 foreclosure of the 75% Interest in FSN 2311, Terra Partners continued its exclusive leasehold, possession, and operation of FSN 2311 for the 2004 – 2007 crop years, ultimately receiving all USDA farm program benefits after prevailing on the appeals to the National Appeals Division ("NAD") of the U.S.D.A., wherein Terra Partners' leases of both the 25% and 75% interests in FSN 2311 were determined to be valid and superior to AAC's claim of title to the 75% undivided interest in FSN 2311.

25.     After the NAD determination concerning the 2004 crop year, AAC and RAF have not objected to or otherwise challenged the validity of either of Terra Partners' leases of FSN 2311 even though AAC and RAF were parties to such administrative adjudications.

26.     Subsequent to the October 2003 eviction of Tract 3, Terra Partners to date has maintained its leasehold and possession though the June 2007 harvest of the 2007 wheat crop which Terra Partners had planted in August – September 2006. Terra Partners had anticipated grazing Plaintiff's cattle from approximately November 1, 2006 – March 15, 2007 to provide financing

and income to further irrigate the wheat crop to maximize Terra Partners' income and profit from the wheat. However, as a result of AAC's, RAF's, and their attorneys' actions, Terra Partners lost the additional financing and approximately $75,000.00 in grazing income from FSN 2311 that was to be provided by the Freimels. As a result, Terra Partners was unable to finance the irrigation of the wheat, precluding the expected irrigated wheat yield of 75 – 90 bushels per acre on the 741 acres which were intended to be irrigated. This resulted in lost wheat production of approximately 28,000 bushels from FSN 2311.

27.     Pursuant to the Agreed Order Directing Harvest and Sale of the Wheat Crop, which expressly preserved Terra Partners' conversion and interference claims, signed and entered in this case on June 21, 2007, Terra Partners contracted and supervised the harvest of 47,791.335 bushels of wheat from FSN 2311, which was delivered and sold to 21st Century Grain for an average net price of $5.7207 per bushel.

28.     Of the $273,399.99 net proceeds from the sale of the wheat, pursuant to the Agreed Order Directing Harvest and Sale of the Wheat Crop, $225,298.53 was deposited in the Court's Registry; $20,000.00 was paid to the Freimels as settlement; and $28,101.46 was paid to the Freimels for the custom harvest of such wheat.

29.     Subsequent to the harvest of the 2007 wheat crop, with actual and constructive knowledge of Terra Partners' superior leasehold rights, AAC and RAF have contracted and conspired with U-C Farms or their principals to operate and farm FSN 2311 to the exclusion of Terra Partners.

30.     As a result of AAC, RAF, and/or U-C Farms actions, the Farm Service Agency has sought to deny Terra Partners enrollment and participation in the USDA farm programs for the 2007 and 2008 crop years, denying Terra Partners USDA payments and resulting in additional

appeals to NAD.

## FACTUAL BACKGROUND RELATED TO TRACT 3

31.     XXI was formed in November 1994 to hold its limited partners' contributed various long-held agricultural properties in Texas and New Mexico, including Tract 3, and to acquire additional adjoining properties. Prior to the formation of XXI, the Veigel family's land in Deaf Smith County, Texas had been leased to and operated by Bob and Steve Veigel as general partners in Veigel & Veigel and as the shareholders in Veigel Farms, Inc. ("VF") since March 1985. Prior to 1985, Bob Veigel and his father Robert H. Veigel had operated the property since the 1930s.

32.     Contemporaneous with the formation of XXI, as part of the financing requirements of the Farm Credit Bank of Texas, XXI leased its agricultural properties to Veigel Farm Partners d/b/a Veigel Partners ("VFP") for an original term through December 31, 2009.

33.     In the spring of 1997, VFP obtained annual crop financing from Ag Services of America, Inc ("ASA") disclosing its leasehold interests. ASA's representative, Arna Reynolds, conducted an initial on farm visit and had actual knowledge and constructive notice of XXI's leases and VFP's subleases, including a sublease of FSN 1872 to Veigel Farms Inc., FSN 300 and 470 to Todd Northcutt, and Bob and Ella Marie's residence on FSN 2477. ASA subsequently assigned all of its interests in the 1997 notes and security to its subsidiary AAC.

34.     In the spring of 1998, XXI joined with VFP in obtaining additional financing from ASA. As part of such financing and agreed future mortgage financing, XXI was induced to grant a 2nd lien deed of trust and mortgage to ASA and a 3rd lien deed of trust and mortgage to AAC on Tract 3. However, even with actual and constructive prior notice of XXI's lease to VFP and VFP's subleases, neither ASA or AAC sought to have such prior superior leasehold interest

subordinated to their security interests, and did not bind XXI or VFP to covenant not to modify or extended such leases as required to protect ASA's and AAC's security interests.

35.    Terra Partners was formed to succeed to VFP's operations in Texas in the year 2000. On May 1, 2000, as part of a multi-party transaction, XXI, VFP, Terra Partners, and VF entered into various modification and assignment agreements whereby leases were modified such that VFP retained only its original leasehold interest in XXI's New Mexico properties through 2009, Terra Partners succeeded to VFP's lease interests in FSN 300, FSN 470, and FSN 2477 with a shorter term through 2005, and VF leased FSN 1872 from XXI through 2005.

36.    In August 2000, XXI filed for Chapter 11 bankruptcy. In September 2000, VFP filed for Chapter 11 bankruptcy.

37.    ASA and AAC objected that such leases were shams or otherwise invalid; however, an agreed order was entered in XXI's and VFP's respective bankruptcy cases approving XXI's leases. Again, there was no provision or order that subordinated such leases to any security interest claimed by First Ag Credit, as successor to the Farm Credit Bank of Texas, ASA, or AAC. Nor was there any provision that otherwise bound XXI or VFP not to modify or extend any lease.

38.    XXI's and VFP's Chapter 11 plans of reorganization were confirmed in January 2002. XXI's Plan was to be implemented over a 20 year period by paying First Ag Credit's claim with revenue from lease income from Terra Partners, VF, and VFP until May 1, 2022. XXI's Plan extended the termination date of the leases to May 1, 2022. There was no provision or order that subordinated such leases to any security interest or otherwise bound XXI not to modify or extend any lease of Tract 3. Prior to the expiration of the original May 1, 2000 lease term, XXI and the lessees executed and recorded a separate lease document that recognized the new lease term of

May 1, 2022 previously provided by the plan.

39. On March 5, 2003, VF assigned its May 1, 2000 lease of FSN 1872 to Terra Partners, allowing Terra Partners to operate Tract 3 as a single unit along with FSN 2311.

40. Furthermore, under Section 8.07 of XXI's Plan and the confirmation order, ASA's original notes and security and AAC's original notes and security were to be combined and "redocumented" as a single new note defined as the "Ag Services Claim" secured by a single new 2nd lien on XXI's real estate defined as one of the allowed "Ag Services Liens." However, there was never any new documentation executed necessary to comply with XXI's Plan and to evidence the "Ag Services Claim" or any "Ag Services Liens" as required by the Plan, applicable bankruptcy law, and the statute of frauds.

41. On October 20, 2002, XXI, VFP, ASA, AAC, et. al. entered into a settlement agreement that was subsequently clarified by Judge Felsenthal's bench ruling after a hearing on July 15, 2003 in Case Nos. 2-00-20858-SAF-11 and 2-00-20877-RAF in the U.S. Bankruptcy Court for the Northern District of Texas Dallas Division. In his bench ruling, Judge Felsental ordered an effective novation, ruling that the October 20, 2002 Settlement Agreement required ASA and AAC to provide XXI and VFP, for their sole execution without the original co-makers' execution, a single new note for $1.5 million. AAC's and RAF's corporate representative have judicially admitted that a new promissory note for $1.5 million was never submitted for execution.

42. ASA and AAC subsequently gave notice of foreclosure sales and posted both ASA's original 2nd lien deed of trust and ACC's original 3rd lien deed of trust on Tract 3 for a September 2, 2003 foreclosure, although AAC failed to expressly preserve such deeds of trust as required.

43. This Court in Cause No. CI-04B-011 held that AAC was the successful bidder at the

September 2, 2003 foreclosure sale under its original pre-confirmation deed of trust securing the original debt. Terra Partners asserts that this ruling is null and void.

44.    Subsequent to AAC's foreclosure of Tract 3, AAC filed an action for forcible detainer in February 2004, casting a cloud of uncertainty and litigation which precluded Terra Partners' normal farming and ranching operations and interfered with its ability to collect any USDA farm program payments.

45.    AAC initially represented to the Farm Service Agency in June 2004, that AAC was the rightful owner of Tract 3 (as well as FSN 2311) and that Terra Partners had no valid leasehold on any property claimed to be owned by AAC. This resulted in Farm Service Agency's initial denial of farm program benefits to Terra Partners for the 2004 – 2008 crop years on FSN 1872, FSN 2477 (as well as FSN 2311). Although Terra Partners continually maintained exclusive possession and operation of FSN 1872 and FSN 2477 until the last week of October 2006, AAC's representation to the Farm Service Agency in June 2004 resulted in the USDA National Resource Conservation Service's refusal to cooperate with Terra Partners in maintaining conversation compliance in 2004 and 2005, resulting in the denial of farm program benefits even though Terra Partners ultimately prevailed in the NAD appeals with respect to the validity and superiority of its leases over AAC's claimed title as the result of its September 2, 2003 foreclosure.

46.    AAC subsequently obtained a summary judgment for forcible detainer on June 8, 2006 concerning Tract 3 in Cause No. 04-11557 in the Justice Court for Precinct One, in Deaf Smith County. However, such judgment was vacated and annulled as a matter of law upon a *de novo* appeal to the County Court as Cause No. CI-2006-04972 on June 13, 2006. *Villalon v. Bank One,* 176 S.W.3d 66, 70 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) citing *Mullins v.*

*Coussons,* 745 S.W.2d 50, 50 (Tex.App.-Houston [14th Dist.] 1987, no writ); *Poole v. Goode,* 442 S.W.2d 810, 812 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd, n.r.e.). As such there was no effective legal basis for AAC's demand/notice letter dated June 22, 2006 and no pending "eviction order" as claimed.

47.     On October 12, 2006, AAC prevailed on summary judgment in Cause No. CI-2006-04972; however, such judgment only determined the immediate right of possession of Tract 3 and lacked subject matter jurisdiction to adjudicate issues of title and lease validity and does not serve as *res judicata* to bar the adjudication of such issues in this case at bar. *Lopez v. Sulak,* 76 S.W.3d 597, 606 (Tex.App.-Corpus Christi 2002, no pet.) citing TEX. CIV. PRAC. & REM.CODE ANN. § 31.004, *Reese v. Reese,* 672 S.W.2d 1, 2 (Tex.Civ.App.-Waco 1984, no writ), *McCloud v. Knapp,* 507 S.W.2d 644, 647-48 (Tex.App.-Dallas 1974, no writ)

48.     A writ of possession to Tract 3 was awarded to AAC. At the personal direction of AAC, RAF, and their attorney, Cliff Walston with the law firm of Diamond McCarthy, the Deaf Smith County Sheriff executed the writ on October 21ˢᵗ – 25ᵗʰ, 2006. Despite the clear language in the writ of possession to the contrary, the Sheriff Deputies were instructed by AAC, RAF, and their counsel to unlawfully physically prohibit the removal of all non-household personal property and all other personal property including that owned and leased by Terra Partners and the Freimels' cattle to FSN 2311.

49.     Subsequent to the October 2006 eviction, a farm inspection and inventory was conducted by RAF, AAC, and Terra Partners. During the inspection, Terra Partners claimed ownership in various items of personal property, including the wheat grown on Tract 3 and FSN 2311. When Steve Veigel pointed out the need to shred tumbleweeds growing in the wheat planted no-till on Section 40 of FSN 1872, RAF's and AAC's representative, Norman Fiddlke, responded that

since it was Terra Partners' wheat, it was Terra Partners' responsibility to shred the weeds; however, he refused to allow Terra Partners to retrieve its necessary equipment from FSN 2477 and would not grant it permission to enter upon FSN 1872 later to shred such weeds. Similar weeds were growing on Section 42 for FSN 1872 in improved Bermuda grass pasture that Terra Partners admitted was a permanent crop that may go with the land claimed by AAC. AAC subsequently shred the weeds on Section 42, but did not shred the weeds on Section 40 consistent with Norman Fiddelke's prior statement recognizing that the wheat growing on Tract 3 and FSN 2311 belonged to Terra Partners though denying Terra Partners entry upon Tract 3 to farm, graze, cultivate, irrigate, harvest, and market the wheat.

50.     In the spring of 2007, when the wheat crop prospects appeared promising and a small portion of the acres needed to be sprayed for weeds, AAC and RAF changed their position to claim the wheat, denied the Friemels' offer to spray the wheat, and then caused all of the wheat growing on Tract 3 to be sprayed indiscriminately with much of the cost economically unjustified.

51.     Terra Partners had anticipated grazing Plaintiffs' cattle from approximately November 1, 2006 until March 15, 2007 to provide financing and income from Plaintiffs to further irrigate the wheat crop to maximize Terra Partners' income and profit from the wheat. However, as a result of AAC's, RAF's, and their attorneys' actions, Terra Partners lost the additional financing and approximately $225,000.00 in grazing income on Tract 3 from the Freimels. As a result, Terra Partners was unable to finance the irrigation of the wheat, precluding the expected irrigated wheat yield of 75–90 bushels per acre on the approximately 2,479 acres which were intended to be irrigated. This resulted in lost additional wheat production of approximately 117,529 bushels from Tract 3.

52.     Pursuant to the Agreed Order Directing Harvest and Sale of the Wheat Crop expressly preserving Terra Partners' conversion and interference claims, signed and entered in this case on June 21, 2007, AAC contracted and supervised the harvest of 127,720.33 bushels of wheat from Tract 3, which was delivered and sold to 21st Century Grain for an average net price of \$5.7370 per bushel.

53.     Of the \$732,726.40 net proceeds from the sale of the wheat produced on Tract 3, pursuant to the Agreed Order Directing Harvest an Sale of the Wheat Crop, \$585,147.99 was deposited in the Court's Registry and \$60,000 was paid to the Friemels as settlement and \$84,998.36 was paid to Cory Marsh for the custom harvest of such wheat.

54.     Subsequent to the harvest of the 2007 wheat crop, AAC has continued to conspire with RAF and U-C Farms to convert Terra Partners' interest in the 2007 wheat, generally interfering with Terra Partners normal farming and grazing business, finances, and marketing by trespassing on Terra Partners' leasehold estate in Tract 3, and USDA farm program payment since the 2007 crop year et. seq.


## 1. CLAIMS FOR RELIEF

### Count One – Declaratory Judgment

55.     Terra Partners incorporates the allegations contained in Paragraphs 1 – 54 as if they are fully replead at length.

### (A) Terra Partners' Leases were Superior

56.     Terra Partners' current leases of Tract 3 and FSN 2311 can be directly traced to the original leases from on or before November 1, 1994. The leases from 1994 were modified to substitute other entities controlled by Bob and Steve Veigel, or to extend the termination dates of

the leases. Because the leases preceded the date of AAC's and RAF's liens, and because AAC and RAF had actual and constructive knowledge of the leases, Terra Partner's rights as a lessee were superior to the liens and therefore survived AAC's foreclosure of Tract 3 on September 2, 2003, the 75% interest on FSN 2311 on October 7, 2003, and the judicial sale of the 25% interest on FSN 2311 on February 6, 2007. *Ontiveros v. MBank Houston, N.A.*, 751 F. Supp. 128, 130 (S.D. Tex. 1990); *United Gen. Ins. Agency v. American Nat'l Ins. Co.*, 740 S.W.2d 885, 885 (Tex. App. -- El Paso 1987, no writ); *Texas Life Ins. Co. v. Texas Bldg. Co.*, 307 S.W.2d 149, 152 (Tex. Civ. App. – Ft. Worth 1957, no writ); *Brown v. Moss*, 265 S.W.2d 613, 616 (Tex. Civ. App. -- Ft. Worth 1954, writ ref'd n.r.e.).

57.     In *Ontiveros*, the Tenant leased a spot in a shopping mall prior to the date that Bank of the Southwest took a security interest in the property. *Id.* The Tenant and the Mall subsequently modified their lease agreement to extend date of the lease and require the Mall to make a payment of $125,000.00 to the Tenant. *Id.* Bank of the Southwest eventually foreclosed on the property, but balked at paying $125,000.00 to the Tenant. *Id.* The Court held that the bank's security interest was inferior to the lease despite the subsequent modification, and that Tenant's possession gave the Bank constructive notice of the lease; accordingly, the foreclosure did not sever any of the rights of the Tenant, including his right to receive $125,000.00 as provided in the modified lease. *Id.* The Court also stated that the Mortgagee had the duty to protect its interests by obtaining a subordination of the lease and binding the mortgagor not to modify or extend the lease. *Id.* The Bank's failure to do so was imprudent and could not affect the Tenant's rights. *Id.*

58.     Like the Tenant in *Ontiveros*, Terra Partners' rights as lessee are superior to AAC's. Terra Partners is entitled to the proceeds from the 2007 Wheat Crop, as well as all other rights

afforded to them under their lease of Tract 3 and FSN 2311, including the right to cultivate crops on the land.

59.     Terra Partners' leases of Tract 3 and FSN 2311 have never been subordinated to any lien. AAC and RAF had actual and constructive knowledge of XXI's tenant's possession since 1997 prior to accepting deeds of trust from XXI in 1998. AAC and RAF repeatedly failed to provide that XXI and Bob Veigel could not modify or extend the leases.

60.     Furthermore, AAC and RAF has not objected to the validity, superiority, and extension of Terra Partners' leases of FSN 2311 and Tract 3 in the NAD administrative law adjudications for the 2005, 2006, and 2007 crop years, and are now judicially estopped from objecting to the lease in this action at bar.

61.     In addition, AAC and RAF ratified the leases by accepting rent from Terra Partners' sublessee, demanding rent in the summary judgment hearing for the forcible detainer action in the Justice Court, and AAC's and RAF's admission that the wheat crop belonged to Terra Partners' during the post-eviction farm inspection. *Ontiveros*, 751 F. Supp. at 131.

62.     Terra Partners seeks a declaration that it is entitled to the proceeds from the sale of the 2007 Wheat Crop, that it has a valid leasehold interest in FSN 2311 and Tract 3, and that said leasehold interest is superior to all claims by AAC and RAF. Terra Partners seeks a further declaration that it was entitled to cultivate, graze, harvest, sell, and accept payment for the wheat. In addition, Terra Partners seeks a declaration that it is entitled to return to immediate and exclusive possession of FSN 2311 and Tract 3 free and clear of any claim or interest of AAC, RAF, and their tenants. Terra Partners also seeks damages for lost production due to lack of irrigation and lost grazing income from 2007 Wheat Crop, and the lost profits for subsequent crops until it is returned to possession, including lost USDA Farm Program Payments since the

2003 foreclosure. Terra Partners also seeks indemnification of any costs incurred defending against actions by AAC and RAF's current tenants, and its reasonable and necessary attorneys fees incurred in this cross-claim, and any and all appeals therefrom, pursuant to Chapter 37 in the Texas Civil Practice and Remedies Code.

### (B) AAC's Foreclosures are Void

63. AAC's title claim to Tract 3, stemming from the foreclosure to collect on the original discharged debt, violated the discharge injunction and Judge Felsenthal's ruling clarifying the October 20, 2002 Settlement. AAC foreclosed on debt that had been discharged in bankruptcy. Accordingly, their claim to title is null and void. The foreclosure of the 75% interest in FSN 2311 is voidable because it depended on notices given in the Tract 3 foreclosure action.

64. This Court's judgment in CI-04B-011 upholding AAC's foreclosure of Tract 3 is also automatically null and void pursuant to 11. U.S.C. §524. Wright and Miller 11 Fed. Prac. & Proc. Civ.2d § 2862 citing *Briley v. Hidalgo,* 981 F.2d 246 (5th Cir. 1993); *In re Dalton,* 183 B.R. 127 (Bankr.S.D.Tex.1995); *In re Egleston,* 448 F.3d 803 (5th Cir. 2006).

65. Terra Partners seeks a declaration that AAC's and RAF's foreclosure and execution sale are null and void, Terra Partners seeks a declaration that it is entitled to the proceeds from the sale of the 2007 Wheat Crop, that it has a valid leasehold interest in FSN 2311 and Tract 3, and that said leasehold interest is superior to all claims by AAC and RAF. Terra Partners seeks a further declaration that it was entitled to cultivate, graze, harvest, sell, and accept payment for the wheat. In addition, Terra Partners seeks a declaration that it is entitled to return to immediate and exclusive possession of FSN 2311 and Tract 3 free and clear of any claim or interest of AAC, RAF, and their tenants. Terra Partners also seeks damages for lost production due to lack of irrigation and lost grazing income from 2007 Wheat Crop, and the lost profits for subsequent

crops until it is returned to possession, including lost USDA Farm Program Payments since the 2003 foreclosure. Terra Partners also seeks indemnification of any costs incurred defending against actions by AAC and RAF's current tenants, and its reasonable and necessary attorneys fees incurred in this cross-claim, and any and all appeals therefrom, pursuant to Chapter 37 in the Texas Civil Practice and Remedies Code.

## Count Two - Conversion

66.    Terra Partners incorporates the allegations contained in Paragraphs 1 – 65 as if they are fully replead at length.

67.    From the point that it was planted, Terra Partners was the rightful owner of the wheat crop that has been previously described in this petition. AAC converted Tract 3 and AAC and RAF converted FSN 2311 in October of 2006, by exercising dominion and control over Terra Partners property and its crops. Terra Partners' had a superior right to the wheat growing on the land; therefore, Terra Partners was entitled to continue farming operations on the land until the end of their lease.

68.    Even if the Court holds that AAC's foreclosures severed Terra Partners' leasehold interests, Terra Partners would still be entitled to the 2007 Wheat Crop pursuant to the Doctrine of Emblements. The foreclosure of a lien, created prior to a lease if the lessee is a party to the foreclosure, causes the lease to terminate. *Bateman v. Brown*, 297 S.W. 773, 775 (Tex. Civ. App. 1927). At that point, the Doctrine of Emblements provides the lessee a right of entry to cultivate and remove any crops that were planted prior to termination. *Id.* The Doctrine of Emblements would also be applicable if Terra Partners is deemed to be a tenant at will or a tenant at sufferance.

69.    If Terra Partners is held to have been a trespasser at the time it planted and/or harvested the crops, it would still be entitled to the wheat they harvested from FSN 2311. *Whitfield v. Gay*, 253 S.W.2d 54, 55 (Tex. Civ. App. Eastland 1952) ("Unsevered crops planted or grown by a trespasser are the property of the land owner. Harvested or severed crops belong to the trespasser, provided he remains in possession until the harvest.").

70.    As a result of this action, Terra Partners suffered damages within the jurisdictional limit of this court. Terra Partners alleges that the converted wheat was of widely fluctuating value, and that the defendants forced Terra Partners to sell it immediately after the harvest – the time when the wheat would be worth the least on the open market. The defendants acted fraudulently, willfully, and/or with gross negligence. Accordingly, Terra Partners seeks damages equal to the highest intermediate value of the wheat between date of the conversion and the date of trial. *Security State Bank v. Spinnler*, 78 S.W.2d 275, 278 (Tex. Civ. App. 1935). In the alternative, Terra Partners seeks damages equal to the highest intermediate value of the wheat between date of the conversion and the filing of this lawsuit. *De Shazo v. Wool Growers Cent. Storage Co.*, 139 Tex. 143, 149 (Tex. 1942). In the alternative, Terra Partners seeks damages equal to the value of the wheat at the date of the conversion.

71.    Terra Partners also seeks damages for lost production due to lack of irrigation and lost grazing income from 2007 Wheat Crop, and the lost profits for subsequent crops until it is returned to possession, including lost USDA Farm Program Payments since the 2003 foreclosure. Terra Partners also seeks indemnification of any costs incurred defending against actions by AAC and RAF's current tenants, and its reasonable and necessary attorneys fees incurred in this cross-claim, and any and all appeals therefrom, pursuant to Chapter 37 in the Texas Civil Practice and Remedies Code. Terra Partners also seeks exemplary damages for the

wanton and malicious conversion.

## Count Three – Quantum Meruit

72.     Terra Partners incorporates the allegations contained in Paragraphs 1 – 71 as if they are fully replead at length.

73.     Terra Partners provided valuable services and materials by spraying, and clearing weeds, supplying seed, planting a wheat crop, and supplying water to maintain the wheat crop. These services were provided for the benefit of the party having rights in the growing wheat crop, whether that party is Terra Partners or Ag Acceptance. Ag Acceptance accepted these services and materials. Ag Acceptance had reasonable notice of the work being done by Terra Partners, and had reasonable notice that Terra Partners was doing the work with the expectation of being compensated.

74.     Ag Acceptance has accepted the benefit of these services and materials and it will be unjustly enriched if it is allowed to retain these benefits without payment of the reasonable value of the services and materials provided by Terra Partners.

75.     Accordingly, Terra Partners has been or will be damaged and is thus entitled to recover the reasonable value of the services and materials it provided, for which it sues to recover.

## Count Four - Estoppel

76.     Terra Partners incorporates the allegations contained in Paragraphs 1 – 75 as if they are fully replead at length.

77.     Ag Acceptance and Rabo are bound by, and estopped from contradicting, a statement made by Norman Fiddelke. Fiddelke, during a conversation with Steve Veigel, represented to

Veigel that the wheat was the property of Terra Partners. Terra Partners relied on this statement to their detriment.

## Count Five – Collateral Estoppel

78.     Terra Partners incorporates the allegations contained in Paragraphs 1 – 77 as if they are fully replead at length.

79.     Ag Acceptance and Rabo are estopped from taking any position contradictory to the rulings and findings of the following determinations of the U.S. Department of Agriculture National Appeals Division.

| | |
|---|---|
| 1. | Director Review Determination NAD Case No. 2005W000461 (12/06/05) |
| 2. | Reconsideration of Determination NAD Case No. 2005W000461(1/10/06) |
| 3. | Appeal Determination of NAD Case No. 2006W000324 (05/24/06) |
| 4. | Director Review Determination NAD Case No. 2006W000324 (8/2/06) |
| 5. | Appeal Determination of NAD Case No. 2006W000675 (9/8/06) |
| 6. | Appeal Determination of NAD Case No. 2007W000473 (10/25/07) |

WHEREFORE, PREMISES CONSIDERED, Terra Partners respectfully requests that upon final trial the relief requested herein be granted; that Terra Partners recover its costs and expenses, including attorneys fees, and that the Court grant Terra Partners such other and further relief to which it is justly entitled.

Respectfully submitted,

Steven E. Clark
Texas Bar No. 04294800

CLARK ASHWORTH MILBY RLLP
Elm Place
1401 Elm St., Suite 3404
Dallas, Texas 75202
Tel.: 214-2200-1210
Fax: 214-220-1218
Email: sclark@camfirm.com

Attorneys for Terra Partners

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2008, a true and correct copy of the above and foregoing instrument was served in accordance with Rule 21a, to David LeBas, counsel for AAC and RAF.

Steven E. Clark